**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) | Case No. 09-11435 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING OPERATING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO ADEQUATE PROTECTION PARTIES AND (III) SCHEDULING A FINAL HEARING <u>PURSUANT TO BANKRUPTCY RULES 4001(B)</u>

("<u>INTERIM CASH COLLATERAL ORDER</u>")

Upon the motion, dated March 27, 2009 (the "<u>Motion</u>"), of Charter Communications, Inc. ("<u>Company</u>") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>") for interim and final orders under sections 105, 361, 362 and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et seq.</u> (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), seeking:

(I)    authorization for the Operating Debtors[1] to (a) use the Cash Collateral (as defined in paragraph 3(f) below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(e) below) and (b) provide adequate protection to the Administrative Agent and the Lenders[2] under (i) that certain $8,000,000,000 Amended and Restated Credit Agreement, dated as of March 6, 2007 (as amended, supplemented or otherwise modified, the "<u>Credit</u>

---

[1]    The term "Operating Debtors" shall mean those Debtors that are either a Borrower or Guarantor under the Credit Agreement.

[2]    Capitalized terms used in this order and not otherwise defined herein shall have the meaning given to such term in the Loan Documents as such term is defined in the Credit Agreement.

Agreement") among Holdings, the Borrower, JPMorgan Chase Bank, N.A., as administrative agent for the Lenders (in such capacity, the "Administrative Agent"), JPMorgan Chase Bank, N.A. and Bank of America, N.A., as syndication agents, Citicorp North America, Inc., Deutsche Bank Securities Inc, General Electric Capital Corporation and Credit Suisse Securities (USA) LLC, as revolving facility co-documentation agents, Citicorp North America, Inc., Credit Suisse Securities (USA) LLC, General Electric Capital Corporation and Deutsche Bank Securities Inc., as term facility co-documentation agents, and the Lenders party thereto, (the Administrative Agent, the Lenders, and the non-Debtor counterparties to each Specified Hedge Agreement, as applicable, the "Adequate Protection Parties"); (ii) the Guarantee and Collateral Agreement; and (iii) the other Loan Documents;

(II)    subject to entry of the Final Order, and except to the extent of the Carve Out, the waiver by the Debtors of any right to surcharge against the Collateral (as defined in paragraph 8 below) pursuant to section 506(c) of the Bankruptcy Code;

(III)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (a) authorizing the Operating Debtors to use the Cash Collateral, and (b) granting adequate protection to the Adequate Protection Parties; and

(IV)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Operating Debtors on a final basis to continue to use the Cash Collateral and

authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order.

The Interim Hearing having been held by this Court on March 30, 2009 and upon the record made by the Debtors at the Interim Hearing and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by the Court and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction*.   This Court has core jurisdiction over the Cases commenced on March 27, 2009 (the "Petition Date"), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.   Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"); (ii) the entities listed on the Consolidated List of Creditors Holding the 80 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) the Administrative Agent; (iv) counsel to the Administrative Agent; (v) counsel to the agent under the Debtors' prepetition junior lien credit facility; (vi) counsel to the non-Debtor counterparties to each Specified Hedge Agreement to the extent known; (vii) counsel to the indenture trustees for those indentures to which a Debtor is a party; (viii) the cash management banks with whom the Debtors maintain deposit, lockbox, concentration, disbursement and similar accounts (the "Cash Management Banks") (ix) the Internal Revenue Service; (x) the Securities and Exchange Commission; and (xi) the Federal Communications Commission and any applicable state public utilities commissions required to receive notice under the Bankruptcy

Rules or Local Rules.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (d).

3.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 18 and 19 below) but only to the extent that an Operating Debtors Committee (as defined below) has been appointed in these Cases, the Operating Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Operating Debtors were indebted and liable to the Lenders, without defense, counterclaim or offset of any kind, for Loans made by the Lenders in the aggregate principal amount of approximately $8,246,604,237 and for Letters of Credit in the face amount of approximately $140,074,350, pursuant to, and in accordance with the terms of, the Credit Agreement and the Guarantee and Collateral Agreement, plus accrued and unpaid interest thereon, reimbursement obligations in respect thereof and fees and expenses (including fees and expenses of the Administrative Agent's attorneys and financial advisors) and other obligations incurred in connection therewith as provided in the Loan Documents;

(b)    the Operating Debtors' Obligations constitute the legal, valid and binding obligation of the Operating Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)    (i) from time to time, CCO has entered into Specified Hedge Agreements with certain non-Debtor counterparties who were at the time of entering into such Specified Hedge Agreements lenders (or affiliates thereof) under the Credit Agreement and (ii) the Debtors' obligations under the Specified Hedge Agreements constitute Obligations under the

Guarantee and Collateral Agreement and are secured with security interests in the collateral pledged thereunder;

(d)    (i) no portion of the Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Administrative Agent, the Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors related to the Obligations;

(e)    the liens and security interests granted to the Administrative Agent pursuant to and in connection with the Guarantee and Collateral Agreement and the other Loan Documents for the benefit of the Lenders are valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Credit Agreement) liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Loan Documents (together with the Cash Collateral, the "Prepetition Collateral") and are (i) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (ii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 8(c) below), (B) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph 7 below), and (C) valid, perfected and unavoidable liens permitted under the Loan Documents to the extent such permitted liens are senior to the liens of the Administrative Agent on the Prepetition Collateral; and

(f)     the Operating Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Operating Debtors and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral constitute proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Administrative Agent and the Lenders within the meaning of Section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (the "Cash Collateral"), and Debtors agree that such amount includes cash in an aggregate amount equal to at least approximately $640 million as of the Petition Date. Notwithstanding the stipulations made herein, nothing in the foregoing shall prohibit any action, whether direct or indirect, with respect to the treatment of the Obligations in accordance with section 1124 of the Bankruptcy Code.

