```
UNITED STATES BANKRUPTCY COURT      Hearing Date: May 5, 2009
SOUTHERN DISTRICT OF NEW YORK       Hearing Time: 9:00 a.m.
-------------------------------x
                                :   Case No. 09-111435 (JMP)
In re                           :
                                :   Jointly Administered
CHARTER COMMUNICATION,          :
  INC., et al.,                 :   Chapter 11
                                :
               Debtors.         :
                                :
-------------------------------x
```

**OBJECTION OF THE UNITED STATES TRUSTEE
TO THE DEBTORS' DISCLOSURE STATEMENT**

The United States Trustee for Region 2 (the "United States Trustee") respectfully submits this Objection to the Disclosure Statement (the "Disclosure Statement") filed in these jointly administered cases. The Disclosure Statement is deficient and fails to meet the standards of containing "adequate information" set forth in 11 U.S.C. § 1125(a).

In support of her objection, the United States Trustee alleges as follows:

**Introduction**

The Disclosure Statement contains a broad non-debtor release provision. The Disclosure Statement does not attempt to explain why this provisions is justified. Accordingly, absent further disclosure and explanation, the Disclosure Statement fails to contain adequate information and should not be approved.

**Background**

**General Background**

1. On March 27, 2009 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of

the Bankruptcy Code. ECF No. 1. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors are one of the largest providers of broadband entertainment and communications services in the United States. See Declaration of Gregory L. Doody, Chief Restructuring Officer and Senior Counsel of Charter Communications, Inc., in Support of First Day Pleadings at ¶5, ECF No. 2.

3. On April 10, 2009, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in these cases. ECF No. 135.

4. On the Petition Date, the Debtors filed their Joint Chapter 11 Plan of Reorganization. ECF No. 36.

5. On the Petition Date, the Debtors also filed their Disclosure Statement. ECF No. 38.

### **The Plan and Disclosure Statement**

6. According to the Disclosure Statement, secured claims will be reinstated and rendered unimpaired under the Plan. See Disclosure Statement at 32-52, ECF No. 38. General unsecured claims will be paid in full and will be unimpaired under the Plan Id.

7. The holders of the various notes issued by the Debtors will receive, depending upon the notes, stock, preferred stock, cash, warrants, the right to participate in a rights offering, and new notes. Id. These note holders are impaired under the Plan. Id.

8. Interest holders, other than Paul Allen,[1] will receive no distributions under the Plan. Id.

9. The Disclosure Statement also sets forth a non-debtor release (the "Non-Debtor Release") that is included in the Plan. See Disclosure Statement at 88, Plan at 60. Specifically, under the Plan, holders of claims and interests are deemed to provide a full discharge and release to the Debtors' members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives from any and all causes of action, whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities law, or otherwise, arising from or related in any way to the Debtors. Id.[2]

---

[1] According to the Debtors' voluntary petition, Mr. Allen is the only person who holds 5% or more of the Debtors' voting securities. See Voluntary Petition at Exhibit A ¶4, ECF No. 1.

[2] The Non-Debtor release provides as follows:

Third Party Releases. On the Effective Date and effective as of the Effective Date, the Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Debtor Releasees and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan; provided, that the foregoing "Third Party Release" shall not operate to waive or release any person or Entity (other than a Debtor Releasee) from any Causes of Action expressly set forth in and preserved by the Plan, the Plan Supplement or related documents. Notwithstanding anything in the Plan to the contrary, the Releasing Parties will not release any Causes of Action that they, the Debtors or the Reorganized Debtors may have now or in the future against the Non-Released Parties. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third

**Argument**

**General Standards**

Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization. 11 U.S.C. § 1125(b).

Adequate information is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

The court may require disclosure appropriate to the circumstances of each case. In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995). See also In re Metrocraft Pub. Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (citing nineteen nonexclusive factors that courts may use to evaluate the adequacy of a disclosure statement) and In re Ferretti, 128 B.R.

---

Party Release is: (1) in exchange for the good and valuable consideration provided by the Debtor Releasees, a good faith settlement and compromise of the claims released by the Third Party Release; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Holders of Claims and Interests asserting any claim released by the Third Party Release against any of the Debtor Releasees.

Plan at 60.

16, 18-19 (Bankr. D.N.H. 1991) (citing eighteen of the Metrocraft factors). The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. In re Duratech Industries, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). Accordingly, a disclosure statement must set forth the justification for any non-debtor releases contained in a plan. See In re Source Enterprises, Inc., Case No. 06-11707(AJG)(Bankr. S.D.N.Y. July 31,2007)(minute order and opinion, ECF No. 322, denying approval of disclosure statement that, among other things, failed to justify third party releases under Metromedia standards).

**No Justification is Provided for the Non-Debtor Releases**

Neither the Disclosure Statement nor the Plan explain why the Non-Debtor Release is warranted or justified. In order to be valid, the Non-Debtor Release must meet the standard set forth under Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005)("Metromedia").

The Second Circuit has held that non-debtor releases do not pass muster merely by virtue of the fact that they appear in the plan; the Debtors must demonstrate that the facts justify the release being sought - a rare circumstance. See id. at 141-43.

Specifically, as noted above, "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtor's

-5-

reorganization plan." Metromedia, 416 F. 3d at 141 (quoting Drexel Burnham Lambert Group, Inc., 960 F.2d at 292 (2d Cir. 1992)). In Metromedia, the Second Circuit expressed its dissatisfaction with the frequency in which non-debtor releases are included in plans. These releases were identified by the Court as "a bankruptcy discharge arranged without a filing and without the safeguards of the Code." Id. at 142. Therefore, non-debtor releases are appropriate only in rare cases, and a non-debtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. See id.. at 141-143.

