UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-11435

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


CHARTER COMMUNICATIONS, INC.,


      Debtors.


- - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          May 20, 2009

          10:00 AM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

1

2   HEARING re Motion Filed by the Debtors for an Order Determining

3   Adequate Assurance of Payment for Future Utility Services.

4

5   HEARING re Motion Filed by the Debtors for an Order Authorizing

6   and Approving Procedures for Settling Certain Claims and Causes

7   of Action Brought By Or Against the Debtors.

8

9   HEARING re Motion Filed by the Debtors for Entry of An Order

10  Authorizing the Employment and Retention of Hogan & Hartson LLP

11  as Special Counsel to the Debtors Effective Nunc Pro Tunc to

12  the Petition Date.

13

14  HEARING re Motion Filed by the Debtors for Entry of an Order

15  Authorizing the Employment and Retention of Sherman & Howard

16  L.L.C. as Mergers and Acquisitions and Commercial Operations

17  Counsel to the Debtors Effective Nunc Pro Tunc to the Petition

18  Date.

19

20  HEARING re Motion Filed by the Debtors for Entry of an Order

21  Authorizing the Employment and Retention of Marshall, Gerstein

22  & Borun LLP as Intellectual Property Counsel to the Debtors

23  Effective Nunc Pro Tune to the Petition Date.

24

25

1   HEARING re Motion Filed by the Debtors for Entry of an Order

2   Authorizing the Employment and Retention of KPMG LLP as Their

3   Auditor Nunc Pro Tunc to the Petition Date.

4

5   HEARING re Motion Filed by the Debtors for Entry of an Order

6   Amending Final Order Establishing Notification and Hearing

7   Procedures for Transfers of Common Stock.

8

9   HEARING re Motion Filed by the Official Committee Of Unsecured

10   Creditors Regarding Creditor Access To Information.

11

12   HEARING re Motion Filed by the Official Committee Of Unsecured

13   Creditors To Retain And Employ Ropes & Gray LLP As Counsel,

14   Nunc Pro Tunc To April 15, 2009.

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Penina Wolicki

1

2    A P P E A R A N C E S :

3    KIRKLAND & ELLIS LLP

4         Attorneys for Debtor

5         Citigroup Center

6         153 East 53rd Street

7         New York, NY 10022

8

9    BY:   STEPHEN E. HESSLER, ESQ.

10         CINDY Y. CHEN, ESQ.

11

12   KIRKLAND & ELLIS LLP

13         Attorneys for Debtor

14         300 North LaSalle Street

15         Chicago, IL 60654

16

17   BY:   RAY C. SCHROCK, ESQ.

18

19

20   ROPES & GRAY LLP

21         Attorneys for Official Committee of Creditors

22         1211 Avenue of the Americas

23         New York, NY 10036

24

25   BY:   MARK R. SOMERSTEIN, ESQ.

```
1
2    CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP
3         Special Conflicts Counsel for Debtors
4         101 Park Avenue
5         New York, NY 10178
6
7    BY:  L.P. HARRISON III, ESQ.
8
9
10   U.S. DEPARTMENT OF JUSTICE
11        Office of the U.S. Trustee
12        33 Whitehall Street
13        21st Floor
14        New York, NY 10004
15
16   BY:  PAUL SCHWARTZBERG, ESQ.
17
18
19   HOGAN & HARTSON LLP
20        Proposed Special Counsel to Debtors
21        875 3rd Avenue
22        New York, NY 10022
23
24   BY:  DAVID DUNN, ESQ. (TELEPHONICALLY)
25
```

```
 1
 2   MARSHALL GERSTEIN & BORUN LLP
 3         Proposed Intellectual Property Counsel to Debtors
 4         233 South Wacker Drive
 5         Chicago, IL 60606
 6
 7   BY:   WILLIAM J. KRAMER, ESQ. (TELEPHONICALLY)
 8
 9   ARNALL, GOLDEN & GREGORY, LLP
10         Attorneys for Verizon
11         171 17th Street NW
12         Suite 2100
13         Atlanta, GA 30363
14
15   BY:   FRANK N. WHITE, ESQ. (TELEPHONICALLY)
16         DARRYL LADDIN, ESQ. (TELEPHONICALLY)
17
18   ALSO PRESENT:
19         GERALD J. CARLSON, KPMG LLP (TELEPHONICALLY)
20         MARK FULFORD, (TELEPHONICALLY)
21
22
23
24
25
```

