ROPES & GRAY LLP
Mark R. Somerstein (MS 9721)
Keith H. Wofford (KW 2225)
David S. Elkind (DE 4054)
Nila W. Williams (NW 5969)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

Counsel to the Official
Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| CHARTER COMMUNICATIONS, INC., *et al.*, | Case No. 09-11435 (JMP) |
| | (Jointly Administered) |
| Debtors. | |

# OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF Q INVESTMENTS FOR ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS PURSUANT TO BANKRUPTCY CODE § 1102(a)(2)

The Official Committee of Unsecured Creditors of Charter Communications, Inc., *et al.* (the "Committee"), by and through its undersigned counsel, hereby (i) objects (the "Objection") to the Motion of Q Investments for Order Directing the Appointment of an Official Committee of Equity Security Holders Pursuant to Bankruptcy Code § 1102(a)(2) (the "Motion") and (ii) joins in the response to the Motion (the "Debtors' Response") filed by the Debtors (as defined below). [Docket Nos. 445, 486]. In support of the Objection, the Committee respectfully represents as follows:

3930995_4.DOC

# BACKGROUND

1. Commencing on March 27, 2009, and thereafter, Charter Communications, Inc. ("CCI") and certain of its subsidiaries (collectively with CCI, the "Debtors") filed with the Bankruptcy Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On April 10, 2009, the Office of the United States Trustee for the Southern District of New York (the "US Trustee") appointed the Committee. On April 23, 2009, the US Trustee appointed an additional Committee member. On May 21, 2009, the Court entered an Order Authorizing the Official Committee of Unsecured Creditors to Retain and Employ Ropes & Gray LLP as Counsel, *Nunc Pro Tunc* to April 15, 2009.

3. On the first day of these chapter 11 cases, the Debtors filed a proposed pre-negotiated plan of reorganization (the "Plan") and a corresponding disclosure statement (the "Disclosure Statement"). The Court approved the Disclosure Statement on May 7, 2009, and scheduled the hearing on confirmation of the Plan to commence on July 20, 2009.

4. In early April, 2009, the US Trustee received certain letters and e-mails requesting the appointment of an official committee of equityholders in these cases (the "First Requests"). After receiving letters from the Debtors, the Committee, and the Ad Hoc Committee of Holders of CCH I Notes and CCH II Notes (the "Crossover Committee") – all of which

opposed the First Requests – the US Trustee denied the First Requests and declined to appoint an official equity committee.

5. By letter dated May 18, 2009 (the "Q Investments Request"), Q Investments, L.P. ("Q Investments"), a CCI shareholder, requested that the US Trustee appoint an official committee of equity security holders pursuant to section 1102(a)(1) of the Bankruptcy Code. By separate letters to the US Trustee dated June 2, 2009, the Debtors, the Committee, and the Crossover Committee opposed the Q Investments Request. On June 5, 2009, the US Trustee denied the Q Investments Request.

6. On June 9, 2009, Q Investments filed the Motion requesting that the Bankruptcy Court direct the US Trustee to appoint an official committee of equity security holders in the Debtors' chapter 11 cases pursuant to section 1102(a)(2) of the Bankruptcy Code.

**I.**

**THE REQUEST FOR AN EQUITY COMMITTEE SHOULD BE DENIED**

7. Section 1102(a)(2) of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). The party requesting the appointment of an equity committee bears the burden of proving that such appointment is necessary. *Albero v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 68 B.R. 155, 157 (S.D.N.Y. 1986); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690, 695 (Bankr. C.D. Cal. 2008).

8. As the Courts of this and other jurisdictions have repeatedly emphasized, "the appointment of official equity committees should be the rare exception." *In re Williams Commc'n. Group, Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002); *see also In re Nat'l R.V.*

*Holdings, Inc.*, 390 B.R. at 695 ("The appointment of an additional committee is an extraordinary remedy."). An official equity committee should not be appointed unless the party requesting such appointment conclusively demonstrates that:

> (i) there is a substantial likelihood that [equityholders] will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) [equityholders] are unable to represent their interests in the bankruptcy case without an official committee.

