UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
In re                                                : Chapter 11
                                                     :
                                                     : Case No. 09-11435 (JMP)
CHARTER COMMUNICATIONS, *et. al.*,                   :
                                                     : (Jointly Administered)
                    Debtors.                         :
                                                     :
---------------------------------------------------------------
                                                     :
JPMORGAN CHASE BANK, N.A.                            :
as Administrative Agent,                             : Adversary Proceeding
                    Plaintiff,                       :
-against-                                            : Case No. 09-01132 (JMP)
                                                     :
CHARTER COMMUNICATIONS                               :
OPERATING, LLC and CCO HOLDINGS, LLC,                :
                    Defendants.                      :
---------------------------------------------------------------

**MEMORANDUM DECISION**

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
163 East 53rd Street
New York, New York 10022

    Paul Basta, Esq.

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
655 Fifteenth Street, N.W.
Washington, D.C. 20005

    Jonathan D. Brightbill, Esq.
    Jeffrey S. Powell, Esq.

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
300 North LaSalle Street
Chicago, Illinois 60654

    Ray C. Schrock, Esq.

SIMPSON THACHER & BARTLETT, LLP
*Attorneys for JPMorgan Chase Bank*
425 Lexington Avenue
New York, New York 10017

    Peter Pantaleo, Esq.
    George Wang, Esq.
    Bryce Friedman, Esq.
    Morris J. Massel, Esq.

ROPES & GRAY, LLP
*Attorneys for Creditors' Committee*
1211 Avenue of the Americas
New York, New York 10036

    David S. Elkind, Esq.
    Russell Lippman, Esq.
    Keith H. Wofford, Esq.
    Mark R. Somerstein, Esq.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Attorneys for the Unofficial Committee of Holders*
*of CCH I, LLC and CCH II, LLC notes*
1285 Avenue of the Americas
New York, New York 10019

    Alan Kornberg

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Attorneys for Paul G. Allen*
Four Times Square
New York, New York 10036

    Jay Goffman

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

*Introduction*

The Chapter 11 cases of Charter Communications, Inc. (the "Debtors") are the product of extensive restructuring activities during the months before bankruptcy. A pre-negotiated complex corporate reorganization was fully documented at the time of filing for relief in this Court. Together with the customary "first-day" motions, the Debtors filed a disclosure statement and a plan of reorganization. Central to the Debtors' pre-negotiated plan is the proposed reinstatement of billions of dollars in debt, including the reinstatement of indebtedness under a senior credit facility in which JPMorgan Chase Bank ("JPMorgan") is the administrative agent.

JPMorgan opposes the proposed treatment of the credit facility under the plan and was prepared to challenge reinstatement on day one of these cases. On the petition date, JPMorgan, for itself and as agent for other lenders, commenced this adversary proceeding by filing a complaint (the "Complaint") that asserts various prepetition defaults under the credit agreement. These allegations—if proven—would effectively destroy an essential component of the Debtors' current restructuring efforts, namely, the reinstatement of the debt evidenced by the JPMorgan credit facility. Therefore, this adversary proceeding presents issues which are of central importance to these bankruptcy cases and which threaten the viability of the plan of reorganization. Notwithstanding that threat, JPMorgan contends that the litigation regarding prepetition breaches under a prepetition agreement should be deemed "non-core."

Debtors filed a motion (the "Motion") (i) seeking dismissal of the adversary complaint and (ii) requesting determination as to whether the dispute is a core proceeding

under § 157 of Title 28. (Def.'s Mot. to Dismiss, ECF Doc. # 11).[1] Upon review of the Motion and following oral argument, given the significance of the issue to trial preparation, this Court issued an oral ruling on the record at the conclusion of the hearing held on May 5, 2009, holding that the dispute is core. (Tr. 58: 14-23 (May 5, 2009), ECF Doc. # 27). Without determining any other issue pertaining to the Motion, this memorandum decision further explains that ruling.

