# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *In re:* | **CHAPTER 11 BANKRUPTCY** |
| | **CASE NUMBER 09-11435 (JMP)** |
| ***Charter Communications, Inc. et al.,*** | |
| *Debtors.* | **Hearing Date: July 20, 2009**<br>**10:00 AM** |

## OBJECTION OF THE
## U. S. SECURITIES AND EXCHANGE COMMISSION
## TO THE CONFIRMATION OF THE
## DEBTORS' JOINT PLAN OF REORGANIZATION

The U.S. Securities and Exchange Commission ("Commission"), appearing in this case pursuant to §1109(a) of the Bankruptcy Code,[1] 11 U. S. C. §101, *et seq.,* as amended ("Bankruptcy Code"), objects to the confirmation of the Joint Plan of Reorganization (the "Plan") filed by Charter Communications Inc. and its related debtors ("Charter" or the "Debtors"), dated May 7, 2009. In support of its objection, the Commission respectfully states as follows:

### INTRODUCTION

A Chapter 11 plan should not be used as a vehicle to discharge or release nondebtors who may be independently liable to creditors or interest holders. Allowing such releases and related injunctive provisions would result in nondebtors benefiting from a debtor's bankruptcy by effectively obtaining their own discharge with respect to past misconduct or wrongdoing.

Releases have special significance for public investors. Such provisions would prevent public investors from bringing or continuing actions against nondebtors, such as

---

[1] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue". 11 U.S.C. §1109(a).

officers and directors, for violations of the federal securities laws or breach of fiduciary duty under state law.

Section 524(e) of the Bankruptcy Code provides that only debts of the Debtors are affected by the Chapter 11 discharge provisions. Yet, in contravention of Section 524(e) of the Bankruptcy Code, the Plan provides for a release and injunction in favor of numerous non-debtor third parties to the detriment of public investors, whose shareholder interests are being cancelled under the Plan, and other potential claimants. Unless the release and injunctive provisions related to non-debtor parties are deleted from the Plan, the Plan cannot satisfy the requirement of Section 1129(a)(1) of the Bankruptcy Code, which requires that a plan shall be confirmed only if it complies with all applicable provisions of Chapter 11.

## BACKGROUND

On March 27, 2009 (the "Petition Date"), Charter, one of the largest providers of broadband entertainment and communications services in the United States, and certain of its affiliates, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Charter is a public company whose common stock is registered under Section 12(b) of the Securities Exchange Act of 1934.[2]

On the Petition Date, the Debtors also filed the Plan and related Disclosure Statement. On May 7, 2009, the Court approved the adequacy of the Disclosure Statement and scheduled a confirmation hearing on the Plan for July 20, 2009. The Plan provides for disparate treatment among a host of claim holders. With the exception of Paul G. Allen ("Allen"), Charter's primary prepetition shareholder, interest holders in the Debtors will receive no distributions under the Plan.

---

[2] As of February 28, 2009, Charter had 400,801,768 shares of its Class A common stock, par value $0.001 per share, issued and outstanding. See Debtors' Disclosure Statement p. 19.

Article X.E. of the Plan purports to release any and all claims that creditors and interest holders may have against certain non-debtor third parties, including the Debtors' members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives and certain signatories of Plan Support Agreements (collectively, the "Releasees"). <u>See</u> p. 60 of Plan. Specifically, the Plan provides in pertinent part:

> On the Effective Date and effective as of the Effective Date, the Holders of Claims and interests shall be deemed to provide a full discharge and release to the Debtor Releasees and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, **violations of federal or state securities law, or otherwise**, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan . . . (the "Release") (emphasis added) <u>See</u> Plan at p. 61.

With the possible exception of Allen, the Releasees do not appear to be providing any independent monetary contribution in exchange for the benefits of the Release. Moreover, with respect to Allen's contribution, there is no way to determine the amount of the contribution that is supporting the release of third party claims, which must be separate from any plan consideration distributed to creditors in exchange for claims. In any event, since shareholders are receiving nothing under the Plan, there no basis whatsoever to conclude that such consideration offered by Allen under the Plan would support a release of third party shareholder claims. Finally, there is no mechanism in the Plan whereby creditors and interest holders may individually consent to be bound by the Release.

