Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

    - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors and Debtors in Possession
(Other than Charter Investment, Inc.)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) Case No. 09-11435 (JMP) |
| | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

# FIRST INTERIM APPLICATION OF
# KIRKLAND & ELLIS LLP, AS COUNSEL FOR
# THE DEBTORS AND DEBTORS IN POSSESSION, FOR
# COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
# AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY
# EXPENSES INCURRED FROM MARCH 27, 2009 THROUGH JUNE 30, 2009

| | |
|---|---|
| Name of Applicant: | Kirkland & Ellis LLP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | Retention Order Entered on April 16, 2009 (Effective as of March 27, 2009) |
| Period for Which Compensation and Reimbursement is Sought: | March 27, 2009 through June 30, 2009 |
| Fees Sought for Compensation Period: | $8,440,669.00 |
| Expenses Sought for Compensation Period: | $493,093.58 |
| Total Compensation and Expense Reimbursement Sought: | $8,933,762.58[1] |
| Total Compensation and Expenses Previously Sought and Awarded: | None |
| Blended Rate of Professionals (Including Paraprofessionals) | $455.11 |
| Blended Rate of Professionals (Excluding Paraprofessionals) | $524.26 |

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Kirkland & Ellis LLP ("K&E"), counsel for Charter Communications, Inc. and certain of

its affiliates, as debtors and debtors in possession in the above-captioned cases

(collectively, the "Debtors" or "Charter"), [2] submits this first interim fee application

---

[1] During this interim fee period, K&E has written off $12,904.00 in fees and $20,106.78 in expenses.

[2] The Debtors in these cases include: Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC;
(Continued…)

(the "<u>First Interim Fee Application</u>"), pursuant to sections 330 and 331 of title 11 of the United

States Code (the "<u>Bankruptcy Code</u>"); Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"); Rule 2016-1 of the Local Bankruptcy Rules for the Southern District

of New York (the "<u>Local Rules</u>"); General Order M-151, Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases

(the "<u>Local Guidelines</u>"); the Court's Order Establishing Procedures for Interim Compensation

---

Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.; CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Pacific Microwave; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

and    Reimbursement    of    Expenses    for    Professionals    [Docket.    No.    174]
(the "Interim Compensation Order"); and the United States Trustee Guidelines for Reviewing
Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330,
effective January 30, 1996 (the "UST Guidelines," and collectively with the Local Guidelines,
the "Guidelines"), requesting allowance and approval of compensation for professional services
rendered to Charter and for reimbursement of actual and necessary expenses incurred in
connection with such services from March 27, 2009 (the "Petition Date") through and including
June 30, 2009 (the "First Interim Fee Period").

In support of this First Interim Fee Application, K&E respectfully represents as follows:

## Jurisdiction

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This
matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

2.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 330 and 331 of the
Bankruptcy Code, Bankruptcy Rule 2016 and the Guidelines.  Pursuant to the Local Guidelines,
a certification of compliance is attached hereto as **Exhibit A**.

## Background

4.     The Debtors are one of the largest providers of broadband entertainment and
communications services in the United States, with operations in 27 states and approximately
5.5 million customers.  With 131 Debtor entities and approximately $21.7 billion of debt, the
Debtors' restructuring involves a massive undertaking.

5.     The Debtors commenced the chapter 11 cases (the "Chapter 11 Cases") following
months of intensive preparations by Charter's management and professional advisers to organize
their    major    creditor    constituencies    and    negotiate    plan    support    agreements

4

(the "<u>Plan Support Agreements</u>") for a prearranged joint plan of reorganization (the "<u>Plan</u>") that eliminates $8.2 billion of debt and hundreds of millions of dollars in annual interest costs, raises approximately $3.5 billion of capital and debt financing, and enables Charter to emerge from these Chapter 11 Cases even better positioned to succeed.

## A.    Chapter 11 Case Filings

6.    On the Petition Date, K&E worked diligently to ensure the Debtors transitioned smoothly into chapter 11 by obtaining necessary first- and second-day relief for the Debtors with respect to the maintenance of operations in the ordinary course of business, and the retention and compensation of requisite professionals.  Specifically, the Debtors filed several motions seeking orders authorizing the Debtors to pay various prepetition claims.  Entry of these orders eased the strain on the Debtors' relationships with employees, vendors, customers and taxing authorities as a consequence of the commencement of the Chapter 11 Cases.

7.    Among other things, these orders authorized the Debtors to:  (a) honor customer obligations and continue customer programs; (b) maintain cash management systems; (c) use prepetition bank accounts, checks, and other business forms; (d) make tax payments to federal, local and state taxing authorities; (e) prohibit utility companies from discontinuing services; (f) pay prepetition claims of shippers, warehousemen, and other lien claimants; (g) maintain prepetition insurance policies and enter into new insurance policies; (h) maintain prepetition premium financing agreements and enter into new premium financing agreements; and (i) pay certain prepetition employee wages and benefits.  In addition, on the Petition Date, the Debtors sought authorization to pay certain fixed, liquidated, noncontingent and undisputed prepetition trade claims of the Debtors in the ordinary course of business.  The Debtors also received authorization to enter into a surety bond program pursuant to which Travelers Casualty and

5

Surety Company of America will maintain and renew existing, and provide new, surety bonds on a post-petition basis to facilitate the Debtors' ability to conduct and continue their operations during the Chapter 11 Cases.

8.      Additionally, K&E worked with the Debtors to obtain authority to use cash collateral of their secured creditors to permit the orderly continuation of the operation of the Debtors' businesses and to satisfy their working capital and operational needs.  The cash collateral order provides adequate protection to those secured creditors, including:  (a) adequate protection liens; (b) a section 507(b) superpriority claim; (c) payment of (i) prepetition interest and fees, as well as current post-petition interest at the default rate, (ii) reasonable fees of the administrative agent for the lenders, (iii) reasonable expenses of the members of the steering committee for the lenders, and (iv) quarterly amortization payments; (d) certain reporting requirements; and (e) certain financial and other covenants.

9.      The Debtors also requested authority to provide adequate protection to holders of second and third lien secured notes issued by Charter Communications Operating, LLC ("CCO") against any diminution in value of their interest in certain prepetition collateral on account of the use of cash collateral and imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code in the form of, among other things, adequate protection liens, a 507(b) claim, adequate protection payments and certain financial and other reporting requirements. The granting of adequate protection should allow the Debtors to use the secured creditors' cash collateral throughout the Chapter 11 Cases.

10.      On April 10, 2009, the Debtors' management and professionals completed and filed Charters' schedules of assets and liabilities and statements of financial affairs.  On May 12,

6

2009, the meeting of creditors mandated by section 341(a) of the Bankruptcy Code was held in New York City.

**B.      The Prearranged Plan**

11.      Also on the Petition Date, the Debtors filed their (a) Plan [Docket No. 36]; (b) plan supplement (the "Plan Supplement") [Docket No. 37]; (c) disclosure statement (the "Disclosure Statement") [Docket No. 38]; (d) memorandum in support of  reinstatement [Docket No. 3]; and (e) motion to approve the Disclosure Statement and establish voting procedures [Docket No. 30].  On May 7, 2009, the Debtors filed updated versions of the Plan [Docket No. 320] and Disclosure Statement [Docket No. 319].  On July 15, 2009, the Debtors filed a further revised Plan [Docket No. 615].  Moreover, the Debtors periodically updated the Plan Supplement exhibits, filing amended and restated Exhibit 19 on May 4, 2009 [Docket No. 298]; Exhibits 1 and 12 on May 19, 2009 [Docket No. 385]; and Exhibits 3, 23, 24, and 25 on July 16, 2009 [Docket No. 632].

**C.      Reinstatement Litigation**

12.      On the Petition Date, JPMorgan Chase Bank, N.A. ("JPMorgan"), the administrative agent under the Debtors' prepetition senior credit facility, filed an adversary complaint (the "Reinstatement Litigation") opposing the  reinstatement of such credit facility.[3] The Court set a joint confirmation hearing and reinstatement trial.

13.      In the four months between the start of the Chapter 11 Cases and the Plan confirmation hearing (the "Confirmation Hearings"), K&E undertook a monumental effort to pursue approval to reinstate the senior debt instruments.  Through the discovery process, K&E

---

[3]      See Adversary Proceeding No. 09-01132 [Docket No. 1].

has taken or defended more than 50 depositions, amounting to nearly 350 hours of testimony. The Debtors have produced more than 65,000 pages of responsive material.  In total, the parties have produced almost two million pages of documents and six expert reports.  Moreover, K&E has undertaken significant efforts to respond to the objections against reinstatement.