4.    *Administrative Agent and Lenders' Stipulations.*  Notwithstanding anything to the contrary contained herein, the Administrative Agent and Lenders admit, stipulate, and agree that upon entry of a Final Order acceptable to the Administrative Agent and the Steering Committee, the Debtors may provide to parties other than the Adequate Protection Parties, pursuant to sections 361 and 363(c)(2), adequate protection of such parties' interests in the Prepetition Collateral, including Cash Collateral, in each case in accordance with, as applicable, (i) that certain Amended and Restated Intercreditor Agreement, dated as of March 19, 2008 (the "First-Second Lien Intercreditor Agreement"), between the Administrative Agent and Wilmington Trust Company, as trustee for the holders of certain secured notes issued on April 27, 2004 and March 19, 2008, and (ii) that certain Intercreditor Agreement, dated as of March 6, 2007 (the "First-Third Lien Intercreditor Agreement" and together with the First-Second Lien Intercreditor Agreement, the "Intercreditor Agreements"), between the Administrative Agent and Bank of

America, N.A., as administrative agent for the lenders under that certain junior lien credit agreement, dated as of March 6, 2007.

5.    *Findings Regarding the use of Cash Collateral and Prepetition Collateral.*

(a)    Good cause has been shown for the entry of this Order.

(b)    The terms of the use of the Cash Collateral pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(c)    The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent, and the Lenders, and, pursuant to Sections 105, 361 and 363 of the Bankruptcy Code, the Administrative Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to protections provided to good faith buyers and lenders under Section 363(e) of the Bankruptcy Code.

(d)    The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(b)(2). Absent granting the interim relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.   The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order is in the best interest of the Debtors' estates.

6.    *Authorization Of Use of Cash Collateral and Prepetition Collateral.*

(a)    Subject to the terms hereof, including all reservations of rights herein, the Operating Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date only for (i) operating and administrative costs and expenses of the Operating Debtors and for working capital and general

corporate purposes, including, but not limited to, capital expenditures and making payments to general unsecured creditors of the Operating Debtors in the ordinary course on account of their prepetition claims; (ii) adequate protection payments, as contemplated herein; (iii) payments of the "Reimbursement Management Fee," as defined in the Amended and Restated Management Agreement, dated as of June 19, 2003, the Second Amended and Restated Mutual Service Agreement, dated as of June 19, 2003 and the First Amended and Restated Mutual Service Agreement, dated as of December 21, 2000 (as in effect on the date hereof and to the extent such agreement remains in effect with respect to Charter Communications, Inc.);    and (iv) distributions to the non-Borrower and non-Guarantor debtor affiliates (collectively, the "<u>Affiliated Debtors</u>") for administrative costs and expenses related to the administration of their chapter 11 cases.

(b)    A copy of the Operating Debtors' initial thirteen-week cash forecast in form substantially similar as attached hereto as Exhibit A, which is in form reasonably acceptable to the Administrative Agent and the members of the steering committee for the Lenders (the "<u>Steering Committee</u>"), setting forth projected cash flows for the period included therein (such cash forecast, together with all updates and supplements thereto delivered by the Operating Debtors pursuant to the terms of this order, the "<u>Cash Forecast</u>") was provided to the Administrative Agent and the Steering Committee.

(c)    Subject to the Final Order, except for the Irell Proceeds (as defined below), all cash other than Cash Collateral, if any, shall be deemed expended first by the Operating Debtors before the expenditure of Cash Collateral.

7.    *Adequate Protection*.    The Operating Debtors have agreed to provide the Adequate Protection Parties, pursuant to sections 361 and 363(c)(2) of the Bankruptcy Code,

adequate protection of the Adequate Protection Parties' interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Adequate Protection Parties' interest in the Prepetition Collateral resulting from the use, sale or lease, by the Operating Debtors of Cash Collateral or any other Prepetition Collateral or from the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").

8.    *Adequate Protection Claims and Liens*.    As adequate protection, the Administrative Agent and the Lenders, and, as applicable, the non-Debtor counterparties to each Specified Hedge Agreement are hereby granted the following:

(a)    Section 507(b) Claim.    The Adequate Protection Obligations due to the Administrative Agent and the Lenders shall constitute superpriority claims as and to the extent provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims, now existing or after arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c) and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Operating Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "507(b) Claim") subject and subordinate only to the Carve Out.

(b)    Adequate Protection Liens.    As security for the Adequate Protection Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Administrative Agent of any Collateral, the following security

interests and liens are hereby granted to the Administrative Agent, for its own benefit and the benefit of the Lenders (all property identified in clauses (i) and (ii) below being collectively referred to as the "Collateral"), subject only to the Carve Out (all such liens and security interests granted to the Administrative Agent, for its benefit and for the benefit of the Lenders pursuant to this Order, the "Adequate Protection Liens"):

(i)    First Priority On Unencumbered Property.    Pursuant to sections 361 and 363 of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all of the Operating Debtors' rights in tangible and intangible prepetition and postpetition property of the Operating Debtors' estates, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, other rights to payment, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holdings, the Priority Intercompany Claim and the proceeds of all of the foregoing.