The Second Circuit has approved of non-debtor releases in unique circumstances. Such circumstances are where: 1) the estate received substantial consideration, see Drexel Burnham Lambert Group, Inc., 960 F.2d at 292 (2d Cir. 1992) (multi-billion dollar settlement including a payment of over a billion dollars into fund by Michael Milken and other co-liable Drexel personnel); 2) enjoined claims were "channeled" to a settlement fund rather than extinguished, see MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988); 3) where the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," and the plan otherwise provided for the full payment of the enjoined claims, see Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989); and 4)

the affected creditors consented.  See In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993).  See also  Metromedia at 143.

Recent cases further clarify the Metromedia requirements. In In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006), the Court, with an eye on Metromedia and following the Second Circuit's narrow standard, found that the case before it was "the rare case" involving unusual facts that justified the release of certain non-debtor parties, including the Plan funders and an affiliated company.  Id. at 55.

The Court in Karta determined that the non-debtor release provisions were "important" to the Debtor's plan of reorganization for the following reasons: the released parties agreed to make a substantial financial contribution to fund the plan **only** if they would be released from Creditors' claims.  Id. If the releases were not approved, the released parties would not fund the plan.  Without funding, the proposed plan would fail, therefore the releases could not be excised from the plan.  Id. However, the Court noted that it would be an abuse of process simply to allow the release of a non-debtor in return for its financial contribution.  Something else was therefore needed in order to make a case "unique."  Id.  The Court framed the issue as follows: "whether a significant non-debtor financial contribution plus other unusual factors render a situation so 'unique' that non-debtor releases are appropriate."  Id.

By contrast, in this case, the Debtors simply have not shown, or attempted to show, that this case meets any of the requirements for "uniqueness" set forth in Metromedia or its progeny that would justify the approval of the Non-Debtor Releases.  Nor is the United States Trustee able to discern from the Plan or Disclosure Statement any factors that would justify a finding that this is the sort of rare situation where broad releases would be appropriate.[3]

In fact, in connection with requests to form an equity committee, the United States Trustee received several letters from equity holders alleging, among other things, a conflict of interest surrounding Paul Allen's dealings with the Debtors and his retention of equity under the Plan.  In its response to those allegations, the official committee of unsecured creditors stated

---

[3] See also In re Adelphia, 2007 WL 866643, *105-108(Bankr. S.D.N.Y. 2007 (three categories of third party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements; (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the Equity Committee had raised, but then abandoned, an objection to the validity of the Non-Debtor releases.  In dicta, the Court stated that the releases were acceptable because all of the affected creditors had consented: they affirmatively checked a box on the Plan solicitation ballots indicating their willingness to grant releases); In re Spiegel Inc., 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (No. 03-11540 BRL) (Plan's third-party releases and injunctions were critical components of the Settlement that played a "vital part in the plan" and were "necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); In re XO Communications, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (third-party releases permissible where non-Debtors provided significant consideration, non-Debtor releases were integral to the Plan, and non-Debtors' interests aligned with those of the Debtors with regard to claims.)

that it intends to investigate fully the facts and circumstances surrounding Mr. Allen's transactions with the Debtors. It appears that the Non-Debtor Release would make such an investigation meaningless.

Additionally, in Karta, the District Court emphasized that "a necessary corollary of Metromedia must be that the releases offered to the Non-Debtors bear a reasonable relationship to the protection of the estate and go no further than necessary to protect those interests." Karta, 342 B.R. at 57. Although the Court in Karta held that non-debtor releases were appropriate, it also found that the wording of the proposed releases was overbroad, potentially providing the release of claims that had nothing to do with the Debtors' business. Id. The offensive language stated that ". . . all Claims of Creditors that are potentially viable against the released Parties. . ." were released. Id. The Court, therefore, modified the confirmation order by limiting the release of Creditor claims against non-debtors to "all claims relating to the operation and management of the . . . business operated by Debtors and their affiliates. . . ." Id. at 59.

In the instant case, the Disclosure Statement and Plan fail to provide any justification for the Non-Debtor Release. Moreover, the proposed provision in the Plan is too broad because the proposed releases are not restricted to business-related claims. Specifically, the proposed Non-Debtor Release releases all claims in any manner related to the Debtors, including fraud

_and securities violations_. Plan at 60. Thus, under <u>Karta</u> and <u>Metromedia</u>, absent adequate explanation from the Debtors as to their justification, the proposed releases should be disallowed.

### **Carve-Out Of Governmental Claims**

Finally, the Plan also fails to include the appropriate language carving out Government claims from the proposed releases. At a minimum, the Debtors must add the following language to their release provisions:

> Nothing in the Confirmation order or the Amended Plan of Reorganization shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan of Reorganization enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Amended Plan of Reorganization exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

### **Conclusion**

The Disclosure Statement and Plan do not explain why the Non-Debtor Release provision is justified. Accordingly, absent

additional information, the Disclosure Statement fails to contain adequate information under 11 U.S.C. §1125. Therefore, the United States Trustee respectfully requests that the Court decline to approve the Disclosure Statement. <u>In re Source Enterprises, Inc.</u>, Case No. 06-11707(AJG)(Bankr. S.D.N.Y. July 31,2007)(minute order and opinion, ECF No. 322, denying approval of disclosure statement that, among other things, failed to justify third party releases under <u>Metromedia</u> standards).

Dated: New York, New York
      April 23, 2009

                              Respectfully submitted,

                              DIANA G. ADAMS
                              UNITED STATES TRUSTEE

        By:            <u>/s/ *Paul K. Schwartzberg*</u>
                              Paul K. Schwartzberg
                              Trial Attorney
                              33 Whitehall Street, 21st Floor
                              New York, New York  10004
                              Tel. No. (212) 510-0500