1          P R O C E E D I N G S

2          THE COURT:  Be seated please.  Good morning.

3          MR. HESSLER:  Good morning, Your Honor.  Steve Hessler

4   of Kirkland & Ellis on behalf of the debtors.  Today is the

5   debtors' second omnibus hearing.  There are nine motions or

6   applications on the agenda for this morning, including two

7   filed by the unsecured creditors' committee.  As of now, Your

8   Honor, it is our understanding that all of these motions are

9   going forward this morning, unopposed.  With Your Honor's

10  permission, we'll proceed in the order of the filed agenda?

11         THE COURT:  That would be fine.

12         MR. HESSLER:  Your Honor, item number 1 on the agenda

13  is the debtors' request for a final order on our utilities

14  motion.  The relief sought in the proposed final order was

15  granted on an interim basis at the debtors' second day hearing

16  on April 15th.  Upon the Court's entry of the interim utilities

17  order, the debtors properly served by overnight mail to their

18  approximately 1,500 utility providers, and by e-mail and

19  overnight mail to the core 2002 notice parties, copies of the

20  utilities motion, the interim order, including the adequate

21  assurance and objection procedures, and the notice of the final

22  hearing.

23         Pursuant to the procedures, Your Honor, the debtors

24  received approximately forty requests for additional adequate

25  assurance before the May 15th deadline set forth in the interim

1    order.  We're pleased to note that to date, the debtors have

2    reached agreement with nearly all of the requesting utilities

3    and are in the process of finalizing or negotiating agreements

4    with the remaining few.

5        As noted on the agenda, Your Honor, three responses

6    were filed to the utility motion.  The first two by Alabama

7    Power at docket number 145 and A&M Electrical Cooperative, at

8    docket number 146, were adjourned by consent of the parties

9    from the April 15th hearing to today.  Both objections have

10   been resolved and withdrawn.  The third response, which was

11   filed on behalf of a consortium of five utilities in South

12   Carolina and is at docket number 316, was filed in advance of

13   today's hearing.  That also has been resolved and withdrawn,

14   Your Honor.

15       With that, Your Honor, I would note that my colleague,

16   Lynn Harrison from Curtis Mallet, the debtors' conflict

17   counsel, has a statement for the record.

18       THE COURT:  Mr. Harrison, why don't you come forward.

19       MR. HARRISON:  Thank you, Your Honor.  Your Honor, for

20   the record, if it pleases the Court, Lynn Harrison of Curtis,

21   Mallet-Prevost, Colt & Mosle, conflicts counsel for the

22   debtors.  As was reflected in the transcript of the last

23   hearing regarding the utilities motion, Your Honor, the debtors

24   and Verizon Communications and its affiliates are in

25   negotiations regarding the adequate assurance for future

1  utility services.

2      I believe that the parties are close to an agreement,

3  Your Honor.  To allow that process to proceed, the parties have

4  agreed to adjourn the utilities motion as to Verizon and its

5  affiliates until June 17th at 10:00.  Provided, however, Your

6  Honor, that in the unlikely event that the parties are unable

7  to reach an agreement, the parties have agreed that Verizon may

8  seek a hearing on at least five-days' business notice, subject,

9  of course, Your Honor, to the Court's calendar, to request

10  relief regarding the adequate assurance of future utility

11  services.

12      Thus, Your Honor, the order that will be handed up

13  today will not encompass the Verizon entities.  I do believe

14  that counsel for Verizon is on the phone and can confirm my

15  statements for the record.  Mr. White?

16      THE COURT:  Is there anyone on the telephone

17  representing Verizon?