*In re Williams Commc'n. Group, Inc.*, 281 B.R. at 223. *See also In re Northwestern Corp.*, 2004 WL 1077913, at *2 (Bankr. D. Del. 2004); *In re Leap Wireless Int'l, Inc.,* 295 B.R. 135 (Bankr. S.D. Cal. 2003). Here, neither of the foregoing requirements is met.

9. At the outset, the law is clear that an equity committee should not be appointed unless there is a realistic prospect that there is equity in the debtor for the holders of stock and that the debtor is, therefore, solvent. *In re Ampex Corp.*, 2008 WL 2051128, at *1 (Bankr. S.D.N.Y. 2008); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. at 696. Where, as here, a debtor is insolvent, equityholders have no economic interest to be represented and the appointment of an equity committee is not warranted. *In re Emons Indus., Inc.*, 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985) ("No equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift.").

10. Q Investments holds stock in CCI, the parent Debtor. There can be no serious dispute that CCI is insolvent. As set forth in the Debtors' Response, issues of the publicly traded debt of the Debtors' holding companies trade far below par, evidencing the clear understanding of the marketplace that the Debtors' assets are insufficient to pay even creditors of the various holding companies in full. *See In re Williams Commc'n. Group, Inc.*, 281 B.R. at 216 (holding that an equity committee was unwarranted where, among other things, the debtors' bonds were

trading at 15% of face value). Moreover, pursuant to the Plan, approximately $8 billion in indebtedness of CCI and entities senior in the capital structure to CCI will be eliminated, all of which is senior in right of payment to equity of CCI. Given this reality, there is no likelihood, much less a substantial one, that equityholders will be entitled to receive a distribution.

11. In addition to requiring that equityholders be entitled to a recovery, the appointment of an equity committee pursuant to Bankruptcy Code section 1102 requires a showing that the interests of the equityholders cannot be adequately represented in the absence of an equity committee. Here, the focus is upon whether equityholders are *adequately* represented, not upon whether they are *exclusively* represented. *See* 11 U.S.C. § 1102; *In re Williams Commc'n. Group, Inc.*, 281 B.R. at 223.

12. The Committee has actively participated in these chapter 11 cases with the goal of maximizing the value of the Debtors' estates and recoveries to all constituencies. To this end, the Committee has conducted significant due diligence with respect to the proposed Plan and has paid attention to the issues raised by Q Investments. Q Investments has failed to allege that the efforts of the Committee in this regard are insufficient, and has offered no evidence that duplicative efforts by an equity committee would provide a further benefit to the equityholders or the Debtors' estates. Moreover, the absence of an official equity committee does not preclude Q Investments from objecting to the Plan or otherwise raising any issues of concern with the Court. Q Investments is represented by sophisticated counsel and, pursuant to Bankruptcy Code section 1109, has an express statutory right to participate in these chapter 11 cases.

13. In addition to the fact that Q Investments cannot meet the threshold requirements for appointment of an equity committee under section 1102 of the Bankruptcy Code, there are additional reasons why such a committee should not be appointed in these cases. First, as the

Debtors point out in their Response, the Court has already approved the Disclosure Statement, and the appointment of an equity committee at this late stage of these cases would be unwarranted, unprecedented, and unproductive. Second, the appointment of an equity committee at this stage of these cases could result in a delay of the proceedings, including the timetable for confirmation of the Plan. And, third, the appointment of an equity committee would result in unnecessary expense to the estates, to the detriment of unsecured creditors.

## Conclusion

14. For the foregoing reasons, the Committee respectfully requests that the Court (i) deny the Motion and decline to appoint an official committee of equity security holders in the Debtors' chapter 11 cases and (ii) grant such other relief as is just and proper.

Dated: New York, New York
   June 16, 2009

ROPES & GRAY LLP

By:   */s/ David S. Elkind*
  Mark R. Somerstein (MS 9721)
  Keith H. Wofford (KW 2225)
  David S. Elkind (DE 4054)
  Nila W. Williams (NW 5969)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

Counsel to the Official
Committee of Unsecured Creditors