### *Background of the Dispute*

JPMorgan commenced this adversary proceeding on the petition date seeking to prove the existence of certain technical, non-monetary covenant defaults allegedly arising under terms of the Debtors' principal credit facility, the Amended and Restated Credit Agreement dated as of March 18, 1999, as amended and restated as of March 6, 2007 (the "Credit Agreement"). The Credit Agreement was executed among Charter Communications Operating, LLC ("CCO"), as Borrower; CCO Holdings, LLC ("CCO Holdings"), as Guarantor; the lenders party thereto (the "Prepetition Lenders"); and JPMorgan, as Administrative Agent for the Prepetition Lenders. This senior credit facility consists of a secured term and revolving loan facility under which approximately $8.2 billion is outstanding. The Official Committee of Unsecured Creditors has intervened and has filed a statement in support of the Motion. (Mem. of Law, ECF Doc. # 17). Notably, and perhaps strategically, JPMorgan has not filed a proof of claim in the Debtors' bankruptcy cases.

As outlined in the Complaint, JPMorgan alleges that CCO and CCO Holdings falsely represented that "no Default or Event of Default" existed under the Credit

---

[1] Unless otherwise noted, all citations to ECF Doc. #'s refer to documents on the Adversary Proceeding Case No. 09-01132 docket.

4

Agreement in order to borrow an additional $750 million between October 2 and November 5, 2008. (Compl. ¶ 41-46, ECF Doc. # 1). According to JPMorgan, the "no default" representations were false because at least one of the Designated Holding Companies, as defined in the Credit Agreement, allegedly was "unable to . . . pay its debts as they become due," in violation of § 8(g)(v) of the Credit Agreement. *Id.* ¶ 37. It is undisputed that, notwithstanding the alleged technical defaults under § 8(g)(v), at all relevant times the Debtors were current on their monetary obligations under the Credit Agreement.[2]

In the Complaint, JPMorgan declares that this "is not a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)," and refuses to "consent to the entry of final orders or judgment by the bankruptcy judge." *Id.* ¶ 24. Debtors dispute this characterization of the proceeding and have filed the Motion to dismiss the Complaint and for a determination that this is a "core" proceeding under 28 U.S.C. § 157(b)(3). (Def.'s Mot. to Dismiss at 3, ECF Doc. # 11). The Official Committee of Unsecured Creditors has intervened and has filed a statement in support of the Motion. (Mem. of Law, ECF Doc. # 17). Notably, and perhaps strategically, JPMorgan has not filed a proof of claim in the Debtors' bankruptcy cases.

In the Complaint itself, JPMorgan points to the connection between the relief sought in the adversary proceeding and the treatment proposed in Debtors' plan of

---

[2] While it is alleged that Designated Holding Companies were unable to pay debts as they became due, in reality all debts were paid when due. The Complaint uses the contractual language regarding ability to pay debts "as they become due" interchangeably with the term "as they *would* become due." (Compl. ¶¶ 12, 43-45, 90, 92, ECF Doc. # 1) (emphasis added). The Debtors argued that, in emphasizing the ability to pay debts as they "would become due," JPMorgan "conjured up an extra-contractual obligation as the basis for its request for declaratory relief." (Def.'s Mot. to Dismiss at 12, ECF Doc. # 11). When questioned on this forward-looking reading of the clause at oral argument, JPMorgan explained that it used "the term [']would become['] in an effort to be grammatically correct." (Tr. 44: 11-12 (May 5, 2009) ECF Doc. # 27). The Court reserves judgment on this issue until the trial on the merits, scheduled to start on July 20, 2009.

5

reorganization. Notably, JPMorgan does not ask for any specific remedy or damages in connection with the defaults asserted in the Complaint. Instead, JPMorgan seeks a determination that there have been "Events of Default under the Prepetition Credit Agreement." (Compl. ¶ 1, ECF Doc. # 1). Finding the occurrence of such defaults would be significant because "the plan of reorganization proposed in the Defendants' bankruptcy cases . . . purports to leave the Prepetition Lenders' legal, contractual and equitable rights under [the] Prepetition Credit Agreement unimpaired under Section 1124 of the Bankruptcy Code . . . ." *Id.*

If prepetition defaults are found to have existed under the Credit Agreement, Debtors would not be able to reinstate the Credit Agreement as contemplated in their plan of reorganization unless Debtors could cure such defaults before reinstating the debt.[3] Given the nature of the alleged breaches of the Credit Agreement here, the relief sought by JPMorgan in this adversary proceeding has the potential to block reinstatement of the Credit Agreement and thereby block confirmation of the Debtors' plan of reorganization.