**DISCUSSION**

I.      **The Release and Injunctive Provisions Contravene Section 524(e) and Applicable Case Law**

        A.  <u>Section 524(e) Is Limited to Debtors</u>

Section 524(e) addresses the scope of a bankruptcy discharge and states, in relevant part, that a "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Bankruptcy Code therefore contemplates that the benefits of the bankruptcy laws, i.e. discharge of debts, are awarded only to those who submit to its burdens through subjecting the debtor's assets to the jurisdiction and control of the bankruptcy court. <u>See, e.g.</u>, <u>Green v. Welsh</u>, 956 F.2d 30, 33 (2d Cir. 1992); <u>Feld v. Zale Corp.</u>, 62 F.3d 746 (5th Cir. 1995); <u>In re Lowenschuss</u>, 67 F.3d 1394 (9th Cir. 1995). <u>See</u> <u>also</u> <u>In re XO Communications, Inc.</u>, 330 B.R. 394, 437 (Bankr. S.D.N.Y. 2005) citing <u>Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)</u>, 416 F.3d 136, 141, 142 (2d Cir. 2005)("<u>Metromedia</u>")("the only explicit authorization in the Code for nondebtor releases is Bankruptcy Code Section 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims").

Indeed, the Second Circuit has held that while a bankruptcy court may, under 11 U.S.C. Section 105(a), "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, the statute does not allow the bankruptcy court "to create substantive rights that are otherwise unavailable under applicable law". <u>Metromedia</u>, 416 F.3d at 142 quoting <u>New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.</u>, 351 F.3d 86, 92 (2d Cir.2003); <u>see</u> <u>also</u> <u>Smart World Technologies, LLC v. Juno Online Servs., Inc.</u>, 423 F.3d 166, 183 (2d Cir.2005)

(similarly citing *Dairy Mart* and noting that "[section] 105(a)'s equitable scope is plainly limited by the provisions of the [Bankruptcy] Code.").

B.      Rare Exceptions Under Metromedia

Although as a general rule, nondebtor releases are not permissible under a plan, under Metromedia, the Second Circuit made clear that under certain extraordinary and rare circumstances, which are conspicuously absent in our case, a non-debtor release may be justified. Unique cases include situations where (i) the estate received substantial consideration, (ii) the enjoined claims were 'channeled' to a settlement fund rather than extinguished, (iii) the enjoined claims would directly impact the debtors' reorganization 'by way of indemnity or contribution,' or (iv) the plan otherwise provided for the full payment of the enjoined claims. Id. at 142 (internal citations omitted).

Courts have also upheld third party releases and injunctions where such provisions were critical components of a settlement that played a vital part in the plan and were necessary to the proposed reorganization of the Debtors and the successful administration of their estates. In re Spiegel, Inc., 2006 WL 2577825, 7 (Bankr. S.D.N.Y. Aug. 16, 2006). Thus, courts have approved non-debtor third-party releases and injunctions in cases with global settlements of massive liabilities in tort litigation cases where co-liable third parties made substantial contributions in exchange for the release of their liability. See e.g., See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285 (2d Cir. 1992); In re A.H. Robins Co., 880 F.2d 694 (4th Cir. 1989); MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89 (2d Cir.) cert. denied, 488 U.S. 868 (1988).

II.        **No Extraordinary Circumstances Are Present In This Case**

In this case, there is no evidence of the rare circumstances alluded to in Metromedia and other cited cases. Unlike Drexel, Robins and Manville, this case does not involve settlements of massive liabilities involving multitudes of claimants which would warrant the extraordinary relief sought by the Debtors. While the Debtors refer to a settlement known as the CII Settlement between Allen and certain affiliated entities (the "CII Settlement"), see Disclosure Statement, p. 26-28, the settlement, as described, does not appear to warrant the granting of a Release to its main participant, Allen, much less to the numerous other persons included as Releasees.