**D.      Disclosure Statement Order, Plan Voting, and Plan Objections**

14.      On May 7, 2009, the Court approved the Disclosure Statement [Docket No. 323]. Shortly thereafter, on or about May 12, 2009, the Debtors, through their solicitation agents, distributed solicitation packages to creditors eligible to vote on the Plan.  The Plan voting deadline was June 15, 2009.  A majority of the creditors eligible to vote on the Plan voted to support the Plan.

15.      JPMorgan is objecting to confirmation on the grounds that the Debtors are not entitled to reinstate the banks' senior secured debt.  JPMorgan contends the Debtors have defaulted on the senior secured debt credit agreement.

16.      The          Charter          Communications,          Inc.          noteholders (collectively, the "CCI Noteholders") voted as a class to reject the Plan and are objecting to confirmation on the grounds that they are entitled to a par recovery, notwithstanding that classes of senior noteholders are receiving significantly lower distributions.  K&E has been forced to expend significant time and effort responding to these objections.

17.      Additional Plan objections (collectively, the "Plan Objections") include:  (a) the Texas Comptroller on July 10, 2009 [Docket No. 555]; (b) Rembrandt Technologies, L.P. on July 10, 2009 [Docket No. 556]; (c) HSBC Bank USA, N.A. on July 10, 2009 [Docket No. 558]; (d) Verizon Communications Inc. on July 13, 2009 [Docket No. 565]; (e) Calyon New York Branch on July 13, 2009 [Docket No. 569]; (f) Louisiana State Department of Revenue on July

8

13, 2009 [Docket No. 572]; (g) Key Colony Fund, LP on July 13, 2009 [Docket No. 574]; (h) the

U.S. Securities and Exchange Commission on July 13, 2009 [Docket No. 576]; (i) Texas Tax

Claimants on July 13, 2009 [Docket No. 577]; (j) R2 Investments on July 13, 2009 [Docket No.

579]; (k) Law Debenture Trust Company (on behalf of the CCI Noteholders) on July 13, 2009

[Docket No. 581]; (l) Wells Fargo Bank, N.A. on July 13, 2009 [Docket No. 584]; and

(m) Wilmington Trust Company on July 13, 2009 [Docket No. 588], in addition to several

executory contract assumption cure objections.  K&E negotiated consensual resolutions to many

of the Plan Objections.[4]

18.    On July 20, 2009, the Confirmation Hearings began.  In addition to addressing

general confirmation issues, the Confirmation Hearings incorporate the Reinstatement Litigation.

The Confirmation Hearings are ongoing.

**E.    Automatic Stay**

19.    During the First Interim Fee Period, several parties filed motions to lift the

automatic stay, for example:  (a) Rembrandt Technologies, L.P. on April 13, 2009 [Docket No.

148]; (b) the Bodet Plaintiffs on May 21, 2009 [Docket No. 407]; (c) Robert and Kerry Haws on

May 18, 2009 [Docket No. 432]; and (d) the Huch Plaintiff on June 24, 2009 [Docket No. 517].

K&E worked with the Debtors to respond to these motions by objection or stipulation, as

determined to be in the best interest of the Debtors' estates.

20.    Thus, because of the size and complexity of the Chapter 11 Cases, K&E has

dedicated extraordinary efforts during the First Interim Fee Period to resolve difficult issues that

---

[4]    See Notice of Filing of Status Chart of Responses to the Debtors' Joint Plan of Reorganization Pursuant to
Chapter 11 of the United States Bankruptcy Code [Docket No. 646].

are unique to the Debtors and these Chapter 11 Cases and which required significant expertise to resolve.

## **Retention of Kirkland & Ellis LLP**

21.    Pursuant to an order of this Court, dated April 15, 2009 [Docket No. 184] (the "Retention Order"), Charter was authorized to retain K&E as its attorneys to render legal services during the Chapter 11 Cases.  A copy of the Retention Order is attached hereto as **Exhibit B**.  The Retention Order authorizes Charter to compensate K&E at K&E's hourly rates charged for its services and to reimburse K&E for K&E's actual and necessary out-of-pocket expenses incurred, subject to application to this Court in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines.

## **Compensation Requested**

22.    K&E seeks allowance of compensation for professional services rendered to Charter during the First Interim Fee Period in the aggregate amount of $8,440,669.00 and for reimbursement of actual expenses incurred in connection with such services in the aggregate amount of $493,093.58, for a total request of $8,933,762.58 (the "Total Interim Compensation Amount").  Pursuant to the Interim Compensation Order, K&E already has received a total of $6,752,535.20 for legal services provided to Charter during the First Interim Fee Period and $493,093.58 for expenses incurred in connection therewith.  These amounts represent approximately 80% of K&E's legal fees and 100% of K&E's out-of-pocket expenses incurred during the First Interim Fee Period.[5]

---

[5]    Pursuant to the Interim Compensation Order, the Debtors are authorized to pay each retained professional, unless the Court orders otherwise, an amount equal to (i) 80% of the undisputed professional fees and (ii) 100% of the undisputed expenses incurred by the retained professional and identified in monthly statement to which no objection has been served.

**Time and Expense Records**

23.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a schedule of the total amount of fees and expenses incurred under each K&E internal matter number during the First Interim Fee Period.

24.    The fees sought in this First Interim Fee Application reflect an aggregate of 18,546.6 hours of attorney and paraprofessional time spent and recorded in performing services for Charter and its estates during the First Interim Fee Period at a blended average hourly rate of $455.11 for both attorneys and paraprofessionals.  The blended hourly rate for attorneys only is $524.26.

25.    K&E maintains computerized records of the time expended in the performance of the professional services required by Charter and its estates.  These records are maintained in the ordinary course of K&E's practice.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a billing summary for the First Interim Fee Period, setting forth the name of each attorney and paraprofessional for whose work on the Chapter 11 Cases compensation is sought, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at K&E's current billing rates and an indication of the individual amounts requested as part of the Total Interim Compensation Amount requested.

26.    The hourly rates and corresponding rate structure utilized by K&E in the Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure predominantly used by K&E for restructuring, workout, bankruptcy, insolvency and comparable matters and similar complex corporate, securities and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect

that K&E's matters are typically national in scope and typically involve great complexity, high stakes and severe time pressures.

27.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

28.     K&E regularly reviews its bills to ensure that Charter is only billed for services that were actual and necessary.  Moreover, in accordance with the Guidelines, K&E regularly reduces its expenses, particularly expenses related to travel and overtime meals.

29.     K&E also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought by project category is attached hereto as **Exhibit E**. Copies of these computerized records in the format specified by the Guidelines will be furnished to the Court and to the U.S. Trustee.

30.     There is no agreement or understanding between K&E and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

### Summary of Services Performed

31.     To provide a meaningful summary of K&E's services rendered on behalf of Charter and its estates, K&E has established, in accordance with the Guidelines and its internal billing procedures, the following separate matter numbers (the "Subject Matters") in connection with the Chapter 11 Cases:

12

| Matter Number | Matter Name |
|---|---|
| 3 | Adversary Proceedings and Contested Matters. |
| 4 | Asset Analysis and Recovery/Avoidance Actions |
| 5 | Asset Disposition |
| 6 | Automatic Stay Issues/Relief from Stay |
| 7 | Business Operations |
| 8 | Case Administration |
| 9 | Claims Administration and Objections |
| 10 | Corporate Governance/Securities Law Compliance |
| 11 | Creditor Committees |
| 12 | DIP Financing/Cash Collateral/Cash Management |
| 13 | Employee Issues |
| 14 | Environmental Issues |
| 15 | Executory Contracts and Unexpired Leases |
| 16 | Fee/Employment Applications/Objections K&E |
| 17 | Fee/Employment Applications/Objections-Others |
| 18 | Hearings |
| 19 | Insurance |
| 20 | Plan and Disclosure Statement |
| 21 | Plan Exclusivity |
| 22 | Schedules and SOFAs |
| 23 | Secured Creditor/Collateral issues |
| 24 | Shareholder/Equity Committee Issues |
| 25 | Tax Issues |
| 26 | Travel Time |
| 27 | Utilities |

32.     During the First Interim Fee Period, K&E provided significant professional services to Charter in connection with the Chapter 11 Cases.   These services were often performed under severe time constraints and were necessary to administer a multitude of critical issues both unique to these Chapter 11 Cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

33.     The following is a summary, by Subject Matter, of the most significant professional services rendered by K&E during the First Interim Fee Period.  This summary is organized in accordance with K&E's internal system of matter numbers.   Additionally, the computerized time records for the First Interim Fee Period were provided to the Court and the U.S. Trustee.  The detailed descriptions demonstrate K&E was heavily involved in performing

13

services for Charter on a daily basis, often including night and weekend work, to meet the needs

of the Debtors' estates in the Chapter 11 Cases.

      a.       **Adversary Proceedings and Contested Matters (Matter 3)**

(Fees:  $5,492,836.00; Hours:  12,575.3)

This Subject Matter contains the time K&E spent in connection with its representation of

the Debtors in adversary proceedings and other contested matters.  During the First Interim Fee

Period, K&E attorneys and paraprofessionals expended a great deal of time on complex tasks in

connection with the Reinstatement Litigation, including:

- conducting due diligence on the Debtors' and their restructuring efforts;

- reviewing and responding to opposition pleadings filed by the Debtors' secured lenders agents, including JPMorgan, Wells Fargo Bank, N.A., and Wilmington Trust Company, and unsecured creditors such as the CCI Noteholders;

- reviewing, preparing, and responding to discovery requests from parties in interest;

- preparing expert reports;

- interviewing relevant parties;

- performing legal research on debt reinstatement issues, class action matters in bankruptcy, and other confirmation-related issues;

- deposing over 50 individuals;

- drafting and revising pleadings and memorandum in support of reinstatement and confirmation;

- organizing and maintaining the voluminous files of documents related to the Reinstatement Litigation;

- conducting routine status update conferences;

- preparing for hearings;

- preparing for the Confirmation Hearings;

- preparing trial exhibits; and

14

- responding to counterparty and creditor inquiries.