(ii)    Liens Junior To Certain Existing Liens.    Pursuant to sections 361 and 363 of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible

prepetition and postpetition property of the Operating Debtors whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the Administrative Agent and the Lenders are junior to such valid, perfected and unavoidable liens.

(iii)    <u>Liens Senior To Certain Other Liens</u>.  Subject to the Carve Out, the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Operating Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Operating Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(c)    For purposes hereof, the "<u>Carve Out</u>" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) fees and expenses up to $200,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below), and (iii) prior to and following receipt of notice from the Administrative Agent after the occurrence and during the continuance of a Termination Event hereunder, the payment of

accrued and unpaid professional fees and expenses that are allowed by the Court (whether by interim procedure, Court order or otherwise) and incurred by the Debtors and any statutory committee appointed in the Cases (each, a "Committee") after the first Business Day following delivery by the Administrative Agent of a Carve Out Trigger Notice (as defined below) in an aggregate amount not exceeding $20 million ("Carve Out Cap") (plus all unpaid professional fees and expenses allowed by this Court (whether by interim procedure, Court order or otherwise, provided that such fees and expenses are not subsequently disallowed by this Court) that were incurred prior to the first Business Day following delivery by the Administrative Agent of a Carve Out Trigger Notice whether allowed prior to or after delivery of a Carve Out Trigger Notice), provided that (w) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent or the Lenders, it being understood that, subject to paragraph 19 below, the Carve Out shall be available to cover investigation and diligence professional fees and expenses for any statutory committee, if any, in the chapter 11 cases of the Operating Debtors (the "Operating Debtors Committee"), (x) it being understood that nothing in the foregoing prohibition shall apply to any action taken directly or indirectly to treat the Obligations as unimpaired under a plan of reorganization, (y) so long as a Carve Out Trigger Notice has not been delivered, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court (whether allowed before or after delivery of a Carve Out Trigger Notice) and payable under Sections 328, 330 and 331 of the Bankruptcy Code, and (z) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Operating Debtors' estates.  For the purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered

by the Administrative Agent to the Company and its counsel, the United States Trustee and lead

counsel to the Operating Debtors Committee, which notice may be delivered following the

occurrence and during the continuation of any Termination Event, stating that the Carve Out Cap

has been invoked.  The Carve Out is senior to all liens securing the Prepetition Obligations, the

Adequate Protection Liens, the 507(b) Claims and any and all other adequate protection, liens or

claims securing the Prepetition Obligations granted hereunder.

9.    *Additional Adequate Protection*

(a)    <u>Payments</u>:    As additional adequate protection, the Operating Debtors are

authorized and directed to pay to the Administrative Agent and the Lenders (i) accrued and

unpaid prepetition interest and fees as well as current postpetition payment of interest at the

default rate (excluding LIBOR options) and fees under Sections 2 and 3 of the Credit Agreement,

including without limitation Section 2.12(c) and Section 3.3, for all Loans and Letters of Credit

outstanding thereunder and current postpetition payments of interest for all Specified Hedge

Agreements (to the extent any of the foregoing amounts are required to be paid under such

Specified Hedge Agreement) and (x) the documented reasonable fees, costs and expenses

incurred or accrued by the Administrative Agent (the foregoing to include all unpaid prepetition

interest, fees and expenses), and including the documented reasonable fees and expenses of legal

counsel (redacted for privilege and work product) and other professionals hired by or on behalf

of the Administrative Agent and (y) all documented reasonable out-of-pocket expenses of each

of the members of the Steering Committee incurred in connection with their participation in the

Steering Committee (*e.g.*, expenses for travel, food and lodging) and (ii) all quarterly

amortization payments on the date that such payment becomes due as set forth in Section 2.3 of

the Credit Agreement (determined without giving effect to any acceleration of the Obligations)

(collectively, the "Adequate Protection Payments").  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.

(b)    Other Covenants:    As additional adequate protection, the Operating Debtors shall (i) maintain (a) their cash management arrangement and (b) the treatment of any and all claims on account of postpetition distributions and transfers by the Operating Debtors to any Affiliated Debtor (the "Priority Intercompany Claim"), in each case, in a manner consistent with such arrangements and treatment described in the cash management order entered substantially contemporaneously with this Order (the form of which was delivered to the Administrative Agent prior to the Petition Date) without further modification thereto, (ii) comply with the covenants in Section 7.1 of the Credit Agreement, and (iii) not permit trailing twelve month EBITDA for such period minus the aggregate amount of Capital Expenditures incurred during such period, as calculated as of each fiscal quarter end, to be less than the amount specified on Schedule A for such period.  For purposes of this calculation, the terms "EBITDA" and "Capital Expenditures" shall be calculated in accordance with the methodologies utilized by CCO for purposes of preparing its 2009 Budget as contained in Exhibit B hereto (which is calculated on a consistent basis with the calculations used for the Company's public filings of "Adjusted EBITDA"); provided, however, that (a) restructuring expenses shall be expressly excluded from EBITDA, (b) for the purposes of the foregoing calculations, EBITDA minus Capital Expenditures for the each of the last three fiscal quarters for fiscal year 2008 shall be deemed to be the amounts specified on Schedule B for such fiscal quarter periods, and (c) CCO

represents that EBITDA, as set forth on Schedules A and B, excludes restructuring expenses. CCO shall deliver a certificate calculating the foregoing not later than 30 days following each fiscal quarter end (provided that if such day is not a business day, then on the next succeeding business day).