18      MR. WHITE:  Your Honor, can you hear me?

19      THE COURT:  Now I can.

20      MR. WHITE:  Okay.  Thank you, Your Honor.  Frank White

21  of Arnall, Golden & Gregory, for Verizon.  And I can confirm

22  the summary of the agreement between the debtors and Verizon

23  just provided to the Court is accurate.

24      THE COURT:  Thank you.

25      MR. HARRISON:  Thank you, Your Honor.

1        MR. HESSLER:  Your Honor, the debtors request that the

2   proposed order be entered.

3        THE COURT:  The order will be entered.

4        MR. HESSLER:  Your Honor, the next item on the agenda

5   is number 2, the debtors' motion to authorize procedures to

6   settle claim brought by or against the debtors for de minimis

7   recovery amounts.  The proposed procedures are set forth in

8   detail in the motion.  But described very generally, the

9   debtors, in consultation with the unsecured creditors'

10  committee, may enter into settlements for amounts under 250,000

11  dollars without further notice or approval.

12       For settlement amounts above 250,000 dollars but less

13  than 2 million dollars, the debtors will provide written notice

14  of the settlement to the U.S. Trustee, the creditors'

15  committee, the agents for the first, second, and third lien

16  credit facilities, the crossover committee of CCH1 and 2

17  noteholders, and Vulcan.  If no party objections within ten

18  days the settlement shall become final.  If a party does

19  object, and the debtors cannot resolve the objection, the

20  proposed settlement will be brought before this Court for final

21  approval.

22       The debtors believe these procedures, by reducing the

23  expense involved in filing separate Rule 9019 motions for every

24  postpetition settlement, are beneficial to their estates, while

25  at the same time, protecting the notice and objection rights of

1    creditors.  The debtors note similar procedures have been

2    approved in other large Chapter 11 cases in this district.  We

3    further note, Your Honor, that the creditors' committee

4    requested and we did make a few changes to the proposed order

5    to clarify the consultation with the creditors' committee that

6    the debtors will be entering into.  No party, Your Honor, has

7    objected to the proposed procedures, and the debtors would ask

8    that the order be entered.

9         THE COURT:  I'm prepared to do that.  I'd just like to

10   hear from the creditors' committee regarding its position with

11   respect to this motion.

12        MR. SOMERSTEIN:  Good morning Your Honor.  Mark

13   Somerstein, Ropes & Gray, for the creditors' committee.  Your

14   Honor, the motion is acceptable to us.  We've made certain

15   comments to the order to accommodate certain notice procedures

16   to the committee.  We believe we'll have an appropriate

17   opportunity to review any settlements with the debtors if they

18   were to propose them.  So we're comfortable with the order at

19   this point, Your Honor.

20        THE COURT:  Fine.

21        MR. SOMERSTEIN:  Thank you.

22        THE COURT:  Thank you.  And then I have one question

23   for the debtor.  It's really as much as anything a matter of

24   curiosity on my part as to how the break points were developed

25   at 250,000 and 2 million for purposes of settlement.  Is there

1    some statistical data that the company or its advisors

2    referenced to determine where settlements of claims tend to

3    fall, or were these simply numbers either arrived at through

4    the exercise of good judgment or guesswork?

5         MR. HESSLER:  It was twofold, Your Honor.  One, it was

6    a discussion with the company's legal counsel and the relevant

7    business people to determine what the potential range of likely

8    postpetition settlements would be, like what would work from

9    the company from a business perspective.  In addition, we

10   consulted the orders that had otherwise been entered in similar

11   cases of this size.  For instance, we would note that in

12   Calpine, a case of similar size, their ranges were identical,

13   up to 250,000 and 250,000 to 2 million.

14        THE COURT:  Okay.  I mean, I'm perfectly happy to

15   carry that forward, recognizing that there's no particular

16   logic to these numbers other than that they worked in the past

17   and perhaps represent a reasonable prediction as to where

18   things may fall.  And as long as it's acceptable to the

19   creditors' committee, it's acceptable to me.