*Discussion*

The statutory predicate for bankruptcy court jurisdiction is set forth in 28 U.S.C. § 157. This section makes clear that the bankruptcy court may "hear and determine . . . all core proceedings . . . and may enter appropriate orders and judgments" with respect to such matters. 28 U.S.C. § 157(b)(1). By contrast, while the bankruptcy court may hear non-core proceedings that are "otherwise related to a case under title 11," without consent of the parties involved, the bankruptcy court cannot fully adjudicate non-core matters; it

---

[3] In order to reinstate debt under the Credit Agreement pursuant to § 1124, Debtors would be required to cure non-*ipso facto* defaults existing under the Credit Agreement. *See In re Kizzac Mgmt. Corp.*, 44 B.R. 496, 501 (Bankr. S.D.N.Y. 1984). Cure, "although not defined, is 'reversal' of the event that triggered the default and a return to a pre-default status quo." *In re NextWave Pers. Commc'ns, Inc.*, 244 B.R. 253, 268 (Bankr. S.D.N.Y. 2000).

can only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(c)(1).

The distinction between "core" and "non-core" matters stems from the Supreme Court's decision in *Marathon. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 6 B.R. 928 (Bankr. Minn. 1980), *rev'd,* 12 B.R. 946 (D. Minn. 1981), *aff'd,* 458 U.S. 50 (1982). In *Marathon*, the Supreme Court considered the scope and constitutionality of bankruptcy court jurisdiction and found that a non-Article III bankruptcy judge lacked the constitutional authority to decide a prepetition contract dispute based on state law where the defendant had not filed a proof of claim. Without precisely defining the boundaries of bankruptcy court jurisdiction, the Court distinguished between "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," and "the adjudication of state-created private rights, such as the right to recover contract damages . . . ."[4] 458 U.S. at 71. This distinction was later codified at 28 U.S.C. § 157, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[5]

Section 157 offers guidance as to the meaning of a "core proceeding" by providing a non-exhaustive list of matters deemed to be core, including issues concerning the administration of the bankruptcy estate,[6] allowance or disallowance of claims,

---

[4] In a subsequent decision, *Thomas v. Union Carbide Agricultural Products*, the Supreme Court acknowledged that in *Marathon* the Court had been "unable to agree on the precise scope and nature of Article III's limitations" with respect to bankruptcy court jurisdiction. 473 U.S. 568, 584 (1985).

[5] For a detailed discussion of the history of 28 U.S.C. § 157, see *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 166-67 (1st Cir. 1987).

[6] The present dispute could be said to fall squarely within § 157(b) either subsection (A) ("matters concerning the administration of the estate") or (O) ("other proceedings affecting . . . the adjustment of the debtor-creditor relationship . . . ."). 28 U.S.C. § 157(b). However, because courts have cautioned against an over-inclusive reading of these two "catch-all" subsections, this decision considers the nature of the

confirmation of plans, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship.[7] 28 U.S.C. § 157(b)(2)(A), (B), (L), (O). For matters not explicitly described, the "bankruptcy judge shall determine . . . whether a proceeding is a core proceeding . . . ." 28 U.S.C. § 157(b)(3).

While the "distinction between core and non-core is somewhat subjective and contextual," courts consistently give an expansive interpretation to the term "core proceeding." *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003). *See*, *e.g.*, *Ben Cooper, Inc. v. The Insurance Co. of the State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d at 1398-40 (construing *Marathon* narrowly, applying a broad interpretation of "core proceeding" and finding core jurisdiction). Although "courts must

---

adversary proceeding pursuant to applicable case law. *See, e.g., Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995) (noting that certain § 157(b) subsections could be read "'to include almost any matter relating to bankruptcy . . . .' [and that] such an open-ended limitless construction would be incorrect.") (quoting *In re Ben Cooper, Inc.,* 896 F.2d. 1394, 1398 (2d Cir. 1991), *vacated* 498 U.S. 964, *reinstated*, 924 F.2d 36 (2d Cir. 1991) (first alteration in original)).