Specifically, according to the Disclosure Statement, Allen executed a Plan Support Agreement and is alleged to be making a substantial contribution to the Debtors' estates, including "agreeing to numerous restructuring obligations without which the Debtors could not reinstate certain debt or take advantage of significant tax attributes that constitute extremely valuable assets of the Debtors' estates." See Disclosure Statement at 97. In consideration for this vaguely described contribution and for entering into the CII Settlement, Allen and his affiliates are receiving not only the benefit of the Release but also equity and voting interests in the reorganized entity, $85 million in new notes, warrants, and up to $195 million in cash. See Disclosure Statement at 26-28.

Absent any further description of the precise consideration tendered by Allen, it must be presumed that his contribution is far below what would be required to justify the substantial monetary benefits and third party release inuring to his benefit under the Plan. Even assuming, however, that Allen's consideration is deemed sufficient to justify a release by creditors, who are receiving various forms of distribution in the Chapter 11

case, such consideration could not possibly be in exchange for a release from claims of shareholders who, pursuant to the Plan, are not scheduled to receive any distribution and whose interests are being terminated.

Moreover, the Releasees include numerous other persons, including former officers, directors, and advisors etc. who were never parties to any settlement with the Debtors and who are not identified as having tendered any monetary consideration in exchange for the Release.  While the Disclosure Statement in support of the Debtors' Plan states that the released parties "have all made substantial contributions to the Debtors' estates", see Disclosure Statement, p. 97, the description of the consideration attributable to the Releasees is utterly vague and acknowledges that the consideration is non-monetary and instead in the form of serving in "vital roles in the Debtors negotiation of the largest prearranged Plan in history." Id.

The Disclosure Statement goes on to state that "the released parties include certain non-Debtor Holders of Claims party to Plan Support Agreements to supply critical financing for the Debtors' successful emergence from Chapter 11." Id.  The Plan Support Agreements are not included as exhibits to the Plan and/or Disclosure Statement and have otherwise not been filed with the Bankruptcy Court.  Accordingly, it is impossible to determine the exact identity of the Releasees or to evaluate the precise nature of the consideration referred to in the Disclosure Statement.[3]

In summary, there does not appear to be any justification for the Release and related injunctive provision imposed upon Charter's shareholders.  As a threshold issue,

---

[3] In an attempt to determine the exact identity of the Releasees and the nature of the specific consideration to be tendered in exchange for the Release, the SEC staff posed a request for this information to Debtors' counsel. Counsel was unable to respond specifically to the request or otherwise elaborate on the vague description set forth in the plan documents, other than to orally state that the various signators to the Plan Support Agreements would not agree to the prearranged Plan absent the Releases.

the Debtors' shareholders are not receiving any form of consideration in exchange for the imposed Release.

With respect to claimholders, the Release and injunctive provisions, as presented, are ambiguous and fail to satisfy the most basic standards laid out in Metromedia and other cases in this circuit. At a minimum, the Court must compel the Debtors to disclose with particularity the specific individuals obtaining the subject releases and the precise consideration being tendered to justify the respective release. Only then could a determination be made as to the existence of the "rare" circumstances warranting such extraordinary relief to be imposed upon the Debtors' creditors.

III.     **No Mechanism to Opt Out**

Consistent with principles of contract law and established case law, courts have granted releases and permanent injunctions in favor of nondebtors in Chapter 11 cases where the parties have individually consented to them. See In re Onedia, Ltd., 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) citing Metromedia, 416 F.3d at 142 ("[n]ondebtor releases may also be tolerated if the affected creditors consent."); See also, In re Zenith Electronics Corp., 241 B.R. 92, 111 (Bankr. Del. 1999) (court held that releases of third party claims cannot be accomplished without the affirmative agreement of the affected creditor); In re Arrowmill Dev. Corp., 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan.).

The Release in Charter's Plan is not consensual since the Plan contains no mechanism for creditors and shareholders to consent voluntarily to the Release, which is granted simply by virtue of plan confirmation. Specifically, the Plan lacks any provision to procure the individual consent of the affected public investors in exchange for the

Release that benefits the nondebtor beneficiaries. Nor have the Debtors consented to the

formation of a ballot, which would allow voters the option to affirmatively elect to be

bound by the Release.