### b.    Asset Disposition (Matter 5)

(Fees: $11,028.00; Hours:  28.8)

This Subject Matter includes time spent on a variety of tasks related to the disposition of certain minor Charter assets, including:

- drafting the de minimis asset sale procedures motion to facilitate minor asset sales [Docket No. 27];

- corresponding with the Debtors and sale counterparties regarding inquiries and sale procedures; and

- reviewing asset sale terms and documentation for compliance with appropriate bankruptcy procedures.

### c.    Automatic Stay Issues/Relief from Stay (Matter 6)

(Fees: $82,962.50; Hours:  193.4)

This Subject Matter describes work that K&E attorneys performed during the First Interim Fee Period resulting from the imposition of the automatic stay on the Petition Date.  In particular, K&E attorneys and paraprofessionals spent considerable time:

- responding to various requests by parties in interest to lift the automatic stay;

- performing legal research on the impact of the automatic stay on certain convertible securities;

- reviewing the automatic stay's impact on certain state court litigation;

- drafting objections successfully responding to motions requesting relief from the automatic stay [e.g., Docket Nos. 266, 322, and 460]; and

- reviewing issues and responding to actions taken by certain parties in violation of the automatic stay.

The automatic stay typically is a novel concept for the debtors and other parties in interest.  As such, it is extremely important for debtors' attorneys to ensure that all parties are aware of the imposition and effects of the automatic stay, as well as the implications of violating

15

the automatic stay. K&E therefore spent time drafting correspondence to many parties regarding compliance with the automatic stay and advising Charter of the automatic stay's applicability to various litigation pending in jurisdictions outside of this Court.

### d. Business Operations (Matter 7)

(Fees: $114,232.50; Hours: 205.7)

Following the Petition Date, K&E attorneys worked closely with Charter's management to provide advice and assist management implement procedures with respect to its business operations to ensure compliance with provisions of the Bankruptcy Code and orders of the Bankruptcy Court. Accordingly, this Subject Matter involved time spent:

- advising Charter on vendor and customer issues;

- strategizing with Charter's management team and professionals regarding priorities and processes to ensure uninterrupted operations;

- performing factual and legal research on certain lease issues;

- coordinating, reviewing, and responding to regulatory inquiries;

- reviewing and assisting Charter and its advisors in the preparation of monthly operating reports; and

- collaborating with and advising Charter's senior management team and Charter's financial advisors with respect to various restructuring strategies and initiatives relating to Charter's business operations in chapter 11.

### e. Case Administration (Matter 8)

(Fees: $278,568.00; Hours: 827.6)

The Debtors expended a significant amount of time on a variety of administrative tasks necessary to ensure the efficient and smooth administration of the Chapter 11 Cases, including:

- establishing procedures for case administration and monitoring the case docket;

- managing and administering the Chapter 11 Cases on a daily basis;

- reviewing certain settlement terms;

16

- tracking critical dates and maintaining work in progress reports;

- conducting routine status update conferences;

- coordinating the staffing of matters among K&E attorneys and paraprofessionals and Charter's other retained professionals;

- organizing and maintaining the voluminous files of documents related to the Chapter 11 Cases;

- complying with the service and notice requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including coordinating service of pleadings and other related notices with Kurtzman Carson Consultants ("KCC"), the notice and claims agent retained in the Chapter 11 Cases;

- complying with all other applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders or procedures issued by the Court; and

- corresponding with various parties in interest and KCC with respect to notice issues.

**f.      Claims Administration and Objections (Matter 9)**

(Fees:  $9,185.00; Hours:  23.6)

This Subject Matter includes time K&E attorneys and paraprofessionals spent on matters related to claims administration and claims objections.  This Subject Matter mainly involved time spent responding to claimholder inquiries and drafting a motion authorizing the Debtors to enter into settlements with certain claims and causes of action [Docket No. 405].

**g.      Corporate Governance/Securities Law Compliance (Matter 10)**

(Fees:  $130,413.00; Hours:  230.3)

This Subject Matter includes services performed by K&E attorneys and paraprofessionals in connection with Charter's compliance with its various corporate and securities law obligations.  During the First Interim Fee Period, this Subject Matter included time spent:

- counseling Charter's directors and officers regarding fiduciary responsibilities in connection with operating as debtors in possession;

17

- conferring with Charter's officers with respect to meetings and communications with the board of directors;

- preparing for and attending board meetings both in-person and telephonically;

- assisting Charter in preparing Securities and Exchange Commission filings and other disclosures; and

- preparing corporate documents, such as the amended and restated certificate of incorporation [Docket Nos. 37 and 632], related to the Debtors' restructuring efforts.

### h.    Creditor Committees (Matter 11)

(Fees: $42,888.50; Hours: 61.1)

This subject matter includes legal services related to the official committee of unsecured creditors (the "Committee"), including, without limitation, preparing for the initial creditor committee meeting pursuant to section 341 of the Bankruptcy Code, and reviewing and corresponding to the Committee's due diligence requests.

### i.    DIP Financing/Cash Collateral/Cash Management (Matter 12)

(Fees: $122,158.50; Hours: 254.2)

Both prior to and after the filing of the Chapter 11 Cases, K&E attorneys advised Charter and assisted with complex negotiations, analysis and discussions related to the use of Charter's secured lenders' cash collateral.  This Subject Matter included time spent:

- reviewing the Debtors' credit agreements;

- drafting, revising, and filing cash collateral pleadings;

- resolving cash collateral issues;

- obtaining approval for the Debtors' use of cash collateral;

- resolving surety bond and letter of credit issues;

- reviewing UCC financing records; and

18

- obtaining authority to use cash collateral of the Debtors' secured creditors to permit, among other things, the orderly continuation of the operation of the Debtors' businesses and to satisfy their working capital and operational needs [Docket Nos. 69 and 193].

**j.**   **Employee Issues (Matter 13)**

(Fees: $26,711.50; Hours: 54)

This Subject Matter included services performed by K&E attorneys and paraprofessionals related to employment issues.  From the outset of the Chapter 11 Cases, K&E attorneys have spent time advising Charter with respect to various matters related to their obligations to employees and Charter's retirement and pension plans.  This Subject Matter includes time spent:

- obtaining authority from the Court to allow the Debtors to pay certain prepetition wages and employee benefits [Docket Nos. 70 and 185].

- reviewing certain of Charter's retirement and savings plans;

- reviewing Charter's executive compensation issues;

- drafting and reviewing compensation related pleadings and documents; and

- reviewing Charter management employment agreements.

**k.**   **Environmental Issues (Matter 14)**

(Fees: $2,499.50; Hours:  4.7)

This Subject Matter reflects time spent by K&E attorneys and paraprofessionals regarding environmental liabilities and compliance.  In connection with these efforts, this subject matter included time spent coordinating the Debtors' self-audit in connection with the U.S. Environmental Protection Agency.

**l.**   **Executory Contracts and Unexpired Leases (Matter 15)**

(Fees: $92,080.00; Hours:  253.2)

This subject matter includes legal services rendered to examine issues related to the Debtors' executory contracts.  In connection with their restructuring initiatives, Charter and its

advisors are working to review and analyze all of Charter's contractual obligations to identify contracts and leases that are either profitable or burdensome to Charter's estates and that may be assumed or rejected pursuant to section 365 of the Bankruptcy Code.  In connection with these efforts, this Subject Matter included time spent:

- reviewing, researching, and drafting memorandum regarding programming contracts in order to assess assumption or rejection benefits;

- reviewing lease contracts;

- obtaining relief from the Court to reject certain executory contracts [Docket No. 186];

- analyzing cure requirements for unexpired leases and executory contracts to be assumed by the Debtors;

- reviewing potential damage claims from rejected executory contracts and leases;

- drafting and circulating cure and assumption related notices;

- drafting a motion to extend time to assume or reject leases pursuant to section 365(d)(4) of the Bankruptcy Code; and

- fielding inquiries from contract counterparties regarding assumption and/or rejection.