(c)    Reporting:    As further adequate protection hereunder, the Debtors shall provide to the Administrative Agent the reports set forth on Exhibit C annexed hereto on the dates listed thereon, (the "Reporting Requirements"), together with such additional information as the Administrative Agent and the Steering Committee may reasonably request from time to time to the extent provided in the Credit Agreement (but without prejudice to (1) the Operating Debtors' right to withhold information to protect privilege, work product or other litigation-related information and (2) the rights of the Administrative Agent to seek through discovery any of the information in clause (1) hereof), each in form reasonably satisfactory to the Administrative Agent and the Steering Committee.

10.    *Termination*.    The Operating Debtors' right to use the Cash Collateral pursuant to this Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of (x) six months from the date of entry of this Order (or such later date agreed to in writing by the Administrative Agent and the Steering Committee, which extension shall be effective without further Court approval), (y) unless extended by the Administrative Agent and the Steering Committee in their sole discretion, twenty-five days after the Petition Date if the Final Order in form and substance substantially similar to this Order, with any modifications hereto in form and substance reasonably satisfactory to the Administrative Agent and the Steering Committee, has not been entered by this Court on or before such date and (z) upon 5 Business Days' written notice to the

Operating Debtors (with a copy to counsel for the Operating Debtors Committee, the United States Trustee, the Unofficial Noteholders Committee (as defined below) and Vulcan Inc.) after the occurrence and during the continuance of any of the following events (unless waived by the Administrative Agent and the Steering Committee, "<u>Termination Events</u>") beyond any applicable grace period set forth below:

(a)    Failure of the Operating Debtors to make any payment to the Administrative Agent or the Lenders as and when required by this Order unless otherwise ordered by this Court;

(b)    Failure of the Operating Debtors to comply with any covenant or agreement specified in this Order and such failure to comply with such covenant or agreement shall continue unremedied following notice by the Administrative Agent of such failure;

(c)    Any of the Cases shall be dismissed or converted to a chapter 7 case; or a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Cases;

(d)    This Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Operating Debtors which have an aggregate value in excess of $45,000,000 and such order shall not, at all times, be subject to stay pending appeal;

(e)    An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Order without the consent of the Administrative Agent and the Steering Committee;

(f)    The Operating Debtors shall create, incur or suffer to exist any postpetition Liens or security interests other than those (i) granted by this Order, (ii) permitted by Sections 7.3 of the Credit Agreement necessary in the ordinary course conduct of the Operating Debtors' businesses and consistent with past practice,   (iii) adequate protection liens permitted under the Intercreditor Agreements, or (iv) incurred in connection with the issuance of surety bonds which are issued in the ordinary course of business;

(g)    Any other claim which is *pari passu* with or senior to the 507(b) Claim of the Administrative Agent and the Lenders shall be granted in any of the Cases;

(h)    Any judgment in excess of $45,000,000 as to any postpetition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not effectively be stayed at all times; or there shall be rendered against the Debtors a non-monetary judgment with respect to a postpetition event which has or could reasonably be expected to have a material adverse effect on the property, business, condition (financial or otherwise) of the Debtors taken as a whole or the ability of the Debtors to perform their obligations under this Order;

(i)    Only to the extent an Operating Debtors Committee is appointed, a filing by any Debtor (or any successors and assigns) of any motion or application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Obligations or any other cause of action against and/or with respect to the Obligations, the prepetition liens securing such Obligations, the Administrative Agent or any of the Lenders; it being understood that nothing in the foregoing shall apply to any motion or application or adversary proceeding with respect to unimpairment of the Debtors' prepetition debt; or

(j)    Any Operating Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables (including without limitation, reclamation claims) other than payments authorized by the Court and which are (i) approved by the Administrative Agent and the Steering Committee, (ii) in respect of accrued payroll and related expenses as of the commencement of the Cases, or (iii) in respect of general unsecured creditors of the Operating Debtors (excluding the Priority Intercompany Claim), in each case to the extent authorized by one or more "first day" orders or other orders of the Court (including this Order).

The Operating Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Operating Debtors Committee and the United States Trustee) of the occurrence of any Termination Event.

11.    *Remedies After Termination Event*.  The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit, (i) the Administrative Agent to immediately upon the occurrence and during the continuation of a Termination Event, and the giving of five Business Days' prior written notice to the Operating Debtors (with a copy to counsel for any Operating Debtors Committee and to the United States Trustee), terminate the right of the Operating Debtors to use Cash Collateral, and (ii) the Administrative Agent upon the occurrence and during the continuance of a Termination Event, and the giving of five Business Days' prior written notice to the Operating Debtors (with a copy to counsel for any Operating Debtors Committee and to the United States Trustee), to exercise all rights and remedies against the Collateral provided for in the Loan Documents and this Order (including, without limitation, the right to setoff monies of the Operating Debtors in accounts maintained with the Administrative Agent or any Lender).   In no event shall the Administrative

Agent or the Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral. The delay or failure of the Administrative Agent or the Lenders to exercise rights and remedies under the Loan Documents or this Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Loan Documents.

12.     *Limitation On Charging Expenses Against Collateral*.  Subject to and effective upon entry of the Final Order under Bankruptcy Rule 4001, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Administrative Agent and the Steering Committee and no such consent shall be implied from any other action, inaction, or acquiescence by the Administrative Agent, the Steering Committee or any of the Lenders.