20        MR. HESSLER:  Thank you, Your Honor.  Your Honor, the

21   next three items on the agenda are retention applications for

22   various counsel to the debtors.  Number 3 is the application to

23   retain Hogan & Hartson as special counsel for programming,

24   litigation, and regulatory advice to the debtors.  Number 4 is

25   the application to retain Sherman & Howard a M&A and commercial

1  operations counsel to the debtors.  Number 5 is the application

2  to retain Marshall Gerstein & Borun as intellectual property

3  counsel to the debtors.

4       Your Honor, all of these counsel provide critical and

5  discrete services to the debtors.  All of the counsel have

6  confirmed that their efforts will be coordinated to ensure

7  there is no duplication of efforts with the debtors' other

8  retained professionals in this case.  Your Honor, we would note

9  for the record that copies of these applications were provided

10 to the U.S. Trustee prior to our filing them.  Mr. Schwartzberg

11 did request certain clarifications and changes, all of which we

12 did incorporate into the proposed orders.  In addition, Your

13 Honor, no objections were filed to any of these retention

14 applications.  The debtors request that the respective orders

15 be entered.

16       THE COURT:  I'm prepared to do that.  I had a couple

17 of reactions.  One, the Hogan & Hartson application indicated

18 that there would be no professional who would work on this

19 matter with rates higher than 950 dollars per hour, which seems

20 like it's hardly a concession.  I noted that the Sherman &

21 Howard application references blended hourly rates that seem to

22 be very favorable.  And I noted that there's a prepetition

23 claim for 795,000 dollars held by Marshall Gerstein & Borun.

24 And that probably caught my eye as an issue the most.  I'm

25 interested in knowing from Mr. Schwartzberg what his office's

1    position is with respect to a professional being retained in

2    this case that holds a significant prepetition claim?

3            MR. SCHWARTZBERG:  Your Honor, Paul Schwartzberg for

4    the U.S. Trustee's Office.  This is a 327(e) application.  And

5    I don't think the disinterestedness standard applies.  It's no

6    adverse interest, we saw no adverse interest, so we didn't have

7    a position, and we defer to the committee on it.

8            THE COURT:  Okay.  What does the committee have to

9    say?

10           MR. SOMERSTEIN:  Again, for the record, Your Honor,

11   Mark Somerstein, Ropes & Gray.  We -- I agree with the legal

12   standard that was just expressed by Mr. Schwartzberg.  So we

13   didn't have a concern in that regard either.

14           THE COURT:  Okay.  It caught my eye, however, and one

15   of the things that I think is worth noting is that when

16   professionals are being retained under different subsections of

17   the same provision of the Bankruptcy Code, and different

18   outcomes result from that selection, it leads to parties

19   choosing those sections in order to preserve their claims.  And

20   I'm simply noting it at as something that I suppose

21   professionals do on occasion, in order to hold onto their

22   clients and also hold onto their claims.  All of these will be

23   approved.

24           MR. HESSLER:  Thank you, Your Honor.  Your Honor, at

25   this point in the agenda, I would like to cede the podium to my

1    colleague, Cindy Chen for the next application.

2          THE COURT:  Okay.

3          MS. CHEN:  Good morning, Your Honor.  Cindy Chen of

4    Kirkland & Ellis on behalf of the debtors.  Item 6 on the

5    agenda is the application to retain KPMG LLP as the debtors'

6    auditors.  Your Honor, no objections were filed to this

7    retention application.  The debtors selected KPMG because it

8    has diverse experience and extensive knowledge of accounting,

9    taxation and operational controls for large, sophisticated

10   companies, both in and out of Chapter 11.  Indeed, the debtors

11   have employed KPMG since 2002.  As such, KPMG is familiar with

12   the debtors' books, records and financial information and is

13   thus qualified to continue providing audit services to the

14   debtors.

15          KPMG's requested compensation will be based on hours

16   actually expended by each assigned staff member, at the staff

17   members' hourly rate, and KPMG has confirmed that it will not

18   duplicate the services rendered by other retained

19   professionals.  In response to the United States Trustee's

20   request, KPMG has filed a supplement on April 29, 2009

21   disclosing the percentage of revenue of certain KPMG clients

22   who are parties in interest to the debtors' bankruptcy

23   proceeding.  Accordingly, Your Honor, the debtors' believe

24   there are no outstanding issues as to this application, and

25   would ask that this order be entered.