[7] In full, subsection b(2) reads:
Core proceedings include, but are not limited to--
    (A) matters concerning the administration of the estate;
    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
    (C) counterclaims by the estate against persons filing claims against the estate;
    (D) orders in respect to obtaining credit;
    (E) orders to turn over property of the estate;
    (F) proceedings to determine, avoid, or recover preferences;
    (G) motions to terminate, annul, or modify the automatic stay;
    (H) proceedings to determine, avoid, or recover fraudulent conveyances;
    (I) determinations as to the dischargeability of particular debts;
    (J) objections to discharges;
    (K) determinations of the validity, extent, or priority of liens;
    (L) confirmations of plans;
    (M) orders approving the use or lease of property, including the use of cash collateral;
    (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
    (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

be mindful of distinguishing the bankruptcy court's core power to restructure debtor-creditor relations from the adjudication of state-created private contract rights," courts nonetheless find that "'core proceedings' are to be given a broad interpretation corresponding to constitutional limits." *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 349 B.R. 108, 111 (Bankr. S.D.N.Y. 2006).

The Second Circuit has found that "in making the core/non-core distinction, 'Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the "core" jurisdiction would be construed as broadly as possible subject to the constitutional limits established in *Marathon*.'" *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002) (quoting *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995)). *See U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Ass'n, (In re U.S. Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999) (construing *Marathon* narrowly and giving a broad interpretation to the meaning of core proceedings). Within this statutory framework, it is the "expectation that the bankruptcy court will retain jurisdiction over most proceedings." *In re Enron Corp.*, 349 B.R. at 111. *See In re Best Prods. Co.*, 68 F.3d at 31 (finding support for a broad interpretation of "core proceeding" in the legislative history of § 157 and emphasizing that congressional sponsors "repeatedly said that ninety-five percent of the proceedings brought before bankruptcy judges would be core proceedings.").

In determining whether a dispute is core, courts commonly consider "whether [the dispute involves] a contract [that] is antecedent to the reorganization petition" as well as

"the degree to which the proceeding is independent of the reorganization." *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) (quoting *In re U.S. Lines*, 197 F.3d at 637). *See also In re S.G. Phillips Constructors, Inc.*, 45 F.3d at 707; *Delta Air Lines, Inc. v. City of Los Angeles (In re Delta Air Lines, Inc.)*, 2007 U.S. Dist. LEXIS 81216 (S.D.N.Y. Oct. 30, 2007); *In re Enron Corp.*, 349 B.R. at 111.

Although the instant adversary proceeding relates to asserted breaches of a prepetition agreement—a factor which "weighs against finding core status"—the close interconnection between the adversary proceeding and the bankruptcy process overwhelmingly renders this dispute core. *G.M. Crocetti, Inc. v. Trataros Constr., Inc. (In re G.M. Crocetti, Inc.)*, 2008 U.S. Dist. LEXIS 81604, at *10 (S.D.N.Y. Oct. 15, 2008). *See In re Petrie Retail, Inc.*, 304 F.3d at 229-230 (finding the impact of prepetition contract dispute "on other core matters renders it core"); *In re Delta Air Lines, Inc.*, 2007 U.S. Dist. LEXIS 81216, at *10 (noting "the effect of Delta's claim on core bankruptcy functions outweighs the importance of the contract's pre-petition origin").

Moreover, while the allegations in the Complaint do arise under state law and relate to prepetition events, this circuit has established that "bankruptcy courts are not precluded from adjudicating state-law claims" where, as here, "such claims are at the heart of the administration of the bankruptcy estate." *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d at 191 (quoting *In re Ben Cooper*, 896 F.2d at 1399). *See also In re Arnold Print Works*, 815 F.2d at 169 ("It is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here.").

Evaluation of a matter's independence from the reorganization "hinges on 'the nature of the proceeding.'" *In re U.S. Lines*, 197 F.3d at 637 (quoting *In re S.G. Phillips Construtors, Inc.,* 45 F.3d at 707). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . or (2) the proceedings directly affect a core bankruptcy function." *Id.* (alteration in original). *See In re Petrie Retail, Inc*., 304 F.3d at 229 (applying *In re U.S. Lines* analysis); *Central Vt. Pub. Serv. Corp.,* 341 F.3d at 191 (evaluating whether a proceeding is core "based upon the 'nature of the proceeding,' and 'the ramifications of the dispute on the administration of the estate.'") (quoting *S.G. Phillips Constructors,* 45 F.3d at 706 and *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 994 (2d Cir. 1990)) (internal citations omitted).