Indeed, many public investors, including holders of Charter's equity securities

and holders of potential claims for violation of securities laws, will not be given the

opportunity to vote on the Charter Plan and certainly cannot be deemed to have consented

to the Release. This Court must prevent this inequitable treatment so that parties in

interest are at a minimum afforded an opportunity to affirmatively elect to consent or

reject the Release, independent of any vote with respect to the Debtors' Plan.

## CONCLUSION

Release of nondebtors has special significance for public investors. Allowing

such releases, typically warranted in rare circumstances, would mean that nondebtors

would benefit from the Debtors' bankruptcy by obtaining their own release with respect

to past misconduct, including violations of the federal securities laws. Investors could be

blocked by such provisions from bringing suits against these non-debtor parties under the

federal securities laws or for breach of fiduciary duty under state law.

The Release and injunctive provision in the Debtors' Plan appear designed to

release non-debtor third party liability contrary to existing case law and are at odds with

sound public policy considerations underlying the rights of public investors to pursue

legitimate claims against officers and directors and other wrongdoers. The Debtors have

failed to describe with particularity the consideration tendered by Allen and the other

nondebtor beneficiaries in exchange for the Release and injunction that inure to their

benefit. Even if, however, the Debtors demonstrate that the Releasees have tendered a

form of consideration, the Release must still not be imposed upon Charter's shareholders since they have not received any of the consideration in exchange for the Release.

Finally, the Release is not consensual and the Plan contains no mechanism for public investors to voluntarily consent to such relief. Rather than being essential to resolving an extraordinary case, the Releases appear to be an attempt by the Debtors to give Allen, the officers, directors and other Releasees a benefit at the expense of Charter's investors, whose interests and potential claims would become worthless.

WHEREFORE, the U. S. Securities and Exchange Commission respectfully urges that the Court, for the reasons stated above, enter an order denying confirmation of the Plan unless the Release and related injunction that effectively release and discharge non-debtor third party liability are deleted from the Plan.

Dated:    July 13, 2009
          New York, New York

RESPECTFULLY SUBMITTED,


By:   /s/ Alan S. Maza
Alistaire Bambach [State Bar of New York # 5891]
Division Bankruptcy Counsel/Assistant Regional Director
Alan S. Maza [State Bar of New York # 7967]
Senior Bankruptcy Counsel
James Clarkson
Acting Regional Director


COUNSEL TO:          U.S. SECURITIES AND EXCHANGE COMMISSION
                     New York Regional Office
                     3 World Financial Center
                     New York, New York 10281
                     Telephone  (212) 336-0133
                     Facsimile   (212) 336-1320

**CERTIFICATE OF SERVICE**

I, Alan S. Maza, do hereby certify that a copy of the foregoing OBJECTION OF THE U.S. SECURITIES AND EXCHANGE COMMISSION TO THE CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION was served on the parties that receive electronic notification in these proceedings and, with respect to the parties listed below, I sent a copy to be received via email on this day of July 13, 2009.

**SERVICE LIST**

Office of the US Trustee
Attn: Paul Schwartzberg
Paul.Schwartzberg@usdoj.gov

Kirkland & Ellis LLP
Attn: Stephen E. Hessler
Shessler@kirkland.com

Simpson Thacher & Bartlett LLP
Attn: Peter V. Pantaleo
Ppantaleo@stblaw.com

Nixon Peabody LLP
Attn: Michelle Ross
Vmilione@nixonpeabody.com

Brown Rudnick LLP
Attn: Daniel J. Saval
Dsaval@brownrudnick.com

Paul Weiss Rifkind Wharton & Garrison LLP
Attn: Alan Kornberg
Akornberg@paulweiss.com

Kasowitz Benson Torres & Friedman LLP
Attn: David Rosner
Drosner@kasowitz.com

Skadden Arps Slate Meagher & Flom LLP
Attn: Jay Goffman
Jay.Goffman@skadden.com

Togut Segal & Segal LLP
Attn: Albert Togut
altogut@teamtogut.com

Ropes & Gray LLC
Attn: Mark R. Somerstein
Mark.somerstein@ropesgray.com