**m.**     **Fee/Employment Applications/Objections K&E (Matter 16)**

(Fees:  $94,028.50; Hours:  239.9)

This Subject Matter includes services performed by K&E attorneys and paraprofessionals during the First Interim Fee Period preparing K&E's monthly fee statements, drafting supplemental affidavits in support of K&E's retention and performing conflicts searches related to K&E's retention, in accordance with the procedures and standards of the Bankruptcy Code, the Bankruptcy Rules and the Guidelines.

### n.    Fee/Employment Applications/Objections-Others (Matter 17)

(Fees: $127,376.50; Hours: 310.6)

This Subject Matter included services performed by K&E in connection with the retention of and fees paid to the various professionals in the Chapter 11 Cases.  During the First Interim Fee Period, K&E attorneys spent time:

- assisting Charter in retaining professionals including:  Togut, Segal & Segal LLP [Docket No. 182]; Hogan & Hartson LLP [Docket No. 403]; Curtis, Mallet-Prevost, Cost, & Mosle LLP [Docket No. 180]; Friend Hudak, & Harris LLP [Docket No. 178]; Ernst & Young LLP [Docket No. 435]; AlixPartners, LLP [Docket No. 181]; Kurtzman Carlson Consultants LLC [Docket No. 72]; Duff & Phelps LLC [Docket No. 177]; Lazard Freres & Co. LLC [Docket No. 183]; Financial Balloting Group LLC [Docket No. 175]; Sherman & Howard LLC [Docket No. 404]; and KPMG LLP [Docket No. 402].

- advising Charter with respect to the order authorizing Charter to pay certain professionals in the ordinary course of business [Docket. No. 173] (the OCP Order"); and

- working closely with Charter to implement the protocols related to the OCP Order and spending significant time working with certain ordinary course professionals to ensure their compliance with the terms of the OCP Order.

### o.    Hearings (Matter 18)

(Fees: $311,752.50; Hours:  651.8)

This Subject Matter includes time spent by K&E attorneys and paraprofessionals preparing for and attending various hearings in connection with the Debtors and related proceedings during the First Interim Fee Period.  As part of any large case, there are often multiple matters scheduled for each hearing which require the expertise of a number of K&E attorneys.  K&E is cognizant of this fact and uses its best efforts to minimize the number of attorneys present at each hearing.  During the First Interim Fee Period, K&E attorneys prepared for and attended several omnibus hearings, the Disclosure Statement hearing, and other hearings as needed.  In addition to K&E attorneys' preparation of witnesses, motions and related

documents, K&E paraprofessionals also spent considerable time preparing documents and agendas for hearings that occurred during the First Interim Fee Period.

      **p.**    **Plan and Disclosure Statement (Matter 20)**

(Fees: $1,005,671.50; Hours: 1,743.2)

This subject matter includes legal services rendered in connection with preparation and revision of the Plan, the Plan Supplement, and the Plan Support Agreements in support of the confirmation process. During the First Interim Fee Period, K&E attorneys spent time:

- revising and filing an updated Disclosure Statement [Docket Nos. 275 & 319];

- reviewing and revising the Disclosure Statement exhibits [Docket No. 392];

- fielding inquiries and responding to numerous parties in interest regarding the Disclosure Statement and the Plan;

- working closely with Charter to update the Disclosure Statement, the Plan, and Plan Supplement;

- reviewing and responding to objections to the Disclosure Statement and the Plan;

- drafting and filing a response to objections to the Disclosure Statement [Docket No. 274];

- negotiating with parties in interest regarding potential settlements;

- obtaining Bankruptcy Court approval of the Disclosure Statement [Docket No. 323];

- reviewing and publishing notices regarding the Disclosure Statement and confirmation process;

- coordinating efforts with K&E litigation attorneys regarding the Reinstatement Litigation;

- preparing for the Confirmation Hearings;

- reviewing the Plan and Plan Supplement; and

- preparing for the plan confirmation voting process.

**q.**    **Plan Exclusivity (Matter 21)**

(Fees: $7,948.50; Hours: 25.9)

This Subject Matter reflects the services K&E attorneys and paraprofessionals provided in connection with Charter's plan exclusivity period. This Subject Matter includes time spent researching, drafting, reviewing, and revising a motion to extend the Debtors' exclusive filing period and exclusive solicitation period by 120 days, to November 22, 2009 and January 21, 2010, respectively.

**r.**    **Schedules and SOFAs (Matter 22)**

(Fees: $50,866.50; Hours: 133.5)

Due to the number of Debtors in the Chapter 11 Cases and Charter's complex business operations, the task of preparing schedules and statements of financial affairs for the Chapter 11 Cases was burdensome. This Subject Matter, therefore, includes time spent by K&E attorneys and paraprofessionals advising Charter and its professionals in connection with the preparation and filing of Charter's schedules, statements of financial affairs for each of the 131 Debtors, and assembling other information necessary for completion and filing of its schedules and statements of financial affairs on April 10, 2009.

**s.**    **Secured Creditor/Collateral issues (Matter 23)**

(Fees: $3,111.00; Hours: 6.2)

This Subject Matter includes time spent by K&E attorneys and paraprofessionals reviewing surety bonds, objections by secured creditors to the Disclosure Statement, and certain cash collateral issues.

**t.**    **Shareholder/ Equity Committee Issues (Matter 24)**

(Fees: $63,269.50; Hours: 114.7)

23

This subject matter includes legal services rendered in connection with requests to appoint an equity committee. This Subject Matter includes time spent by K&E attorneys and paraprofessionals:

- reviewing requests for appointment of an equity committee;

- researching, drafting, reviewing, and revising responses to parties requesting the appointment of an equity committee [Docket No. 486];

- corresponding with parties in interest and the U.S. Trustee regarding the appointment of an equity committee;

- preparing for a hearing on the appointment of an equity committee; and

- obtaining relief from the Court denying the request for an equity committee [Docket No. 499].

**u.**    **Tax Issues (Matter 25)**

(Fees: $199,297.00; Hours: 266.7)

This subject matter includes legal services rendered in connection with tax issues. This Subject Matter includes time spent by K&E attorneys and paraprofessionals:

- performing research on local, state, and federal tax issues;

- reviewing and responding to taxing authority inquiries and issues;

- reviewing tax disclosures in the Disclosure Statement and Plan;

- drafting, reviewing, and circulating net operating loss pleadings, notices and memorandum;

- reviewing and analyzing the Plan's tax consequences; and

- coordinating and attending conference calls with the Debtors and their advisors to analyze tax issues.

**v.**    **Travel Time (Matter 26)**

(Fees: $108,509.50; Hours: 196.5)

This Subject Matter includes time spent by K&E traveling while representing Charter. As disclosed in K&E's retention application, and consistent with the Guidelines, K&E bills Charter for one-half the total time that K&E professionals spend for non-working travel.

**w.     Utilities (Matter 27)**

(Fees:  $62,800.50; Hours:  144.4)

This Subject Matter includes time spent by K&E attorneys and paraprofessionals addressing utility issues in connection with the Chapter 11 Cases during the First Interim Fee Period.  During the First Interim Fee Period, K&E attorneys and paraprofessionals spent time:

- reviewing and responding to utility providers' adequate assurance requests;

- negotiating with utility providers;

- reviewing and responding to utility provider objections to the Debtors' utility motion [Docket No. 24]; and

- reviewing and revising interim and final utility orders [Docket No. 196 & 406]

**Reasonable and Necessary Services Rendered by K&E**

34.     The foregoing professional services rendered by K&E on behalf of Charter during the First Interim Fee Period were reasonable, necessary and appropriate to the administration of the Chapter 11 Cases and related matters.

35.     Many of the services performed by partners and associates of K&E were rendered by K&E's Restructuring Group.  K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with over 100 attorneys focusing on this area of law.  The attorneys at K&E have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

36.     In addition, due to the facts and circumstances of the Chapter 11 Cases, attorneys from K&E's litigation, corporate and tax groups were heavily involved with K&E's representation of Charter.   These practice groups also enjoy a national and international reputation for their expertise.   Overall, K&E brings to the Chapter 11 Cases a particularly high level of skill and knowledge, which inured to the benefit of Charter and all stakeholders.