13.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the Administrative Agent on behalf of the Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

14.     *Reservation of Rights of the Administrative Agent and the Lenders*.  In these circumstances, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Administrative Agent and the Lenders.  Notwithstanding

any other provision hereof, the grant of adequate protection to the Administrative Agent and the Lenders pursuant hereto is without prejudice to the right of the Administrative Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.   Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Administrative Agent and the Lenders under the Guarantee and Collateral Agreement or the other Loan Documents, and the Lenders expressly reserve all rights and remedies that the Administrative Agent and the Lenders now or may in the future have under the Guarantee and Collateral Agreement, the Loan Documents and/or applicable law in connection with all Defaults and Events of Default.   Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall have the effect of, or shall be construed as having the effect of, amending or waiving any covenant, term or provision of the Credit Agreement or any Loan Document, or any rights or remedies of the Administrative Agent or the Lenders thereunder, including (without limitation) any right to argue that failure to strictly comply with any such covenant, term or provision during the course of the Cases or that any use of Cash Collateral permitted or contemplated hereby constitutes a Default or Event of Default which is not subject to cure under section 1124 of the Bankruptcy Code or otherwise despite any consent or agreement contained herein.   Without limiting the foregoing, the Administrative Agent reserves the right to request delivery of updated Compliance Certificates in form and substance contemplated by the Credit Agreement from time to time, and the Operating Debtors reserve their right to refuse any such request.

15.     *Reservation of Rights of the Debtors*.    The foregoing adequate protection provisions contained in this Order shall be without prejudice to the rights of the Debtors to object to the Administrative Agent's or any other Adequate Protection Party's request for any other, further or additional adequate protection.    Nothing in this Order shall be deemed to waive, modify or otherwise impair the respective rights of the Debtors under the Loan Documents, and the Debtors expressly reserve all rights and remedies that each has now or may in the future have under the Loan Documents and/or applicable law. Without limiting the foregoing, nothing in this Order shall have the effect of, or shall be construed as having the effect of, amending or waiving any covenant, term or provision of the Credit Agreement or any Loan Document, or any rights or remedies of the Debtors thereunder, or the Debtors' right to object to the Administrative Agent's or the Lenders' assertion that any use of Cash Collateral permitted or contemplated hereby constitutes a Default or Event of Default which is not subject to cure under section 1124 of the Bankruptcy Code or otherwise.

16.     *Perfection of Adequate Protection Liens*.    The Administrative Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.    Whether or not the Administrative Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

17.    *Preservation Of Rights Granted Under The Order*.

(a)    Except as permitted in paragraph 10(f) of this Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the Administrative Agent and the Lenders shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Operating Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the 507(b) Claims, the other administrative claims granted pursuant to this Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and that such 507(b) Claims, the other administrative claims granted pursuant to this Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Administrative Agent of the effective date of such reversal,

stay, modification or vacatur or (ii) the validity, priority or enforceability of the Adequate

Protection Liens.    Notwithstanding any such reversal, stay, modification or vacatur, any use of

Cash Collateral or any Adequate Protection Obligations incurred by the Operating Debtors

hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative

Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all

respects by the original provisions of this Order, and the Administrative Agent and the Lenders

shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with

respect to all uses of Cash Collateral and all Adequate Protection Obligations.

(d)    The Adequate Protection Payments shall not be subject to counterclaim,

setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent

chapter 7 case.

(e)    Except as expressly provided in this Order or in the Loan Documents, the

Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the

Administrative Agent and the Lenders granted by the provisions of this Order and the Loan

Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an

order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing

any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of

reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code,

the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.

The terms and provisions of this Order and the Loan Documents shall continue in the Cases, in

any successor cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the

Adequate Protection Liens, the Section 507(b) Claims, the other administrative claims granted

pursuant to this Order, and all other rights and remedies of the Administrative Agent and the

Lenders granted by the provisions of this Order and the Loan Documents shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash. Notwithstanding anything contained in this paragraph, nothing in this Order shall (x) limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt or (y) be deemed to modify the Loan Documents.

18.   *Effect Of Stipulations On Third Parties*.   The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding upon the Debtors (subject to the terms hereof) and any successor thereto (including without limitation any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances.   The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding on all parties in interest, including, without limitation, any statutory committee that may be appointed in the Cases, unless, and solely to the extent that, (a) the Operating Debtors Committee (if any) or another party in interest files an objection to this Order challenging such stipulations, admissions, releases or other provisions, or otherwise requests standing to assert any claims or causes of action on behalf of the Debtors' estates against the Administrative Agent and the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Loan Documents, the Obligations or the Prepetition Collateral, in each case no later than sixty (60) days from the date of entry of the Final Order or such longer period as the Court orders for cause shown prior to the expiration of such period, and (b) the Court sustains such objection or otherwise grants such objecting party standing to pursue any such claims or causes of action on behalf of the Debtors at a hearing occurring no later than ninety (90) days after the Petition Date.   If no such objection or request is timely filed then,

without further order of the Court, (x) all of the Obligations shall constitute allowed secured claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Administrative Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Obligations, the Administrative Agent's liens on the Prepetition Collateral and the Lenders shall not be subject to any other or further challenge by any Operating Debtors Committee or any other party-in-interest, and any such Operating Debtors Committee or party-in-interest shall be enjoined from seeking to exercise any rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding, contested matter or standing request is timely filed, the stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Operating Debtors Committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding, contested matter or standing request.  Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Operating Debtors Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  Notwithstanding anything in this paragraph 18 to the contrary, if no statutory committee is appointed in the Operating Debtors' Cases, then the Operating Debtors shall have the right to review and, if they so determine, challenge the stipulations, admissions, releases and provisions

contained herein for a period of twenty (20) days after the date of entry of the Final Order, after which time, absent such challenge, the stipulations, admissions, releases and provisions shall be deemed binding on the Operating Debtors and their estates.