1          THE COURT:  Is the U.S. Trustee satisfied?

2          MR. SCHWARTZBERG:  Paul Schwartzberg for the U.S.

3     Trustee's Office.  We have no objection to the application as

4     announced.

5          THE COURT:  All right.  It's approved.

6          MS. CHEN:  Thank you, Your Honor.  With that, I will

7     turn the podium over to my colleague, Steve Hessler.

8          MR. HESSLER:  Your Honor, the final motion of the

9     debtors on today's agenda is number 7, seeking amendment of the

10    final NOL order.  As an initial matter, Your Honor, we

11    appreciate the Court entering, yesterday, our motion to shorten

12    notice and hearing this motion on an expedited basis.

13         THE COURT:  It's pretty short notice.

14         MR. HESSLER:  Indeed it was, Your Honor.  We do note

15    that the debtors became aware of the need for the amended order

16    within just the last few days, and we did endeavor to get a

17    motion on file as soon as possible.  At our first and second

18    day hearings, the Court entered interim and final orders that

19    provided any entity that has beneficial ownership of at least

20    twenty million shares of Class A common stock or twenty million

21    shares of Class A and B common stock in the aggregate, will

22    constitute a five-percent shareholder of Charter and is subject

23    to the trading restrictions designed to protect the debtors'

24    NOLs.

25         The twenty million share threshold was based on the

1    debtors' understanding on the petition date, which was based on

2    the most recently available figures as of December 31, 2008,

3    that approximately 411 million shares of Charter common stock

4    was outstanding.  Recently, as the debtors were finalizing

5    certain regulatory filings, including their 10-Q, the debtors

6    learned that between January 1st and April 20th, the number of

7    outstanding shares had decreased by approximately 28 million,

8    to 383 million shares.  Accordingly, to maintain the trading

9    restrictions that protect the debtors' highly valuable tax

10   attributes, the debtors are requesting a downward adjustment of

11   the beneficial ownership threshold that constitutes a five-

12   percent shareholder from 20 million shares to 18 million

13   shares.

14        If the order is entered this morning, Your Honor, the

15   amended NOL final order will be served by overnight mail

16   immediately to the same parties that received notice of the NOL

17   final order, including holders of the equivalent of more than

18   five million shares of common stock and the transfer agents for

19   any common stock.  Courtesy e-mails will also be sent

20   immediately to the appropriate brokerage firms.

21        Your Honor, the objection deadline was at the

22   beginning of the hearing this morning.  The debtors are not

23   aware of any objections to the proposed amendment.

24        THE COURT:  Well, let's find out.  It's now 10:15.  Is

25   there anyone here who objects to the proposed amendment of the

1    final order establishing notification and hearing procedures

2    for transfers of common stock?  Is there anyone on the phone

3    who has anything to say about it?  Apparently there are no

4    objections.  Does the committee have any position on this?

5         MR. SOMERSTEIN:  Your Honor, the committee supports

6    the debtors in this regard.

7         THE COURT:  Okay.  I view this as, even though

8    happening on very short notice, largely a conforming change to

9    the order that was originally entered, both as an interim and a

10   final order, on the assumption that the float constituted a

11   certain number of shares.  Since the facts have changed and the

12   denominator has become smaller, the five-percent calculation

13   has to change with it.  And so I view this as a largely

14   mathematical conforming of the order to the actual mathematical

15   reality of the number of shares that are currently outstanding.

16   I have no problem approving this as presented, even though the

17   notice is short.

18        MR. HESSLER:  Thank you, Your Honor.  Your Honor, one

19   matter I should have noted at the beginning.  Presumably, you'd

20   prefer us to tender all orders at once?