While the type of proceeding here—a breach of contract claim—certainly is not unique to bankruptcy, a fair reading of the Complaint leads to the conclusion that it has been brought as part of a coordinated and carefully executed strategy to oppose confirmation of the pre-negotiated plan. Outside of the bankruptcy framework, the nuanced and technical breach of contract allegations would only have been brought for purposes of exercising leverage or achieving an economic objective relating to the lending relationship.[8] The litigation, given what is at stake under the plan, is quite obviously a strategic maneuver calculated to preemptively and defensively thwart reinstatement and to create added leverage in opposing confirmation.[9]

---

[8] At oral argument the Court noted that "there's a big so what [about the prepetition defaults] . . . . The question of whether or not there's a prepetition default is meaningless for purposes of [JPMorgan's] rights except as it relates to reinstatement." (Tr. 33: 1-6 (May 5, 2009), ECF Doc. # 27).

[9] At the first-day hearings, counsel for JPMorgan used a PowerPoint presentation and spoke at length on the subject of reinstatement. Prior to the petition date JPMorgan had already commenced informal discovery by exchanging documents with the Debtors that related to this controversy. (Tr. 53:24-55:6,

11

It is undisputed that JPMorgan received all payments due under the Credit Agreement and that no monetary default occurred. Further, under the terms of the Credit Agreement, the debt already has been accelerated by virtue of the Debtors' bankruptcy filing.[10] Accordingly, there is no practical remedy to be achieved in this litigation other than the bankruptcy objective of attempting to prevent reinstatement, and that objective is meaningful only in relation to the plan process. But for the economically significant bankruptcy consequences, the relief sought under the Complaint—declaratory judgment as to prepetition defaults—would seem to be an otherwise insignificant aim. Without the bankruptcy-specific ramifications of declaratory judgment here, this litigation would seem to be a waste of resources.[11]

Within the context of the bankruptcy process, however, being able to prove the existence of these prepetition defaults would be a source of real economic leverage and, quite literally, a showstopper. That is the very reason this litigation is being pursued. A non-curable default under the Credit Agreement would likely preclude reinstatement under 11 U.S.C. § 1124 and derail the plan of reorganization.[12] Thus, because the outcome of the litigation in the adversary proceeding is indisputably connected to and

---

March 30, 2009, Case No. 09-11435 ECF Doc. # 103). This demonstrates that the cases are not only pre-negotiated from the perspective of the Debtors and those parties who support the current plan, but have been pre-litigated as well. The adversary proceeding cannot be viewed in a vacuum; it is being prosecuted with vigor in conjunction with JPMorgan's plan objections.

[10] Section 8 of the Credit Agreement relates to events of default, including bankruptcy (§ 8(g)), and the acceleration of obligations. (Decl. of George Wang Ex. E, ECF Doc. # 14).

[11] As emphasized by the Debtors in their Reply Brief, "although the alleged 'defaults' supposedly occurred in October, JPMorgan never sought to exercise its self-help remedies under the Credit Agreement, accelerate the debt, or take any other action until months later, and did not threaten to file a complaint until after the Debtors disclosed publicly intent to file for chapter 11 protection. Nor has JPMorgan alleged any standalone injury or actual legal controversy that exists outside of, or apart from, these chapter 11 cases." (Def.'s Reply Br. at 7, EFC Doc. # 21).

[12] See Note 3, *supra*.

"uniquely affected" by the bankruptcy proceeding, this matter is core under the first prong of the *In re U.S. Lines* test. *In re U.S. Lines*, 197 F.3d at 637.

Additionally, because the adversary proceeding directly affects, *inter alia*, confirmation of the bankruptcy plan—a quintessentially core bankruptcy function[13]—the matter is core under the second prong of the *In re U.S. Lines* test. In *In re U.S. Lines*, the debtor sought declaratory judgment regarding the interpretation of prepetition indemnity insurance contracts. Because those contracts were considered to be possibly "the most important asset" of the bankruptcy estate, the Second Circuit found that resolving the contract dispute would "have a *significant impact* on the administration of the estate." 197 F.3d at 638 (emphasis added). The Court held that, notwithstanding the fact that the proceeding related to prepetition contracts, "the impact these contracts have on other core bankruptcy functions nevertheless render[s] the proceedings core." *Id*. Similarly, resolution of the reinstatement controversy framed by the Complaint is the pivotal issue to be decided as a condition to confirmation and, as such, stands to significantly impact the Debtors' overall prospects for reorganization under the proposed plan.