37.     During the First Interim Fee Period, K&E advised and assisted Charter in every phase of the Chapter 11 Cases.   To this end, as set forth in detail in **Exhibit D** of this First Interim Fee Application, numerous K&E partners, counsel, associates and paraprofessionals from various K&E practice groups expended time rendering professional services on behalf of Charter and its estates.   As discussed more fully above, the vast majority of the legal services provided to Charter and its estates by K&E are attributable to the work performed by attorneys in the restructuring, litigation, and corporate practice groups.

38.     During the First Interim Fee Period, K&E's hourly billing rates for the attorneys primarily responsible for managing the Chapter 11 Cases ranged from $320 to $965.   Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $524.26 (based on 14,664 recorded attorney hours at K&E's regular billing rates in effect at the time of the performance of services).   The hourly rates and corresponding rate structure utilized by K&E in the Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure predominantly used by K&E for restructuring, workout, bankruptcy, insolvency and comparable matters, and similar complex corporate, securities, tax and litigation matters whether in court or otherwise, regardless of whether a fee application is required.   These rates and rate structure reflect that such particular matters are

typically national in scope and typically involve great complexity and extremely high stakes for clients.

## Actual and Necessary Expenses Incurred by K&E

39.     As set forth in **Exhibit E** attached hereto, K&E has incurred a total of $493,093.58 in expenses on behalf of Charter in providing professional services during the First Interim Fee Period.   K&E states as follows regarding these expenses:   K&E charges between $0.10 and $0.15 per page for internal copying or printing charges; K&E charges for external copying charges at the provider's cost without markup; and K&E charges for computer research at the provider's cost without markup.   The basis for these rates is K&E's calculation of the actual cost of these services.   Each of these categories of expenses does not exceed and, in some instances, is well below the maximum rate set by the Guidelines.   These charges are intended to cover K&E's direct operating costs, which costs are not incorporated into the K&E hourly billing rates.   Only clients who actually use services of the types set forth in **Exhibit E** of this First Interim Fee Application are separately charged for such services.   The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

40.     The time constraints imposed by the circumstances of the Chapter 11 Cases required K&E attorneys and other employees to devote time during the evenings and on weekends to perform legal services on behalf of Charter.   These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis from various creditors and other stakeholders and to satisfy the demands of Charter's businesses and ensure the orderly administration of its estates.   Consistent with firm policy, as further disclosed in the K&E retention application, attorneys and other K&E employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.   K&E's regular

practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of providing legal services. The reimbursement amounts do not exceed those set forth in the Guidelines.

41.     In addition, due to the location of Charter's businesses, creditors and stakeholders in relation to K&E's offices, frequent multi-party telephone conferences were required, necessitating the use of telephone conferencing systems. On many occasions, overnight delivery of documents and other materials was required as a result of the exigencies and circumstances of these cases. The disbursements for such services are not included in K&E's overhead for the purpose of setting billing rates and K&E has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of Charter in the Chapter 11 Cases.

### K&E Requests that Its Compensation and Reimbursement be Allowed

42.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered … and reimbursement for actual, necessary expenses." Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including --
>
> (A)     the time spent on such services;

28

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

43.    In the instant case, K&E respectfully submits that the services for which it seeks compensation in this First Interim Fee Application were necessary for and beneficial to Charter and its estates and were rendered to protect and enhance Charter's estates.  K&E respectfully submits that the services rendered to Charter were performed economically, effectively and efficiently and that the results obtained to date have benefited not only Charter but all stakeholders in the Chapter 11 Cases.  K&E further submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to Charter, its estates and all parties in interest.

44.    K&E attorneys and paraprofessionals spent a total of 18,546.6 hours during the First Interim Fee Period.  As demonstrated by this First Interim Fee Application and all of the exhibits submitted in support hereof, K&E spent its time economically and without unnecessary duplication.  In addition, the work conducted was carefully assigned to appropriate attorneys or paraprofessionals according to the experience and level of expertise required for each particular task.

45.     In sum, the services rendered by K&E were necessary and beneficial to Charter and its estates, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty and nature of the issues involved.  Accordingly, the Debtors respectfully submit that approval of the compensation sought herein is warranted.

## **Motion Practice**

46.     This First Interim Fee Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this First Interim Fee Application.  Accordingly, K&E submits that this First Interim Fee Application satisfies Rule 9013-1(a) of the Local Rules.

## **Notice**

47.     Pursuant to the Interim Compensation Order, notice of the hearing on this First Interim Fee Application will be provided to:  (a) the Core Group;[6] and (b) the Bankruptcy Rule 2002 notice parties.  In light of the nature of the relief requested, K&E respectfully submits that no further notice is necessary.

WHEREFORE, K&E respectfully requests entry of an order (a) allowing and awarding compensation for professional services rendered during the First Interim Fee Period in the amount of $8,440,669.00 and reimbursement of all actual and necessary expenses incurred by

---

[6]     The "Core Group," as defined in the Debtor's Case Management Order [Docket No. 73], shall include:  (a) the Debtors and their counsel; (b) the U.S. Trustee; (c) counsel to the agent under the Debtors' prepetition first lien credit facility; (d) counsel to the agent under the Debtors' prepetition second lien credit facility; (e) the counterparties to those certain interest rate swap agreements with CCO; (f) counsel to the unofficial committee of unaffiliated holders of those certain CCH I, LLC and CCH II, LLC notes issuances; (g) counsel to the unofficial committee of unaffiliated holders of those certain CCH II note issuances; (h) the indenture trustees for those indentures to which a Debtor is a party; (i) counsel to Vulcan Inc.; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the Federal Communications Commission; (m) the Office of the Attorney General in all of the states in which the Debtors operate; (n) any applicable state public utilities commissions required to receive notice under the Bankruptcy Rules or Local Rules; and (p) counsel to any official committees appointed by the Office of the U.S. Trustee or those creditors listed on the Debtors' consolidated list of creditors holding the 80 largest unsecured claims until an official committee is appointed.

K&E during the First Interim Fee Period in the amount of $493,093.58, without prejudice to

K&E's right to seek additional compensation for services performed and expenses incurred

during the First Interim Fee Period; and (b) granting such other and further relief as is just and

proper.

New York, New York
Dated:  August 24, 2009

/s/ *Ray C. Schrock*
_____

Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

Counsel to the Debtors
and Debtors in Possession
Other than Charter Investment, Inc.

**Exhibit List**

| | |
|---|---|
| **Exhibit A** | **Certification** |
| **Exhibit B** | **Retention Order** |
| **Exhibit C** | **Fee and Expense Summary for First Interim Fee Period** |
| **Exhibit D** | **Billing Summary for First Interim Fee Period** |
| **Exhibit E** | **Expense Summary for First Interim Fee Period** |
| **Exhibit F** | **Billing Detail for First Interim Fee Period** |

**<u>Exhibit A</u>**

**Certification**

Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

   - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

Counsel to the Debtors and Debtors in Possession
(Other than Charter Investment, Inc.)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | )    Case No. 09-11435 (JMP) |
| | ) |
| | ) |
| Debtors. | )    Jointly Administered |
| | ) |

**<u>CERTIFICATION OF RAY C. SCHROCK</u>**

I, Ray C. Schrock, certify as follows:

1.      I am a partner in the law firm of Kirkland & Ellis LLP ("<u>K&E</u>").  I submit this

certification with respect to the First Interim Fee Application of K&E as counsel to the debtors

and debtors in possession in the above-captioned cases for allowance of compensation for

professional services rendered and for reimbursement of actual and necessary expenses incurred during this First Interim Fee Period.[2]

2.      I make this certification in accordance with General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

3.      In connection therewith, I hereby certify that:

(a)      I have read the First Interim Fee Application.

(b)      To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the First Interim Fee Application fall within the Local Guidelines and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), except as specifically noted herein.

(c)      Except to the extent that fees or disbursements are prohibited by the Local Guidelines or the UST Guidelines, the fees and disbursements sought in the First Interim Fee Application are billed at rates customarily employed by K&E and generally accepted by K&E's clients.

(d)      In providing a reimbursable service, K&E does not make a profit on that service, whether the service is performed by K&E in-house or through a third party; and

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the First Interim Fee Application.

(e)     Pursuant to the Local Guidelines, the Debtors, the United States Trustee and the Creditors' Committee will each be provided with a copy of the First Interim Fee Application simultaneously with the filing thereof, and will have at least 10 days to review such First Interim Fee Application prior to any objection deadline with respect thereto.