19.    *Limitation On Use Of Collateral*.  The Operating Debtors shall use the proceeds of the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order. Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents, or to any of the liens or claims granted under this Order or the Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the Administrative Agent and the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Administrative Agent's assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the Loan Documents or this Order, (d) seek to modify any of the rights granted to the Administrative Agent and the Lenders hereunder or under the Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted hereunder, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $250,000 of the Prepetition Collateral (including the Cash Collateral) the Collateral or the Carve Out may be used by any Operating Debtors Committee, or by the Debtors to the extent no such Operating Debtors Committee has been appointed, to investigate the validity, enforceability or priority of the Obligations or the Administrative Agent's liens on the

Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Administrative Agent or any of the Lenders; it being further understood that nothing in this paragraph shall apply to any action, motion or application or adversary proceeding with respect to treating the Obligations as unimpaired in accordance with section 1124 of the Bankruptcy Code.

20.    *Irell Proceeds*.    The funds on deposit in a certain escrow account established at Wilmington Trust Bank F.S.B. and governed by the escrow agreement dated February 10, 2009 (the "Irell Proceeds") shall (i) continue to be on deposit in an escrow account maintained at Wilmington Trust Bank F.S.B. and (ii) not be spent by the Debtors (except to pay the fees and expenses of the escrow agent in accordance with the terms of the escrow agreement), absent further order of this Court.    The rights of all parties on the issue of whether such proceeds constitute "Cash Collateral" or property of any of the Operating Debtors are preserved.

21.    *Asset Sales*.    Nothing herein shall (i) prejudice the Operating Debtors' rights, if any, under section 363 of the Bankruptcy Code to sell any Collateral under section 363 of the Bankruptcy Code, provided that the Operating Debtors shall segregate funds from any such sales, and (ii) prejudice the right of the Administrative Agent to object to any such sale and/or seek application of such proceeds in accordance with the terms of the Credit Agreement).

22.    *Waiver of Claims and Causes of Action*.    Without prejudice to the rights of any other party, including any Operating Debtors Committee (but subject to the limitations thereon in paragraphs 17 and 18), the Debtors have waived any and all claims and causes of action against the Administrative Agent and the Lenders and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors related to this Order or the negotiation of the terms thereof.

23.    *Binding Effect; Successors And Assigns.*    The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent, the Lenders, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Lenders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Order, the Administrative Agent and the Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

24.    *Limitation of Liability.*    In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the Loan Documents, the Administrative Agent and the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).    Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon the Administrative Agent or any of the Lenders any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

25.    *No Impact on Certain Contracts/ Transactions*.   No rights of any entity under Sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such Sections of the Bankruptcy Code.

26.    *Avoidance Actions*.    Notwithstanding anything to the contrary herein, the Adequate Protection Parties shall not have any claim or lien against the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") or any proceeds thereof; provided, however, that subject to entry of the Final Order, the Adequate Protection Liens and 507(b) Claim of the Adequate Protection Parties shall apply solely to the proceeds of Avoidance Actions.

27.    *Effectiveness*.   This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Order.

28.    *Final Hearing*.   The Final Hearing is scheduled for April 15, 2009 at 9:45 am., prevailing Eastern time, before this Court.

The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.   Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland & Ellis LLP, Citigroup Center, 153 East 53 Street, New York, New York 10022, Attention: Richard M. Cieri, Esq. and Paul M.

Basta, Esq., attorneys for the Debtors, (b) Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119, Attention: Albert Togut, Esq. and Frank Oswald, Esq., attorneys for Charter Investment, Inc., (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Peter V. Pantaleo, Esq., Morris J. Massel, Esq. and A. Gregory Finkell, Esq., attorneys for the Administrative Agent, (d) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attention: Alan W. Kornberg, Esq., attorneys for the unofficial committee of unaffiliated holders of those certain CCH I and CCH II notes issuances (the "Unofficial Noteholders Committee"), (e) any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed, (f) Skadden, Arps, Slate, Meagher & Flom LLP, at 4 Times Square, New York, New York 10036, Attention: Jay M. Goffman, Esq., and 300 South Grand Avenue, Los Angeles, California, Attention:  Nicholas P. Saggese, Esq., attorneys for Vulcan Inc., and (g) the Office of the United States Trustee, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than April 8, 2009 at 4:00 p.m., prevailing Eastern time.