21        THE COURT:  Yes.

22        MR. HESSLER:  At the conclusion of the hearing?  Your

23   Honor, before ceding the podium, there's one final housekeeping

24   matter that the debtors did want to note for the record.  At

25   our disclosure statement hearing on May 5th, my partner Paul

1    Basta explained to the Court that there were a few cleanup

2    changes that needed to be made to the disclosure statement and

3    exhibits.  Those changes were made.  The final disclosure

4    statement that we filed on May 7th did not include the updated

5    exhibits with the filing.  The updated exhibits were included

6    in the solicitation packages that were sent to creditors last

7    week.

8            Nonetheless, to ensure that the docket reflects the

9    final version of the disclosure statement that went out for

10   solicitation with the updated exhibits, the debtors do intend

11   to file those updated exhibits with the Court today.  We wanted

12   to mention this on the record just so that the Court and the

13   parties in interest in attendance, that there's no confusion as

14   to why those exhibits are being filed today.

15           THE COURT:  That's fine.  Thank you.

16           MR. HESSLER:  Thank you, Your Honor.  Unless the Court

17   has any further questions for the debtors, we'll cede the

18   podium to the creditors' committee.

19           THE COURT:  I have no further questions at this time.

20           MR. HESSLER:  Thank you, Your Honor.

21           MR. SOMERSTEIN:  Good morning, Your Honor.  Mark

22   Somerstein, Ropes & Gray for the creditors' committee.  Your

23   Honor, as Mr. Hessler indicated, there are two unopposed

24   motions that the committee's presenting today.  The first on

25   the agenda is our request, and it's something that Your Honor

1    is familiar with, our request for a -- our motion regarding

2    access to information.  And the order that we request would

3    establish a protocol for providing information to unsecured

4    creditors in the case.

5         I'm going to hand to Mr. Hessler and Ms. Chen and then

6    hand up to Your Honor, if I can, a black-line.  This black-line

7    reflects changes made to the proposed order.  They were changes

8    requested by the debtors.  They now form what we believe is a

9    consensual order between the debtors and the committee with

10   respect to the information protocol we're asking for.

11        THE COURT:  All right.  You can distribute that, and

12   you may approach.  Thank you.

13        MR. SOMERSTEIN:  I think, Judge, that there are very

14   few changes.  And I think I can characterize them in two ways.

15   The first is just to make sure -- and this is reflected on page

16   2, and then there are a few other places where it's reflected.

17   It's reflected also on page 4, that in our -- our bylaws have a

18   confidentiality provision.  Your Honor is very familiar with

19   these issues.  So that the debtor wanted to make sure that

20   information that would be confidential in our bylaws would be

21   included as confidential information under this protocol.  We

22   had no intention to carve that out, so we've included it.

23        THE COURT:  Understood.

24        MR. SOMERSTEIN:  Then, Your Honor, there are, on page

25   4 and then again on page 5, the debtors requested that to the

1    extent that we do fulfill an information request, that we get a

2    written acknowledgement from the creditor that we provided

3    information to, acknowledging their confidentiality

4    obligations.  We're fine with that.  So we added that.  Lastly,

5    Your Honor, on page 6, decretal paragraph 4, just a little

6    clarifying language that the protocol supersedes the statutory

7    requirements under Section 1102(b)(3).  And I think those are

8    really the only changes that we made.

9            THE COURT:  That's fine.

10           MR. SOMERSTEIN:  Does Your Honor have any questions

11   regarding the motion?

12           THE COURT:  I don't.  Orders of this sort are, at this

13   point, entirely conventional in large Chapter 11 cases in this

14   district.  And maybe this is the new paradigm with these

15   updates.  But I view this as relatively routine and important

16   to the functioning of creditors' committees.  And I approve it.

17           MR. SOMERSTEIN:  Thank you, Your Honor.  Lastly on the

18   agenda for today is the committee's motion to retain Ropes &

19   Gray as its counsel.  Your Honor, I have no comments save for

20   one, which is that in reviewing my declaration last night in

21   preparing for the hearing, I noticed that one change I had made

22   didn't make it into the final version.  That is to reflect that

23   HSBC Bank USA, which happens to be now a committee member, is

24   denominated in the exhibit as a former client of the firm.