This analysis is consistent with guidance provided in another recent Second Circuit decision. *See Bankruptcy Serv. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432 (2d Cir. 2008). In *In re CBI Holding Co.*, the Second Circuit referred to its prior holding in *In re U.S. Lines* and emphasized the importance of considering "'the degree to which the proceeding is independent of [the debtor's] reorganization'" in evaluating "its core status post-*Marathon*." *Id.* at 462 (alteration in original) (quoting *In re U.S. Lines,* 197 F.3d. at 637). In *In re CBI Holding Co.*, the Court found that the

---

[13] Section 157 (b)(2)(L) explicitly provides that "confirmations of plans" are core proceedings.

debtor's claim to expunge a proof of claim was "unquestionably a core proceeding" because it directly affected the allowance of a claim which was a core proceeding.[14] *Id.* at 461. The Court also held that related claims for fraud, negligence, and breach of contract were "so factually and legally interconnected" to core proceedings because they were "'based upon the same operative facts as' the . . . core proceedings" that they too were core. *Id.* at 461-62 (quoting *In re CBI Holding Co.,* 311 B.R. 350, 363). Lastly, the Court had "no trouble" identifying a separate set of claims as core where those claims arose out of the same transaction as a core matter and where a determination of such claims would "likely be dispositive on" a core issue. *Id.* at 464-65.

Similarly, the legal and factual issues surrounding reinstatement of the Credit Agreement are central to the Debtors' reorganization objectives and spring from the "same operative facts . . . ." *Id.* at 461. Moreover, determination of the existence of defaults under the Credit Agreement—the very relief sought in this adversary proceeding—would "likely be dispositive" of whether or not reinstatement of the Credit Agreement is permissible as contemplated in Debtors' plan. *Id.* at 464. *See PCH Assocs. v. Liona Corp. N.V. (In re PCH Assocs.)*, 55 B.R. 273 (Bankr. S.D.N.Y. 1985), *aff'd,* 60 B.R. 870 (S.D.N.Y.), *aff'd,* 804 F.2d 193 (2d Cir. 1986); *PSINet, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 23 (Bankr. S.D.N.Y. 2001) (reviewing precedent for the proposition that "a stand-alone adversary proceeding is core when it

---

[14] Arguably, *In re CBI Holding Co.* may be distinguished from the present case because the defendant in *CBI Holding Co.* filed a proof of claim and JPMorgan has not filed one here. However, the Second Circuit's rationale in *CBI Holding Co.* persuasively relies on the linkage of certain related claims to the core proceedings, not on the parties' presumed consent to jurisdiction by reason of filing a proof of claim. *See* 529 F.3d at 459-466.

provides the underpinnings for the determination of separate contested matter core issues . . . .").

Tactical maneuvers should not dictate substance or transform the true character of an underlying dispute. By means of this adversary proceeding or otherwise, this Court will need to address the reinstatement question presented in the Complaint in deciding whether the plan may be confirmed. The aggressive posture chosen by JPMorgan—a preemptive direct attack on reinstatement calculated to put pressure on the plan process— should not change the jurisdictional outcome nor should it have any impact on the authority of the bankruptcy court to adjudicate the right to reinstate indebtedness under the Credit Agreement. Whether brought as an adversary proceeding or as an objection to confirmation, the issues to be decided are identical. *See In re PSINet Inc.,* 271 B.R. at 12 (noting recharacterization claims raised in stand-alone adversary proceeding before the Court were "no less core than they would be if they had been brought the way they so frequently are, in connection with a litigated dispute (most commonly, a contested matter) under title 11 . . . .").