Dated: August 24, 2009
        New York, New York

/s/ *Ray C. Schrock*
Ray C. Schrock

**<u>Exhibit B</u>**

**Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CHARTER COMMUNICATIONS, INC., et al., | Case No. 09-11435 (JMP) |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KIRKLAND &
ELLIS LLP AS ATTORNEYS FOR THE DEBTORS EFFECTIVE <u>NUNC</u> <u>PRO</u> <u>TUNC</u>
TO THE PETITION DATE**

Upon the application (the "<u>Application</u>")[1] of the above captioned debtors (collectively,

the "<u>Debtors</u>")[2] for the entry of an order authorizing the Debtors to employ and retain Kirkland

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[2]  The Debtors in these cases include:  Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.;  CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-



0911435090415000000000026

& Ellis LLP ("K&E") as their attorneys effective nunc pro tunc to the Petition Date, pursuant to

sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local

Rules 2014-1 and 2016-1; and the Court having jurisdiction to consider the Application and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the

Court having reviewed the Application, the Cieri Declaration, and the First Day Declaration; the

Court being satisfied based on the representations made in the Cieri Application and the First

Day Declaration that (a) K&E does not hold or represent an interest adverse to the Debtors'

estates and (b) K&E is a "disinterested person" as defined in section 101(14) of the Bankruptcy

Code and as required by section 327(a) of the Bankruptcy Code; it appearing to the Court that

the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties

in interest; and good, adequate, and sufficient cause has been shown to justify the immediate

entry of this order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that:

    1.    The Application is granted as set forth herein in its entirety.

---

CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

2

2.      The Debtors are authorized to employ and retain K&E as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter annexed as **Exhibit 1** to **Exhibit A** to the Application (the "Engagement Letter"), effective nunc pro tunc to the Petition Date.

3.      K&E is authorized to render professional services to the Debtors as described in the Engagement Letter. K&E will render the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their business and properties;

b.      advising and consulting on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      advising and consulting on the conduct of the Chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

d.      attending meetings and negotiating with representatives of the creditors and other parties in interest;

e.      taking all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning all litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

f.      preparing all pleadings, including motions, applications, answers, orders, reports and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

g.      representing the Debtors in connection with obtaining postpetition financing;

h.      advising the Debtors in connection with any potential sale of assets;

i.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts;

j.      consulting with the Debtors regarding tax matters;

k.      taking any necessary action on behalf of the Debtors to negotiate, prepare on behalf of the Debtors and obtain approval of a chapter 11 plan and all documents related thereto; and

3

1.    performing all other necessary or otherwise beneficial legal services for the Debtors in connection with the prosecution of these Chapter 11 Cases, including (i) analyzing the Debtors' leases and contracts and the assumptions, rejections or assignments thereof, (ii) analyzing the validity of liens against the Debtors and (iii) advising the Debtors on corporate and litigation matters.

4.    K&E shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the U.S. Trustee, and any other applicable procedures and orders of the Court.

5.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

6.    Notwithstanding the possible applicability of Rules 6004(h), 7062, 9014 of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York                    *s/ James M. Peck*
Date:  April 15, 2009                  United States Bankruptcy Judge

4

**Exhibit C**

**Fee and Expense Summary**

**Summary of the Total Amount of Fees and Expenses
Incurred Under Each Internal K&E Matter for the
Period from March 27, 2009 through June 30, 2009**

| Matter # | Matter Description | Hours | Fees | Expenses | Totals |
|---|---|---|---|---|---|
| 3 | Adversary Proceedings & Contested Matter | 12,575.30 | 5,492,836.00 | 364,709.55 | 5,857,545.55 |
| 5 | Asset Disposition | 28.80 | 11,028.00 | 929.90 | 11,957.90 |
| 6 | Automatic Stay Issues, Relief from Stay | 193.40 | 82,962.50 | 64.46 | 83,026.96 |
| 7 | Business Operations | 205.70 | 114,232.50 | 882.28 | 115,114.78 |
| 8 | Case Administration | 827.60 | 278,568.00 | 26,673.93 | 305,241.93 |
| 9 | Claims Administration & Objections | 23.60 | 9,185.00 | 403.33 | 9,588.33 |
| 10 | Corporate Governance, Securities Law | 230.30 | 130,413.00 | 692.70 | 131,105.70 |
| 11 | Creditor Committees | 61.10 | 42,888.50 | 42.56 | 42,931.06 |
| 12 | DIP Financing, Cash Collateral, Cash Mgm | 254.20 | 122,158.50 | 23,762.22 | 145,920.72 |
| 13 | Employee Issues | 54.00 | 26,711.50 | 200.25 | 26,911.75 |
| 14 | Environmental Issues | 4.70 | 2,499.50 | 0.00 | 2,499.50 |
| 15 | Executory Contracts & Unexpired Leases | 253.20 | 92,080.00 | 1,448.94 | 93,528.94 |
| 16 | Fee, Employment Appl & Obj-K&E | 239.90 | 94,028.50 | 693.72 | 94,722.22 |
| 17 | Fee, Employment Appl & Obj-Others | 310.60 | 127,376.50 | 198.06 | 127,574.56 |
| 18 | Hearings | 651.80 | 311,752.50 | 21,146.39 | 332,898.89 |
| 19 | Insurance | 1.30 | 474.50 | 0.00 | 474.50 |
| 20 | Plan & Disclosure Statement | 1,743.20 | 1,005,671.50 | 31,657.15 | 1,037,328.65 |
| 21 | Plan Exclusivity | 25.90 | 7,948.50 | 64.57 | 8,013.07 |
| 22 | Schedules & SOFAs | 133.50 | 50,866.50 | 389.93 | 51,256.43 |
| 23 | Secured Creditor, Collateral Issues | 6.20 | 3,111.00 | 0.00 | 3,111.00 |
| 24 | Shareholder, Equity Committee Issues | 114.70 | 63,269.50 | 60.49 | 63,329.99 |
| 25 | Tax Issues | 266.70 | 199,297.00 | 2,568.77 | 201,865.77 |
| 26 | Travel Time | 196.50 | 108,509.50 | 16,472.53 | 124,982.03 |
| 27 | Utilities | 144.40 | 62,800.50 | 31.85 | 62,832.35 |
| **GRAND TOTAL** | | **18,546.60** | **$8,440,669.00** | **$493,093.58** | **$8,933,762.58** |

**Exhibit D**

**Billing Summary**

**Summary of Hours Billed by Attorneys and Paraprofessionals for the
Period from March 27, 2009 through June 30, 2009**

| Attorney Name | Position | Admitted | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Dennis J Abdelnour | Associate | 2007 | IP | 380.00 | 22.10 | 8,398.00 |
| Laura M Alexander | Associate | 2008 | Litigation | 375.00 | 457.90 | 171,712.50 |
| Paul Basta | Partner | 1992 | Restructuring | 895.00 | 251.10 | 224,734.50 |
| Elizabeth Bing | Associate | 2007 | Litigation | 375.00 | 159.70 | 59,887.50 |
| Jonathan D Brightbill | Partner | 2002 | Litigation | 570.00 | 569.80 | 324,786.00 |
| Louis J Capocasale | Associate | 2007 | Corporate | 470.00 | 26.10 | 12,267.00 |
| Leo S Carameli, Jr. | Associate | 2004 | Corporate | 470.00 | 70.40 | 33,088.00 |
| Cindy Chen | Associate | 2004 | Restructuring | 565.00 | 494.90 | 279,618.50 |
| Richard M Cieri | Partner | 1981 | Restructuring | 965.00 | 352.90 | 340,548.50 |
| Charles J Clark | Partner | 1989 | Litigation | 895.00 | 1.80 | 1,611.00 |
| Jennifer W Cowen | Associate | 2005 | Litigation | 465.00 | 84.90 | 39,478.50 |
| Daniel T Donovan | Partner | 1997 | Litigation | 635.00 | 780.50 | 495,617.50 |
| Patrick Dunn | Associate | 2007 | Corporate | 380.00 | 103.80 | 39,444.00 |
| Matthew Dysart | Associate | Pending | Restructuring | 365.00 | 17.20 | 6,278.00 |
| Sarah B Fabian | Associate | 2004 | Litigation | 465.00 | 51.20 | 23,808.00 |
| David B Farkas | Associate | 2008 | Litigation | 375.00 | 33.70 | 12,637.50 |
| Gregory W Gallagher, P.C. | Partner | 1997 | Taxation | 695.00 | 73.10 | 50,804.50 |
| Christine Gealy | Associate | 2008 | Litigation | 320.00 | 406.70 | 130,144.00 |
| Lauren E Geissler | Associate | 2006 | Litigation | 430.00 | 53.60 | 23,048.00 |
| Scott J Gordon | Partner | 1994 | Corporate | 800.00 | 2.90 | 2,320.00 |
| Douglas Gould | Associate | 2009 | Restructuring | 365.00 | 505.90 | 184,653.50 |
| Jeffrey M Gould | Associate | 2006 | Litigation | 430.00 | 571.80 | 245,874.00 |
| Richard C Harlan | Associate | 2004 | Litigation | 510.00 | 102.60 | 52,326.00 |
| Anne Hawkins | Associate | 2007 | Corporate | 415.00 | 3.00 | 1,245.00 |
| Stephen E Hessler | Partner | 2001 | Restructuring | 645.00 | 528.10 | 340,624.50 |
| Ye Hong | Associate | 2007 | Corporate | 470.00 | 52.00 | 24,440.00 |
| Vicki V Hood | Partner | 1977 | Employee Benefits | 875.00 | 0.20 | 175.00 |
| Joshua Hurwit | Associate | 2007 | Litigation | 430.00 | 391.10 | 168,173.00 |
| Ellen M Jakovic | Partner | 1985 | Litigation | 760.00 | 11.60 | 8,816.00 |
| Erin C Johnston | Associate | 2008 | Litigation | 375.00 | 446.20 | 167,325.00 |
| Daniel Jonathan | Associate | 2009 | Litigation | 320.00 | 17.00 | 5,440.00 |
| Christopher Keegan | Partner | 2002 | Litigation | 550.00 | 17.50 | 9,625.00 |
| Christopher A Kitchen | Associate | 2005 | Corporate | 565.00 | 95.10 | 53,731.50 |
| Howard Klein | Partner | 2001 | Taxation | 700.00 | 3.80 | 2,660.00 |
| Leonard Klingbaum | Partner | 2000 | Corporate | 685.00 | 21.30 | 14,590.50 |
| Amy L Koch | Associate | 2007 | Litigation | 375.00 | 202.00 | 75,750.00 |
| Joshua N Korff | Partner | 1994 | Corporate | 815.00 | 1.70 | 1,385.50 |
| Lauren E Kozak | Associate | 2008 | Litigation | 320.00 | 3.10 | 992.00 |
| Arun Kurichety | Associate | 2006 | Restructuring | 470.00 | 33.40 | 15,698.00 |
| Jeffrey G Landis | Associate | 2003 | Litigation | 535.00 | 624.50 | 334,107.50 |
| Tracy C Le | Associate | 2007 | Corporate | 380.00 | 43.20 | 16,416.00 |
| Paul Leaf | Associate | 2008 | Litigation | 320.00 | 83.60 | 26,752.00 |
| Joe Lin | Associate | 2006 | Corporate | 430.00 | 41.50 | 17,845.00 |
| Gregg F LoCascio, P.C. | Partner | 1995 | IP | 700.00 | 64.70 | 45,290.00 |