Dated:   New York, New York
         March 30, 2009

                              s James M. Peck
                              UNITED STATES BANKRUPTCY JUDGE

## **SCHEDULE A**

| Fiscal Quarter Ending March 31, 2009 | $1,110,072 |
|---|---|
| Fiscal Quarter Ending June 30, 2009 | $1,085,480 |
| Fiscal Quarter Ending September 30, 2009 | $1,071,554 |
| Fiscal Quarter Ending December 31, 2009 | $1,027,158 |

**<u>SCHEDULE B</u>**

| | |
|---|---|
| Fiscal Quarter Ended June 30, 2008 | $273,530 |
| Fiscal Quarter Ended September 30, 2008 | $273,724 |
| Fiscal Quarter Ended December 31, 2008 | $354,947 |

**Exhibit A**
**Cash Forecast**

**Attached.**

**Charter Communications Operating, LLC (CCO)**
**13 Week Cash Forecast (Amounts in 000's)**

3/26/2009 9:03

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 Week |
| | W/E 4/3/2009 | 4/10/2009 | 4/17/2009 | 4/24/2009 | 5/1/2009 | 5/8/2009 | 5/15/2009 | 5/22/2009 | 5/29/2009 | 6/5/2009 | 6/12/2009 | 6/19/2009 | 6/26/2009 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance  (1) | 641,244 | 698,545 | 785,510 | 847,872 | 637,358 | 518,384 | 574,807 | 550,755 | 617,951 | 641,954 | 628,307 | 671,259 | 661,271 | 641,244 |
| | | | | | | | | | | | | | | |
| Customer Receipts (2) | 142,000 | 140,145 | 140,145 | 135,092 | 123,800 | 123,800 | 144,130 | 138,757 | 113,700 | 134,000 | 138,757 | 138,757 | 123,800 | 1,736,884 |
| | | | | | | | | | | | | | | |
| Capital Expenditures | (1,883) | (1,883) | (1,883) | (61,883) | (16,883) | (16,883) | (16,883) | (16,883) | (16,883) | (16,883) | (16,883) | (16,883) | (16,883) | (219,483) |
| General Expense | - | - | - | (94,688) | (23,708) | (23,708) | (23,708) | (23,708) | (23,708) | (23,708) | (23,708) | (23,708) | (23,708) | (308,061) |
| Payroll and Related (3) | (20,481) | (15,581) | (20,481) | (15,581) | (20,481) | (15,581) | (20,481) | (15,581) | (20,481) | (15,581) | (20,481) | (15,581) | (20,481) | (236,856) |
| Programming Expense | - | - | - | (144,854) | (34,230) | - | (62,856) | - | - | (34,230) | (7,251) | (76,374) | - | (359,795) |
| Utilities & Rent Expense | - | - | - | (12,086) | (4,100) | (3,125) | (3,125) | (2,167) | (2,167) | (4,100) | (3,125) | (3,125) | (2,167) | (39,286) |
| Contractors (Customer Facing) | (4,466) | (1,450) | (17,750) | (1,450) | (1,450) | (1,450) | (17,750) | (1,450) | (1,450) | (1,450) | (21,825) | (1,450) | (1,450) | (74,841) |
| Call Centers | - | - | - | (5,700) | - | - | (2,000) | - | (5,700) | - | - | (2,000) | (5,700) | (21,100) |
| Taxes and Fees (4) | (5,190) | (6,846) | (3,434) | (8,644) | (6,041) | (6,630) | (3,712) | (11,772) | (12,122) | (7,369) | (827) | (9,624) | (433) | (82,644) |
| Operational Disbursements | (32,021) | (25,760) | (43,548) | (344,886) | (106,894) | (67,378) | (150,516) | (71,561) | (82,511) | (103,322) | (94,101) | (148,745) | (70,822) | (1,342,065) |
| | | | | | | | | | | | | | | |
| Utility Adequate Assurance Reserve | - | (6,586) | - | - | - | - | - | - | - | - | - | - | - | (6,586) |
| Reorganization Professional Fees | - | - | - | - | - | - | (2,826) | - | (7,186) | - | (1,705) | - | (7,907) | (19,625) |
| Vendor Deposits | (18,333) | (18,333) | (18,333) | - | - | - | - | - | - | - | - | - | - | (55,000) |
| Possessory Lien Payments | - | (2,500) | (2,500) | - | - | - | - | - | - | - | - | - | - | (5,000) |
| Legal Settlements | - | - | - | (720) | - | - | - | - | - | - | - | - | - | (720) |
| Restructuring Disbursements | (18,333) | (27,419) | (20,833) | (720) | - | - | (2,826) | - | (7,186) | - | (1,705) | - | (7,907) | (86,930) |
| | | | | | | | | | | | | | | |
| Swap Loan Payments (5) | - | - | - | - | (2,599) | - | - | - | - | (2,599) | - | - | - | (5,198) |
| Commitment Fees | (850) | - | - | - | - | - | - | - | - | - | - | - | - | (850) |
| CCO Bank Interest (6) | (16,294) | - | (13,402) | - | (53,241) | - | (14,839) | - | - | (42,066) | - | - | - | (139,841) |
| CCO Bond Interest (6) | - | - | - | - | (80,387) | - | - | - | - | - | - | - | - | (80,387) |
| Interest Income | 299 | - | - | - | 348 | - | - | - | - | 339 | - | - | - | 986 |
| Term Paydown (6) | (17,500) | - | - | - | - | - | - | - | - | - | - | - | - | (17,500) |
| Borrowing Expenses | (34,345) | - | (13,402) | - | (135,880) | - | (14,839) | - | - | (44,325) | - | - | - | (242,790) |
| | | | | | | | | | | | | | | |
| Ending Balance | 698,545 | 785,510 | 847,872 | 637,358 | 518,384 | 574,807 | 550,755 | 617,951 | 641,954 | 628,307 | 671,259 | 661,271 | 706,342 | 706,342 |

(1) Excludes approximately $88MM of cash held at Debtor entities above CCO and approximately $26MM of escrowed cash.
(2) Week 1 includes an estimated $20MM of receipts from the one post-filing day of the previous week.
(3) Excludes impact of future operational cost reduction initiatives.
(4) Includes sales & use, telephony and estimated income taxes, franchise fees and copyright fees.
(5) Reflects estimated mark to market on hedges as of January 31, 2009.  Actual liability will reflect final termination values, which will be determined by each counterparty and established subsequent to the Petition Date.
(6) Amortization payments and default interest are assumed to be paid solely in the context of a consensual arrangement for the use of cash collateral or as may be ordered by the Court.