25   It's a current client of the firm.  We represent them on

1    matters totally unrelated to Charter.  Though they happen to be

2    a committee member now, at the time that this was filed, they

3    actually weren't.  They were appointed after.  It simply didn't

4    make it, for whatever reason, into the final draft.  It's not

5    material.  HSBC, the business that we get is not in excess of

6    one percent of the revenue of the firm.  But I did want to make

7    that clear.  We will file a supplemental declaration by --

8    certainly by the end of the week, if not by tomorrow,

9    reflecting that HSBC Bank USA is a current client of the firm.

10            THE COURT:  Thank you for the clarification.  The

11   application to engage Ropes & Gray as counsel to the committee

12   is approved.

13            MR. SOMERSTEIN:  Thank you, Your Honor.  The committee

14   has nothing further.

15            MR. HESSLER:  The debtors have nothing further, Your

16   Honor.

17            THE COURT:  It seems like this hearing is at an end.

18   Let me just ask if there's anything going on in the litigation

19   that is reportable?  There have been any number of discovery

20   conferences and discovery issues, and then there has been

21   complete radio silence as between the litigants and the Court

22   concerning those disputes.  Am I correct in concluding that at

23   least as to ongoing discovery, matters are proceeding without

24   major conflict?  Or is that not the right assumption?  And if

25   you're not prepared to comment on it, that's fine too.

1          MR. SCHROCK:  Your Honor, Ray Schrock of Kirkland &

2     Ellis on behalf of the debtors.  That's certainly our

3     understanding.  The formal discovery is proceeding.  The

4     parties -- I do see occasional missives come across my desk.

5     But we'll promptly check with our litigation partners and see

6     if there's anything to report to the Court about that.

7          THE COURT:  I realize it wasn't on the agenda for

8     today's hearing.  It's just that one of the things that happens

9     when you're watching a case like this from my side of the bench

10    is that you see conflict on occasion --

11         MR. SCHROCK:  Yes.

12         THE COURT:  -- through correspondence, discovery

13    conferences and the like.  The conferences take place, and then

14    that's it.  I don't hear anymore.  I was just trying to

15    understand if the silence should be interpreted as a peaceful

16    resolution of the conflict.  I hope that's true.

17         MR. SCHROCK:  Your Honor, certainly that's my

18    understanding.  But I'm certain that if anything arises, we'll

19    make the Court aware of it.

20         THE COURT:  I'm confident that will happen.  All

21    right.  Thank you.  We're adjourned.

22         MR. SCHROCK:  Thank you, Your Honor.

23         MR. HESSLER:  Thank you, Your Honor.

24       (Proceedings concluded at 10:24 a.m.)

25

1

2                    I N D E X

3

4                      RULINGS

5                          Page    Line

6   Order Determining      10       3

7   Adequate Assurance of

8   Payment for Future

9   Utility Services Will be

10  Entered

11  Order Authorizing and   12      15

12  Approving Procedures for

13  Settling Certain Claims

14  Approved

15  Order Authorizing the   14      22

16  Employment and Retention

17  of Hogan & Hartson LLP

18  Approved

19  Order Authorizing the   14      22

20  Employment and Retention

21  of Sherman & Howard

22  L.L.C. Approved

23

24

25

```
1    RULINGS (continued)

2                                Page     Line

3    Order Authorizing the      14       22

4    Employment and Retention

5    of Marshall, Gerstein &

6    Borun LLP Approved

7    Order Authorizing the      16       5

8    Employment and Retention

9    of KPMG LLP Approved

10   Order Amending Final       18       16

11   Order Establishing

12   Notification and Hearing

13   Procedures for Transfers

14   of Common Stock Approved

15   Motion of the Committee    21       16

16   Regarding Creditor

17   Access To Information

18   Approved

19   Committee's Motion To      22       11

20   Retain And Employ Ropes

21   & Gray LLP Approved

22

23

24

25
```

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    _____

8    Penina Wolicki

9

10   Veritext LLC

11   200 Old Country Road

12   Suite 580

13   Mineola, NY 11501

14

15   Date:  May 21, 2009

16

17

18

19

20

21

22

23

24

25