Despite the unmistakable connection between the litigation and permissible plan treatment, JPMorgan urges the Court to parse the corporate structure and to separate the issue of CCO's "solvency" from the Debtors' bankruptcy proceedings as a whole. (Pl.'s Opp'n Br., ECF Doc. # 13). However, limiting the focus to CCO as a means to more easily characterize the Court's jurisdiction as non-core would be both artificial and inconsistent with the Second Circuit's construction that core jurisdiction should be interpreted as broadly as possible congruent with constitutional limits. *In re Petrie*

*Retail, Inc.*, 304 F.3d at 229. Concentrating attention on a single solvent entity within the corporate structure disregards relationships within the integrated corporate enterprise.

The assertion that CCO is solvent and that, as such, no substantive bankruptcy rights are implicated by the adversary proceeding, also conflicts with JPMorgan's understanding of the Debtors' operations. In drafting the Credit Agreement, JPMorgan acknowledged the close "relationship between CCO and its affiliates" and "negotiated Defaults and Events of Default specifically linked to the . . . Designated Holding Companies." (Compl. ¶ 34, ECF Doc. # 1). Indeed, the entire Complaint is predicated on the supposed insolvency of an affiliate. Therefore, JPMorgan's argument that the adversary proceeding does not substantively impact the reorganization because CCO—when viewed separately from its corporate affiliates—is solvent, is both unpersuasive and unrealistic.

Additionally, exercising core jurisdiction over the adversary proceeding is appropriate notwithstanding the holding in *In re Orion Pictures Corp. See Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir. 1993) (finding debtor's action for breach of a prepetition contract to be non-core when brought against a party that had not filed a claim with the bankruptcy court).

The most notable distinction here is that the adversary proceeding has been brought by JPMorgan, not the Debtors, for purposes of protecting the interests of the Prepetition Lenders and achieving practical and tactical advantages within these bankruptcy cases. *See, e.g., Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 417 (Bankr. S.D.N.Y. 2004) (distinguishing *Buena Vista Television* from *Orion* on the basis that the debtor was not the plaintiff). In

contrast to the facts of *Orion*, JPMorgan is not an unwilling party that has been "'involuntarily subjected'" to the Court's jurisdiction. *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 834 (S.D.N.Y. 2002) (quoting *S.G. Phillips Constructors, Inc.*, 45 F.3d at 706).[15] Instead, JPMorgan has chosen its forum after considering its strategic options. JPMorgan has actively participated as a central player in these cases from the outset and remains "intimately involved in the bankruptcy proceedings."[16] *Id*.

Additionally, subsequent decisions have limited the applicability of *Orion*. In *In re Best Products Co.,* the Second Circuit concluded that a contract dispute between two non-debtor parties was core where the debtor's plan of reorganization provided for enforcement of the contract, a prepetition subordination agreement. *In re Best Prods. Co.*, 68 F.3d 26. Notwithstanding the fact that the parties argued that the matter was "merely a contract dispute between two creditors," the Second Circuit found the matter core because it involved issues "at the heart of the bankruptcy process . . . ." *Id*. at 28, 32 (quoting *In re Best Products Co., Inc.*, 168 B.R. 35, 66 (Bankr. S.D.N.Y. 1994)).

In the *In re Best Products Co.* decision, the Court specifically addressed its holding in *Orion*. Rejecting the argument that *Orion* served to narrow the scope of the so-called "catch-all" provisions of § 157(b)(2), the Court explained that:

---

[15] Given the extensive pre-filing negotiations and planning as well as the disclosures made by the Debtors regarding the proposed reinstatement of the Credit Agreement, JPMorgan could have commenced a prepetition lawsuit in state or federal court. Instead, JPMorgan elected to defer filing the Complaint until the petition date of the bankruptcy cases. The parties were also in close contact during this prepetition phase of the restructuring and engaged in informal discovery. JPMorgan, after considering its strategic options, decided to litigate the reinstatement question in this Court while maintaining its legal position that the litigation is non-core. (Tr. 53:24-55:6, March 30, 2009, Case No. 09-11435 ECF Doc. # 103).

[16] Debtors contend that, although JPMorgan has not filed a proof of claim, JPMorgan consented to bankruptcy court jurisdiction by voluntarily involving itself in the bankruptcy proceeding and by seeking the Court's protections. (Def.'s Mot. to Dismiss at 8, ECF Doc. # 11). Because core jurisdiction can readily be established based on the nature of the adversary proceeding, it is not necessary to decide whether JPMorgan's voluntary activities in this Court should be deemed equivalent to consent to jurisdiction.