| Attorney Name | Position | Admitted | Department | Rate | Hours | Total |
|---|---|---|---|---|---|---|
| Maurice Loebl | Associate | 2006 | Corporate | 470.00 | 84.50 | 39,715.00 |
| Alejandro Maher | Associate | 2002 | Corporate | 610.00 | 93.80 | 57,218.00 |
| Jennifer Marines | Associate | 2005 | Restructuring | 520.00 | 157.90 | 82,108.00 |
| Todd F Maynes, P.C. | Partner | 1988 | Taxation | 955.00 | 135.10 | 129,020.50 |
| Mark E McKane | Partner | 1997 | Litigation | 635.00 | 508.50 | 322,897.50 |
| Derek Milosavljevic | Associate | 2008 | Litigation | 375.00 | 88.10 | 33,037.50 |
| Amanda L Morgan | Associate | 2006 | Litigation | 430.00 | 59.10 | 25,413.00 |
| Christian O Nagler | Partner | 1997 | Corporate | 725.00 | 148.20 | 107,445.00 |
| Casey M Nokes | Associate | 2005 | Litigation | 375.00 | 48.90 | 18,337.50 |
| Bridget K O'Connor | Associate | 2003 | Litigation | 535.00 | 696.90 | 372,841.50 |
| John C O'Quinn | Partner | 2001 | Litigation | 570.00 | 123.30 | 70,281.00 |
| Micah Osgood | Associate | 2008 | Litigation | 375.00 | 17.50 | 6,562.50 |
| Benjamin D Panter | Associate | 2006 | Taxation | 435.00 | 13.80 | 6,003.00 |
| Ashley C Parrish | Partner | 1998 | Litigation | 625.00 | 65.70 | 41,062.50 |
| Julie Peng | Associate | 2008 | IP | 320.00 | 470.20 | 150,464.00 |
| M Catherine Peshkin | Associate | 2004 | Restructuring | 610.00 | 174.70 | 106,567.00 |
| Annalisa L H Peterson | Associate | 2008 | Litigation | 320.00 | 11.60 | 3,712.00 |
| Jeffrey S Powell | Partner | 2001 | Litigation | 775.00 | 526.40 | 407,960.00 |
| Scott D Price | Partner | 1990 | Taxation | 895.00 | 10.50 | 9,397.50 |
| Matthew T Regan, P.C. | Partner | 1995 | Litigation | 745.00 | 274.40 | 204,428.00 |
| Karen M Robinson | Partner | 1998 | IP | 640.00 | 266.60 | 170,624.00 |
| Donald E Rocap | Partner | 1980 | Taxation | 955.00 | 0.30 | 286.50 |
| Ray C Schrock | Partner | 1998 | Restructuring | 735.00 | 495.50 | 364,192.50 |
| Traci Shafroth | Associate | 2007 | Litigation | 375.00 | 69.70 | 26,137.50 |
| Janet S Siegel | Of Counsel | 1987 | Restructuring | 510.00 | 4.90 | 2,499.00 |
| Jasmine Singh | Associate | 2008 | Litigation | 320.00 | 440.30 | 140,896.00 |
| Rebecca Stamey-White | Associate | 2008 | Litigation | 320.00 | 83.80 | 26,816.00 |
| Andrew J Stanger | Associate | 2004 | Corporate | 430.00 | 43.80 | 18,834.00 |
| Keri Steffes | Associate | 2008 | Litigation | 375.00 | 22.20 | 8,325.00 |
| Michelle C Tam | Associate | 2006 | Litigation | 430.00 | 16.00 | 6,880.00 |
| Vincent E Taurassi | Associate | 2007 | Corporate | 415.00 | 1.30 | 539.50 |
| Vincent Thorn | Associate | 2009 | Taxation | 365.00 | 24.00 | 8,760.00 |
| Christopher J Torrente | Partner | 2001 | Corporate | 660.00 | 1.80 | 1,188.00 |
| Stacie D Torres | Associate | 2008 | Restructuring | 365.00 | 19.90 | 7,263.50 |
| David M Tressler | Associate | 2007 | Litigation | 375.00 | 334.30 | 125,362.50 |
| Peter Tsao | Associate | 2009 | Restructuring | 365.00 | 398.00 | 145,270.00 |
| Tammy A Tsoumas | Associate | 2007 | Litigation | 430.00 | 22.20 | 9,546.00 |
| Wilson Tsu | Associate | 2008 | Restructuring | 365.00 | 189.80 | 69,277.00 |
| Rafael J Valdes | Associate | 2007 | Restructuring | 415.00 | 23.50 | 9,752.50 |
| Alyssa A Wade | Associate | 2007 | Litigation | 375.00 | 43.80 | 16,425.00 |
| Shani Moore Weatherby | Associate | 2007 | Litigation | 375.00 | 19.00 | 7,125.00 |
| Brad Weiland | Associate | 2008 | Restructuring | 365.00 | 46.40 | 16,936.00 |
| Kelly Wessels | Associate | 2006 | Litigation | 465.00 | 10.80 | 5,022.00 |
| Sara B Zablotney | Partner | 2003 | Taxation | 660.00 | 5.50 | 3,630.00 |
| Jonathan Zinman | Associate | 2008 | Restructuring | 415.00 | 492.30 | 204,304.50 |
| **ATTORNEY TOTALS** | | | | | **14,664.00** | **$7,687,529.50** |

2

| Paraprofessional Name | Position | Department | Rate | Hours | Total |
|---|---|---|---|---|---|
| April B Abrams | Legal Assistant | Real Estate | 275.00 | 7.00 | 1,925.00 |
| Amir Amiri | Law Clerk | Litigation | 215.00 | 10.00 | 2,150.00 |
| Shaun Booth | Case Assistant | Restructuring | 155.00 | 66.50 | 10,307.50 |
| Jon D Canty | Technology Services | Litigation | 205.00 | 203.20 | 41,656.00 |
| Mahmood Dualeh | Technology Services | Litigation | 250.00 | 85.50 | 21,375.00 |
| K Kelly Farnsworth | Legal Assistant | IP | 190.00 | 626.90 | 119,111.00 |
| Paul Fraumann | Legal Assistant | Restructuring | 205.00 | 12.70 | 2,603.50 |
| Beth Friedman | Legal Assistant | Restructuring | 275.00 | 106.00 | 29,150.00 |
| Stephanie D Frye | Other | Admin Services | 205.00 | 1.00 | 205.00 |
| Jacob Goldfinger | Legal Assistant | Restructuring | 235.00 | 61.60 | 14,476.00 |
| Alun Harris-John | Technology Services | Litigation | 220.00 | 3.00 | 660.00 |
| Lisa A Horton | Legal Assistant | Litigation | 270.00 | 60.90 | 16,443.00 |
| Daneen L Jachino | Other | Admin Services | 575.00 | 13.70 | 7,877.50 |
| Ashley G James | Law Clerk | General | 215.00 | 28.70 | 6,170.50 |
| Benjamin J Jones | Case Assistant | Litigation | 150.00 | 0.50 | 75.00 |
| Daniel Kelleher | Legal Assistant | Restructuring | 225.00 | 68.30 | 15,367.50 |
| Payal Keshvani | Law Clerk | Restructuring | 215.00 | 39.10 | 8,406.50 |
| Kimberly D Knudson | Law Clerk | General | 215.00 | 24.50 | 5,267.50 |
| Sean Z Kramer | Law Clerk | General | 215.00 | 56.00 | 12,040.00 |
| Ellen J Kratofil | Other | Admin Services | 230.00 | 1.60 | 368.00 |
| Rebecca L Krauss | Law Clerk | General | 215.00 | 26.60 | 5,719.00 |
| Jocelyn C Kuo | Legal Assistant | Restructuring | 225.00 | 417.70 | 93,982.50 |
| Wayne E LeBlanc, Jr. | Legal Assistant | IP | 235.00 | 275.00 | 64,625.00 |
| Magali Lespinasse Lee | Legal Assistant | Restructuring | 235.00 | 11.10 | 2,608.50 |
| Adrienne Levin | Legal Assistant | Litigation | 215.00 | 1.20 | 258.00 |
| Stephanie N Levy | Legal Assistant | Corporate | 205.00 | 0.30 | 61.50 |
| Lib Biographical Research | Research Specialist | Admin Services | 210.00 | 8.40 | 1,764.00 |
| Lib Business/Ind Research | Research Specialist | Admin Services | 210.00 | 2.30 | 483.00 |
| Lib Expert Witness Research | Research Specialist | Admin Services | 210.00 | 8.90 | 1,869.00 |
| Lib Stk/Rates/Stats Research | Research Specialist | Admin Services | 210.00 | 1.30 | 273.00 |
| Anne R Lubinsky | Technology Services | Litigation | 190.00 | 69.10 | 13,129.00 |
| Maureen McCarthy | Legal Assistant | Restructuring | 235.00 | 1.10 | 258.50 |
| Donna McClurkin-Fletcher | Legal Assistant | Corporate | 270.00 | 12.50 | 3,375.00 |
| Robert E Moore | Technology Services | Litigation | 235.00 | 4.50 | 1,057.50 |
| John Murray | Project Assistant | Litigation | 150.00 | 398.20 | 59,730.00 |
| Shawn M Olender | Case Assistant | Litigation | 150.00 | 37.60 | 5,640.00 |
| Robert Orren | Case Assistant | Restructuring | 155.00 | 42.30 | 6,556.50 |
| Lidija Pegan | Legal Assistant | Litigation | 205.00 | 4.50 | 922.50 |
| Dan Raffle | Technology Services | Litigation | 250.00 | 4.00 | 1,000.00 |
| Eric Ramirez | Legal Assistant | Litigation | 195.00 | 3.30 | 643.50 |
| James B Rixey | Legal Assistant | Litigation | 190.00 | 1.30 | 247.00 |
| Michael Robinson | Case Assistant | Restructuring | 155.00 | 12.00 | 1,860.00 |
| Hector J Rodriguez | Project Assistant | Litigation | 150.00 | 16.50 | 2,475.00 |
| Henry Rosas | Legal Assistant | Corporate | 260.00 | 0.50 | 130.00 |
| Omar Ruffin | Legal Assistant | Litigation | 235.00 | 3.50 | 822.50 |

3

| Paraprofessional Name | Position | Department | Rate | Hours | Total |
|---|---|---|---|---|---|
| Shefali Saxena | Case Assistant | Litigation | 150.00 | 547.40 | 82,110.00 |
| Linda A Scussel | Other | Admin Services | 230.00 | 3.20 | 736.00 |
| Rachel A Shea | Case Assistant | Real Estate | 155.00 | 4.50 | 697.50 |
| Sofia Sheth | Case Assistant | Restructuring | 155.00 | 244.40 | 37,882.00 |
| Hayley Smith | Law Clerk | Corporate | 215.00 | 27.60 | 5,934.00 |
| Carrie Sroka | Project Assistant | Restructuring | 150.00 | 5.60 | 840.00 |
| Peter Stach | Project Assistant | Restructuring | 155.00 | 0.60 | 93.00 |
| Assaf Sternberg | Case Assistant | Litigation | 150.00 | 38.00 | 5,700.00 |
| Scott Thompson | Project Assistant | Litigation | 150.00 | 50.80 | 7,620.00 |
| Brian Tweedie | Law Clerk | Corporate | 215.00 | 16.90 | 3,633.50 |
| Christopher J Valeri | Legal Assistant | Corporate | 260.00 | 90.40 | 23,504.00 |
| Gary M Vogt | Legal Assistant | Litigation | 265.00 | 1.50 | 397.50 |
| Courtney A Way | Legal Assistant | Litigation | 190.00 | 4.30 | 817.00 |
| Jennifer D Yu | Project Assistant | Litigation | 150.00 | 7.00 | 1,050.00 |
| **PARAPROFESSIONAL TOTALS** | | | | **3,882.60** | **$756,139.50** |

| | |
|---|---|
| **Total Billed Hours by Attorneys During the First Interim Fee Period** | **14,664.00** |
| **Total Billed Hours by Paraprofessionals During the First Interim Fee Period** | **3,882.60** |
| | |
| **Blended Rate (Including Paraprofessionals)** | **$455.11** |
| **Blended Rate (Excluding Paraprofessionals)** | **$524.26** |
| | |
| **Total Billed Hours during the First Interim Fee Period** | **18,546.60** |
| **Total Fees Requested during the First Interim Fee Period** | **$8,440,669.00** |

## Exhibit E

### Expense Summary

### Summary of Expenses Incurred for the
### Period from March 27, 2009 through June 30, 2009

| DISBURSEMENT | TOTAL |
|---|---|
| Airfare | 91,828.21 |
| Appearance Fees | 67.50 |
| Bates Labels/Print | 0.63 |
| Binders | 208.00 |
| Binding | 269.50 |
| Car Rental | 434.90 |
| Catering Expenses | 5,554.78 |
| CD-ROM Duplicates | 322.00 |
| Color Copies or Prints | 2,076.00 |
| Color Prints | 3,494.00 |
| Computer Database Research | 33,002.21 |
| Court Reporter Fee/Deposition | 9,443.54 |
| DVD Duplicates | 140.00 |
| Filing Fees | 1,314.00 |
| Information Broker Doc/Svcs | 22,910.19 |
| Library Document Procurement | 150.00 |
| Local Transportation | 5,314.67 |
| Miscellaneous Office Expenses | 50.00 |
| Other Travel Expenses | 1,449.66 |
| Outside Computer Services | 24,592.17 |
| Outside Copy/Binding Services | 59,761.33 |
| Outside Messenger Services | 1,517.96 |
| Outside Video Services | 289.38 |
| Overnight Delivery | 8,550.95 |
| Overtime Meals | 401.54 |
| Overtime Meals - Attorney | 3,349.44 |
| Overtime Meals - Legal Assistant | 841.82 |
| Overtime Transportation | 9,593.94 |
| Postage | 153.06 |
| Scanned Images | 2,398.35 |
| Secretarial Overtime | 3,699.84 |
| Standard Copies or Prints | 18,042.60 |
| Standard Copies or Prints NY | 7,082.10 |
| Standard Prints | 17,198.40 |
| Standard Prints NY | 25,876.05 |
| Tabs/Indexes/Dividers | 1,874.80 |
| Third Party Telephone Charges | 4,359.07 |
| Transportation to/from airport | 15,489.33 |
| Travel Expense (incl. Hotels) | 91,934.71 |
| Travel Meals | 13,198.20 |

| | |
|---|---|
| Word Processing Overtime | 2,240.55 |
| Working Meals/K&E and Others | 1,869.71 |
| Working Meals/K&E Only | 748.49 |
| **GRAND TOTAL** | **$493,093.58** |

**<u>Exhibit F</u>**

**Billing Detail for First Interim Fee Period**

**Because it is voluminous, the billing detail for the First Interim Fee Period is omitted. The billing detail is available upon request to Kirkland & Ellis LLP.**