**Exhibit B**
**2009 Budget**

**Attached.**

# CHARTER COMMUNICATIONS OPERATING, LLC
## 2009 BUDGET

Amounts in 000s

| | 1st Qtr | 2nd Qtr | 3rd Qtr | 4th Qtr | 2009 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Video | 884,497 | 895,939 | 894,072 | 897,196 | 3,571,704 |
| High-speed Internet | 354,270 | 362,147 | 368,887 | 375,600 | 1,460,904 |
| Telephone | 171,362 | 182,571 | 190,605 | 198,503 | 743,041 |
| Advertising Sales | 59,252 | 69,237 | 71,014 | 70,758 | 270,261 |
| Commercial | 106,260 | 110,891 | 117,077 | 121,535 | 455,763 |
| Other | 102,039 | 103,855 | 106,032 | 105,511 | 417,437 |
| **Total Revenue** | 1,677,680 | 1,724,640 | 1,747,687 | 1,769,103 | 6,919,110 |
| | | | | | |
| **Operating Expenses** | | | | | |
| Programming | 447,417 | 451,008 | 457,910 | 458,571 | 1,814,906 |
| Service | 266,619 | 276,073 | 281,945 | 268,277 | 1,092,914 |
| Advertising Sales | 25,010 | 25,679 | 25,651 | 25,123 | 101,463 |
| G&A (before management fees) | 253,747 | 261,490 | 264,985 | 254,630 | 1,034,852 |
| Marketing | 66,609 | 65,210 | 77,567 | 74,586 | 283,972 |
| **Total Operating Expense** | 1,059,402 | 1,079,460 | 1,108,058 | 1,081,187 | 4,328,107 |
| | | | | | |
| **Total Operating Cash Flow** | 618,278 | 645,180 | 639,629 | 687,916 | 2,591,003 |
| Less Corporate Overhead | 34,570 | 34,176 | 33,241 | 32,093 | 134,080 |
| | | | | | |
| **Adjusted EBITDA** | 583,708 | 611,004 | 606,388 | 655,823 | 2,456,923 |
| | | | | | |
| **Capital Expenditures** | 323,869 | 299,832 | 281,640 | 267,634 | 1,172,975 |
| | | | | | |
| **Unlevered Free Cash Flow** | 259,839 | 311,172 | 324,748 | 388,189 | 1,283,948 |

Exh. B-1

**Exhibit C**
**Reporting**

**Attached.**

1.  <u>Monthly Financial and Operating Reporting</u>.

    a.  Within 5 business days following the end of each 4 week period, an update to the then-current Cash Forecast such that the updated Cash Forecast shall be for the succeeding 13-week period (*it being agreed that*, at any time, the Operating Debtors may update the entire then-current 13-week Cash Forecast to reflect actual results).   Together with the foregoing update, delivery of a variance period showing line item variances for the prior 4-week period as compared to the Cash Forecast for the same period.

    b.  Monthly operating reports required to be filed with the United States Trustee concurrent with the timing of such filing.

    c.  Monthly operating reporting package (in form consistent with such package delivered to the Administrative Agent on or about February 6, 2009), to be provided within 25 days of each month-end.

2.  <u>On Going Diligence Items</u>

    a.  Any budget, business plan, operating plan or financial projection provided to any statutory committee appointed in the Chapter 11 Cases or any ad hoc committee, within 5 days of such being provided to any statutory or ad hoc committee.

    b.  Any new or amended budgets  or projections that are adopted by the Board, within 5 days of such being adopted.

3.  <u>Event Driven Reporting</u>

    a.  Copies or notice of all written proposals and/or offers to purchase assets outside of the ordinary course of business (with aggregate consideration for any such purchase in excess of $50,000,000) from the Borrower, its Subsidiaries or any Designated Holding Company under the Credit Agreement, including a description of the property or assets that is the subject of the proposal or offer, the consideration and key terms and conditions, that are provided to any statutory or ad hoc committee.

    b.  Copies or notice of all proposals and/or offers to provide financing to the Debtors or to sponsor a Plan, including a description of the offer or proposal and the key elements thereof, including amounts, consideration, terms and conditions.

    c.  Notice of any material changes to cash management system except as otherwise approved by the Court.

K&E 14409889.1

4.  <u>Chapter 11 Specific Reporting</u>

    a.  Adequate protection payments to any creditor other than to the extent contemplated by the Cash Collateral Order, to be included in the report contemplated by Section 1(a).

    b.  Payments to estate professionals and ordinary course professionals and to professionals of secured creditors other than the lenders, to be included in the report contemplated by Section 1(a).

    c.  Cash payments or transfers outside of the ordinary course to related entities (by payment and with amount and entity).

Notwithstanding anything contained in Sections 2(a), 3(a) and 3(b) of this Exhibit C to the contrary, (1) the Operating Debtors retain the right to withhold information to protect privilege, work product or other litigation-related information and (2) the Administrative Agent retains the right to seek through discovery any of the information in clause (1) hereof.

K&E 14409889.1