17

> Congress intended § 157(b)-(2)(A)'s designation of matters relating to the administration of the estate as core to encompass a wide range of matters . . . We merely found that allowing that subsection to encompass "*[a]ny* [breach of] contract action that the debtor would pursue . . . [and that] would be expected to inure to the benefit of the debtor estate" would create an exception to *Marathon* that would swallow the rule.

*Id.* at 32 (alteration in original) (citation omitted) (quoting *In re Orion Pictures Corp.*, 4 F.3d at 1102). Further clarifying the holding in *Orion*, the Court noted that the *Orion* decision turned on the fact that the "only relationship the action had to the bankruptcy proceeding was that determination of the action would affect the ultimate size of the estate." *Id*. By contrast, the Court found that the proceeding in *In re Best Products* did not simply seek to "augment the estate" but rather involved "the priority rights of creditors who have filed claims against the estate." *Id*. (emphasizing that its decision rested on the nature of the proceeding, not on creditors' consent to jurisdiction by virtue of filing proofs of claim).

Similarly, in *In re U.S. Lines*, the Court also differentiated the facts of that case from *Orion* by noting that while in *Orion* the "insurance proceeds would only augment the assets of the estate," resolution of the contract dispute in *In re U.S. Lines* would have a "much more direct impact on the core administrative functions of the bankruptcy court." *In re U.S. Lines*, 197 F.3d at 638.

The adversary proceeding brought by JPMorgan is quite literally at the core of these bankruptcy cases. The Complaint seeks a determination that reinstatement of indebtedness is not permissible in order to defeat the most fundamental element of Debtors' plan—the ability to retain rights under the Credit Agreement and thereby to preserve the benefits of senior indebtedness at a favorable blended rate of interest. As

such, the adversary proceeding is properly considered core under the authority of *In re U.S. Lines* and *In re Best Products.* This litigation is closely connected to the confirmation of the plan and has a "direct impact on the core administrative functions of the bankruptcy court." *Id.* It also implicates issues that truly are "at the heart of the bankruptcy process . . . ." *In re Best Products*, 68 F.3d at 32. These issues include, among others, determination regarding impairment of claims under the Credit Agreement, reinstatement under § 1124, the ability to achieve confirmation of the plan, adjustment of the debtor-creditor relationship, and the administration of the Debtors' estates.

*Conclusion*

Applicable case law makes clear that distinguishing between core and non-core proceedings is not a mechanical exercise. It is a determination that requires thoughtful consideration of the relationship of the particular dispute to performance by the Court of traditional bankruptcy functions. The fact that the litigation here relates to prepetition defaults that are alleged to have occurred under a prepetition contract is but one of the factors to be weighed in this analysis, and in this instance it is not determinative.

In reaching this decision, the Court has considered the particular circumstances of these very complex pre-negotiated chapter 11 cases. The cases involve an operationally sound but over-leveraged business that is heading toward confirmation on an extraordinarily fast track. These are so-called mega cases, and billions of dollars are at stake. The parties are well represented by experienced and highly sophisticated lawyers, who started jockeying for position well in advance of the petition date. Carefully executed litigation strategies are currently being deployed in anticipation of what, no

doubt, will be a hotly contested confirmation hearing scheduled to begin on July 20, 2009. Accordingly, the context matters, and the procedural setting helps the Court in deciding that the litigation cannot be anything other than a core proceeding.

JPMorgan commenced this adversary proceeding regarding defaults under the Credit Agreement on the petition date and used it as a means to challenge the propriety of the plan treatment of claims arising under the Credit Agreement. The Complaint references prepetition defaults but the purpose of the litigation is undisguised—to accelerate the articulation of objections to the plan.

Accordingly, for reasons stated on the record of the hearing held on May 5, 2009 and as supplemented by this memorandum decision, the Court has determined that the Complaint sets forth a core proceeding, a cause of action that impacts these bankruptcy cases directly and that has real economic significance only within the bankruptcy process.

SO ORDERED.

Dated: New York, New York  /s/ James M. Peck
July 7, 2009  HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE