John E. Kane
Duff & Phelps, LLC
300 Headquarters Plaza East
12th Floor
Morristown, NJ 07960
(973) 775-8300
Valuation Consultants for the Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

In re:                                          :
                                                :
CHARTER COMMUNICATIONS, INC., et al.,           :
                                                :          Chapter 11
                                                :          Case No. 09-11435 (JMP)
                                                :
              Debtors.                          :
                                                :          (Jointly Administered)
                                                :
                                                :

------------------------------------------------------------

**FIRST INTERIM APPLICATION OF DUFF & PHELPS, LLC, VALUATION
CONSULTANTS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES
FROM MARCH 27, 2009 THROUGH JUNE 30, 2009**

| | |
|---|---|
| Name of Applicant: | Duff & Phelps, LLC |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Final Retention Order: | April 15, 2009, *nunc pro tunc* to March 27, 2009 |
| Period for Which Compensation and Reimbursement are Sought: | March 27, 2009 through June 30, 2009 |
| Amount of Professional Fees Sought as Actual, Reasonable, and Necessary: | $680,547.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $17,653.31 |

96576-2

Total Amount Sought: <u>$698,200.81</u>

This is an/a: <u>X</u> Interim __Final Application

Aggregate Amounts Paid to Date: <u>$368,932.11</u>

John E. Kane
Duff & Phelps, LLC
300 Headquarters Plaza East
12th Floor
Morristown, NJ 07960
(973) 775-8300
Valuation Consultants for the Debtors


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

In re:                                          :
                                                :
CHARTER COMMUNICATIONS, INC., et al.,           :
                                                :        Chapter 11
                                                :        Case No. 09-11435 (JMP)
                Debtors.                         :
                                                :        (Jointly Administered)
                                                :
                                                :
------------------------------------------------------------------


**FIRST INTERIM APPLICATION OF DUFF & PHELPS, LLC, VALUATION
CONSULTANTS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES
FROM MARCH 27, 2009 THROUGH JUNE 30, 2009**


TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Duff & Phelps, LLC ("Duff & Phelps"), Valuation Consultants for Charter Communications, Inc.

and its affiliated debtors and debtors in possession in the above captioned cases (collectively, the

"Debtors")[1] , submits this first application (the "Application") seeking (a) allowance of interim

---

[1] The Debtors in these cases include: Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.; CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners,

compensation for professional services rendered by Duff & Phelps to the Debtors in the amount of

$683,847.50 from March 27, 2009 through June 30, 2009 (the "Compensation Period"), and (b)

reimbursement of expenses incurred in connection with such services in the amount of $17,653.31,

pursuant to sections 328 and 331 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"),

General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the Order

Establishing Procedures For Interim Compensation and Reimbursement of Expenses for

Professionals, entered in these cases on April 15, 2009 (Docket No. 174) (the "Interim

Compensation Order") and, collectively with the UST Guidelines and the Local Guidelines, the

"Guidelines"). In support of this Application, Duff & Phelps respectfully represents as follows:

---

L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Pacific Microwave; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

## Summary of Application

1.   Duff & Phelps seeks allowance of interim compensation for professional services rendered to the Debtors during the Compensation Period in the amount of $683,847.50 in advisory fees and for reimbursement of expenses incurred and recorded in connection with the rendition of such services in the aggregate amount of $17,653.31.  During the Compensation Period, Duff & Phelps professionals expended a total of 1,543.80 hours for which compensation is requested.  Duff & Phelps has received interim compensation payments in the amount of $368,932.11 to date.

2.   Duff & Phelps does not maintain, in the normal course of providing financial advisory services to its clients, detailed written time records.  However, in this case, Duff & Phelps maintained written records of the time expended by Duff & Phelps professionals in the rendering of their professional services to the Debtors.  Such time records were made contemporaneously with the rendition of services by the person rendering such services and in the ordinary course of Duff & Phelps's practice.  A summary schedule setting forth the number of hours expended by each of the professionals who rendered services to the Debtors, along with the name of the professional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services during the Compensation Period, is hereby attached as Exhibit "A."  A summary schedule and also detailed descriptions of the expenses for which Duff & Phelps is seeking reimbursement and the total amount for each such expense category are attached hereto as Exhibit "B."

3.   In preparing this Application Duff & Phelps has complied with the Guidelines, with the exception of providing its hours in the format utilized by attorneys.  Duff & Phelps believes that all applicable time and disbursement charges for the Compensation Period

have been included herein. However, to the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Duff & Phelps reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## Jurisdiction and Venue

4. The Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Bankruptcy Court. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5. On March 27, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered pursuant to Bankruptcy Ruled 1015(b).

6. On April 10, 2009, the United States Trustee for the Southern District of New York (the "US Trustee") appointed the Committee of Unsecured Creditors (the "Committee'), consisting of: (1) UMB Bank, NA as Indenture Trustee; (2) The Bank of NY Mellon Trust Company, N.A.; and (3) Bank of Oklahoma. On April 23, 2009 the US Trustee also appointed HSBC Bank, USA, N.A. to the Committee.

7. On the Petition Date, the Debtors filed with this Court the Declaration of John E. Kane in Support of the Debtors' Application for an Order Authorizing the Employment and

Retention of Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date (Docket No. 19).

8. On April 13, 2009, the Debtors filed with this Court the First Supplemental Declaration of John E. Kane in Support of the Debtors' Application to Employ and Retain Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date (Docket No. 150).

9. On April 15, 2009, the Court approved Duff & Phelps's retention as valuation consultants for the Debtors *nunc pro tunc* to March 27, 2009, to render financial advisory services to the Debtors in these chapter 11 cases (the "Retention Order" – Attached herein as Exhibit "C"). As set forth more fully in the Debtors' application to employ Duff & Phelps, Duff & Phelps has extensive experience in representing statutory Debtors in chapter 11 cases, as part of its prominent investment banking and financial advisory expertise. The terms of the engagement are set forth in the engagement letter dated March 17, 2009 (the "Engagement Letter" – Attached herein as Exhibit "D").

10. On May 1, the Debtors filed their Debtors Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (Docket No. 273).

11. On July 23, 2009, the Debtors filed with this Court the Second Supplemental Declaration of John E. Kane in Support of the Debtors' Application to Employ and Retain Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date (Docket No. 698) (the "Second Supplemental Declaration" – Attached herein as Exhibit "E").

12. Pursuant to the Retention Order, for the Compensation Period Duff & Phelps has agreed to render services to the Debtors based on its hourly rates for such services, which are

listed in the Engagement Letter. Duff & Phelps is also entitled to reimbursement for reasonable expenses incurred in connection with services performed on behalf of the Debtors.

### Statements of Duff & Phelps Pursuant to Bankruptcy Rule 2016(a)

13. This is Duff & Phelps' first application for allowance of interim compensation for services rendered and for reimbursement of expenses. Duff & Phelps has previously provided monthly fee statement for the period of March 23, 2009 through April 30, 2009, requesting fees in the amount of $146,905.00 and expenses in the amount of $3,353.16 (the "March - April 2009 Statement"), to the notice parties in accordance with the provisions of the Interim Compensation Order. The fees reflected in the March – April 2009 Statement incorrectly included $3,300.00 for the period prior to the Petition Date. Duff & Phelps, by this Application, reduces its request for fees by this amount, bringing the total fees for the March – April 2009 Statement to $143,605.00. Duff & Phelps has received payments in the amount of $118,237.16 on account of the March – April 2009 Statement, which is the sum of $114,884.00 (80% of fees requested) and $3,353.16 (100% of expenses requested). Duff & Phelps has provided a monthly fee statement for the period of May 1, 2009 through May 31, 2009, requesting fees in the amount of $295,875.00 and expenses in the amount of $13,994.95 (the "May 2009 Statement"). Duff & Phelps has received payments in the amount of $250,694.95 on account of the May 2009 Statement, which is the sum of $236,700 (80% of fees requested) and $13,994.95 (100% of expenses requested). Duff & Phelps has provided a monthly fee statement for the period of June 1, 2009 through June 30, 2009, requesting fees in the amount of $241,067.50 and expenses in the amount of $305.20 (the "June 2009 Statement"). Duff & Phelps has received no payment on account of the June 2009 Statement. The total amount outstanding for the Compensation Period is $329,268.70.

## Services Rendered by Duff & Phelps during the Compensation Period

14.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in the daily time records. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Debtors, as well as to identify some of the problems and issues that Duff & Phelps was required to address.

## Project Management

15.     Services performed under this category included: Project kick-off meeting at Charter headquarters in St. Louis; Establishment of data requirements; Coordination of various appraisal tasks; Coordination with Charter management, Ernst & Young project team and KPMG audit team; Participation in weekly status conference calls; Preparation of monthly fee statements; Reviews of work tasks; and Documentation of out-of-scope work tasks.

## Financial Analysis

16.     Services rendered under this category included: Review of Lazard's valuation of Charter and meetings in Lazard's New York City offices; Analysis and testing of financial and operating data; Development and implementation of discounted cash flow models for appraisal of intangible assets; Conduct sensitivity analysis on discounted cash flow modeling; Develop cost of capital; Write pertinent appraisal report sections; Provide documentation of appraisal process for Charter/EY/KPMG review; and Respond to auditor review questions.

## Appraisal of Tangible Assets

17.     Services rendered under this category included: Meetings and telephone calls with Charter engineering personnel to identify, quantify and price tangible assets; Analysis

and testing of data submissions; Analyze tangible assets' historical costs; Develop and

implement Replacement Cost New Models for Cable Networks, Headend Facilities, Telephone

Facilities, Customer Connections and Customer Premise Equipment; Provide schedules for

allocation of Fair Values to Historical Cost Year Layers; Provide Summary Schedules of

Costs/Net Book Values/Reproduction Cost New/Reproduction Cost New Less

Depreciation/Replacement Cost New/Replacement Cost New Less Depreciation; Provide

documentation of appraisal process for Charter/EY/KPMG review; Respond to auditor review

questions; and Write pertinent appraisal report sections.

### Appraisal of Real Estate

18.     Services rendered under this category included: Analysis and testing of data

submissions; Contact local assessors' offices to confirm current market value; Develop model for

valuation of improvements; Provide documentation of appraisal process for Charter/EY/ KPMG

review; and Respond to auditor review questions.

### Appraisal of Debt

19.     Services rendered under this category included: Collection and analysis of

market and industry data; Conduct appraisal analysis; Write appraisal report; Provide

documentation of appraisal process for Charter/EY/KPMG review; and Respond to auditor

review questions.

### Appraisal of CC VIII Entity

20.     Services rendered under this category included: Collection and analysis of

CC VIII operating data; Conduct appraisal analysis of CC VIII Entity and minority interest;

Write appraisal report; Provide documentation of appraisal process for Charter/EY/KPMG

review; and Respond to auditor review questions.

## **Net Operating Loss Review**

21.     Services rendered under this category included: Review of EY procedures for the calculation of useable net operating losses; Attendance at meetings in EY's Minneapolis offices; Review of Private Letter Ruling; Analysis of NOL tax issues; and Participate in various conference calls regarding NOL calculations and pertinent tax issues.

## **JP Morgan Matter**

22.     Services rendered under this category included: Gathering and collection of information in response to subpoena which was presented to counsel; Meetings with Kirkland & Ellis to review prior Charter engagements; Preparation and attendance at deposition; and Review and analysis of Expert Report of Carlyn Taylor, FTI Consulting, Inc.

## **Disbursements**

23.     Duff & Phelps has disbursed $17,653.31 as expenses incurred and recorded in providing professional services for the Debtors during the Compensation Period. These charges are intended to cover Duff & Phelps's direct costs, which costs are not incorporated into Duff & Phelps's hourly rates. Only clients who actually use services of the types for which reimbursement is sought are separately charged for such service. The effect of including such expenses as part of the hourly rate would impose that cost upon clients who do not require such services.

24.     Due to the nature of the Debtors' businesses, the location of their various offices and facilities, as well as the location of the members of the Debtors and their professionals, frequent long distance telephone calls have been required. On occasion, overnight

delivery of documents and other materials is required as a result of urgent needs necessitating the use of such express services.

25. The time constraints imposed by the circumstances of these cases have required Duff & Phelps's professionals at times to devote time during the evenings and on weekends to the performance of financial services on behalf of the Debtors. While not frequent, these extraordinary services were essential in order to meet deadlines, react timely to the rapidly changing financial condition of the Debtors, and satisfy the demands of the Debtors in providing high-quality financial services. Duff & Phelps has not charged for any overtime expense. Nonetheless, consistent with the provisions of the Guidelines, Duff & Phelps has sought reimbursement for the expenses related to working meals and transportation.

26. Duff & Phelps respectfully submits that the actual expenses incurred in providing professional services for which reimbursement is sought in this Application were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in fulfilling their statutory obligations.

### Statements of Duff & Phelps

27. No agreement or understanding prohibited by section 504 of the Bankruptcy Code exists between Duff & Phelps and any other person for a sharing of compensation received or to be received for services rendered in or in connection with these chapter 11 cases, nor shall Duff & Phelps share or agree to share the compensation paid or allowed from the Debtors' estate for such services with any other person in contravention of section 504 of the Bankruptcy Code. No agreement or understanding prohibited by 18 U.S.C. § 155 has been made by Duff & Phelps.

28.     Pursuant to Bankruptcy Rule 2016, Duff & Phelps states that no payments, other than those mentioned herein in connection with Duff & Phelps's engagement by the Debtors, have heretofore been made or promised to Duff & Phelps for services rendered or to be rendered in any capacity in connection with these chapter 11 cases.

### Waiver of Memorandum of Law

29.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented by this Application, Duff & Phelps respectfully requests that the Court waive the requirement that Duff & Phelps file a memorandum of law in support of this Application.

### Notice

30.     Notice of this Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; and (d) counsel for any official committee appointed in these cases, pursuant to the Interim Compensation Order. Duff & Phelps respectfully submits that this is good and sufficient notice and no other or further notice is necessary.

WHEREFORE, Duff & Phelps respectfully requests that this Court enter an order, substantially in the form of the attached Exhibit F, granting (i) an interim allowance of compensation for professional services rendered as financial advisors for the Debtors in the amount of $680,547.50 for the period of March 27, 2009 through June 30, 2009; (ii) reimbursement of actual and necessary disbursements incurred and recorded by Duff & Phelps in the amount of $17,653.31 for the period of March 27, 2009 through June 30, 2009; (iii) such other and further relief as is just, and (iv) authority for the Debtors to pay to Duff & Phelps any outstanding compensation and reimbursement of expenses.

Dated: Morristown, New Jersey
      August 20, 2009

DUFF & PHELPS, LLC

By: _____
John E. Kane
300 Headquarters Plaza East
12th Floor
Morristown, NJ 07960
(973) 775-8300

Valuation Consultants for the Debtors

John E. Kane
Duff & Phelps, LLC
300 Headquarters Plaza East
12th Floor
Morristown, NJ 07960
(973) 775-8300
Valuation Consultants for the Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

In re:                                                  :
                                                        :
CHARTER COMMUNICATIONS, INC., et al.,                   :
                                                        :       Chapter 11
                                                        :       Case No. 09-11435 (JMP)
                 Debtors.                               :
                                                        :       (Jointly Administered)
                                                        :
                                                        :
------------------------------------------------------------

**CERTIFICATION PURSUANT TO GUIDELINES FOR FEES AND DISBURSEMENTS
FOR PROFESSIONALS IN RESPECT OF FIRST INTERIM APPLICATION OF
DUFF & PHELPS, LLC
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

I, John E. Kane, hereby certify that:

1.      I am a Managing Director at Duff & Phelps, LLC and the professional

designated by the applicant, Duff & Phelps, LLC ("Duff & Phelps") with responsibility for the

bankruptcy-related valuation consulting services to Charter Communications, Inc. and its affiliated

debtors and debtors in possession in the above-captioned case (collectively, the "Debtors")[2] with

---

[2] The Debtors in these cases include: Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter
Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter
Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH
I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment
Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC
10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI
Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC;
CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.; CCO
Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint
Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners,
L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications

96576-2

respect to compliance with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the Order Establishing Procedures For Interim Compensation and Reimbursement of Expenses for Professionals, entered in these cases on April 15, 2009 (Docket No. 174) (the "Interim Compensation Order") and , collectively with the UST Guidelines and the Local Guidelines, the "Guidelines").

2. This certification is made in respect of Duff & Phelps's interim application, dated August 20, 2009 (the "Application") including the exhibits annexed thereto, for interim compensation and reimbursement of expenses for the period commencing March 27, 2009 through June 30, 2009 (the "Compensation Period") in accordance with the Local Guidelines.

3. In respect of Section B.1 of the Local Guidelines, I certify that:

  (a) I have read the Application;

---

Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Pacific Microwave; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

(b)	To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

(c)	The fees and disbursements sought are charged in accordance with practices customarily employed by Duff & Phelps and generally accepted by Duff & Phelps's clients; and

(d)	In providing a reimbursable service, Duff & Phelps does not make a profit on that service, whether the service is performed by Duff & Phelps in-house or through a third party.

4.	In respect of section B.2 of the Local Guidelines, I certify that: The Debtors, the United States Trustee for the Southern District of New York (the "US Trustee"), counsel for the Debtors, and counsel for the Committee have each been provided on a monthly basis with a statement of Duff & Phelps's fees and disbursements accrued during the previous month in accordance with the Interim Compensation Order.

5.	In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the US Trustee, counsel for the Debtors, and counsel for the Committee are each being provided with a copy of the Application in accordance with the Interim Compensation Order.

6.	By this certification, Duff & Phelps does not waive or release any rights or entitlements it has under the order of this Court, dated April 15, 2009, approving Duff & Phelps's

retention as financial advisor to the Debtors *nunc pro tunc* to March 27, 2009, pursuant to Duff &

Phelps's normal billing and customary reimbursement and disbursement practices.


Dated:  Morristown, New Jersey
          August 20, 2009

                                                    John E. Kane

# EXHIBIT A

**EXHIBIT A**

**Summary of Time Reported from March 23, 2009 - April 30, 2009**
**For Services Provided to Charter Communications, Inc.**

| Position | Professional | Rate | Hours | Fees | |
|---|---|---|---|---|---|
| Managing Director | Jack Kane | 560 | 25.0 | | 14,000.00 |
| | Fred Bliss | 560 | 121.0 | | 67,760.00 |
| | **Managing Director Total** | | **146.0** | **$** | **81,760.00** |
| | | | | | |
| Director | Henry Sherman | 500 | 4.0 | | 2,000.00 |
| | Jim Cuddihy | 500 | 92.0 | | 46,000.00 |
| | Steve Barry | 500 | 7.5 | | 3,750.00 |
| | **Director Total** | | **103.5** | **$** | **51,750.00** |
| | | | | | |
| Vice President | Jack O'Hara | 405 | 3.0 | | 1,215.00 |
| | **Vice President Total** | | **3.0** | **$** | **1,215.00** |
| | | | | | |
| Sr. Analyst | Omkar Joshi | 300 | 4.0 | | 1,200.00 |
| | Ned Persons | 300 | 20.0 | | 6,000.00 |
| | Zachary Rimler | 300 | 4.0 | | 1,200.00 |
| | Kyle Flatley | 300 | 3.0 | | 900.00 |
| | **Sr. Analyst Total** | | **31.0** | **$** | **9,300.00** |
| | | | | | |
| Analyst | Sarah Wilyamowsky | 225 | 8.0 | | 1,800.00 |
| | Rebecca Christie | 225 | 4.0 | | 900.00 |
| | **Analyst Total** | | **12.0** | **$** | **2,700.00** |
| | | | | | |
| Executive Assistant | Kathy Alonzo | 120 | 1.5 | | 180.00 |
| | **Assistant Total** | | **1.5** | **$** | **180.00** |
| | | | | | |
| **Total Professional Time** | | | **297.0** | **$** | **146,905.00** |

**Total Amount of Fees Requested for Services Rendered**
**(March 23, 2009 - April 30, 2009)**
| | | | | | |
|---|---|---|---|---|---|
| **Blended Houly Rate for Professionals** | | | | **$** | **494.63** |



**Charter Communications, Inc.**
**Fresh Start Accounting**

| Resource Name | Date | Rate | Hours | Fee | Comments |
|---|---|---|---|---|---|
| **Project Management** | | | | | |
| Bliss, Fred | 04/22/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, call with KMPG regarding PP&E valuation procedures, 2 hrs, review of submitted data, 2 hrs. |
| Bliss, Fred | 04/23/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, review of data submissions, 8 hrs. |
| Bliss, Fred | 04/24/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, review of data submissions, 8 hrs. |
| Bliss, Fred | 04/25/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Analysis of KMA-GLID-PSIS mapping, verifying data submissions against mapping, 3 hrs. |
| Bliss, Fred | 04/27/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Prepare for Lazard Mtd, 4 hrs |
| Bliss, Fred | 04/30/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Update project status, weekly status call with Charter et al, Call with Tom Degnan & EY on valuation issues of debt, entities' interest, 8 hrs. |
| Kane, Jack | 4/20-24/2009 | 560.00 | 8.00 | 4,480.00 | Review Disclosure Statement and pre and emergence debt levels. |
| Kane, Jack | 04/22/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, call with KMPG regarding PP&E valuation procedures. |
| Kane, Jack | 04/29/09 | 560.00 | 4.00 | 2,240.00 | Meeting with Lazard & Greg Doody to review and reconcile Lazard valuation. |
| **Total Project Management** | | | **49.00** | **$  27,440.00** | |
| | | | | | |
| **Real Estate** | | | | | |
| O'Hara, Jack | 04/23/09 | 405.00 | 0.50 | 202.50 | Real Estate project review w/engagement team |
| **Total Real Estate** | | | **0.50** | **$       202.50** | |
| | | | | | |
| **Tangibles - Misc.** | | | | | |
| Bliss, Fred | 04/26/09 | 560.00 | 5.00 | 2,800.00 | Charter Frersh Start, Review of data submissions, prepare emails regarding data clarification and missing data items, 5 hrs. |
| Bliss, Fred | 04/27/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Tangibles, HE Support Services, prepare listing of applicable equipment, 4 hrs. |
| Bliss, Fred | 04/29/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Tangibles, Plant Density Analysis, 3 hrs |
| O'Hara, Jack | 04/23/09 | 405.00 | 1.50 | 607.50 | Discussion w/F Bliss re tang valuation issues and Conf Call w/tang proj team members |
| O'Hara, Jack | 04/27/09 | 405.00 | 1.00 | 405.00 | Review Tang HE asset w/ F Bliss.  Set-up analysis data base w/K Flatley. |
| **Total Tangibles-Misc.** | | | **14.50** | **$    7,732.50** | |
| | | | | | |
| **Tangibles - RCN Modeling** | | | | | |
| Cuddihy, Jim | 04/20/09 | 500.00 | 6.00 | 3,000.00 | Distribution plant models |
| Cuddihy, Jim | 04/21/09 | 500.00 | 4.00 | 2,000.00 | Distribution plant models |
| Cuddihy, Jim | 04/22/09 | 500.00 | 5.00 | 2,500.00 | Headend and plant models |
| Cuddihy, Jim | 04/23/09 | 500.00 | 5.00 | 2,500.00 | Headend and plant models |
| Cuddihy, Jim | 04/24/09 | 500.00 | 4.00 | 2,000.00 | Headend models |
| Cuddihy, Jim | 04/27/09 | 500.00 | 6.00 | 3,000.00 | Modeling plant and headends |
| Cuddihy, Jim | 04/28/09 | 500.00 | 7.00 | 3,500.00 | Modeling plant and headends |
| Cuddihy, Jim | 04/29/09 | 500.00 | 6.00 | 3,000.00 | Modeling plant and headends |
| Cuddihy, Jim | 04/30/09 | 500.00 | 6.00 | 3,000.00 | Modeling plant and headends |
| Flatley, Kyle | 04/27/09 | 300.00 | 2.00 | 600.00 | Review Client data; RCN study of Liebert Units; pricing research |
| Flatley, Kyle | 04/28/09 | 300.00 | 1.00 | 300.00 | Review Client data; RCN study of Liebert Units; pricing research |
| **Total Tangibles - RCN Modeling** | | | **52.00** | **$  25,400.00** | |



**Charter Communications, Inc.**
**Fresh Start Accounting**

| Resource Name | Date | Rate | Hours | Fee | Comments |
|---|---|---|---|---|---|
| **Tangibles - Analysis** | | | | | |
| Persons, Ned | 04/24/09 | 300.00 | 8.00 | 2,400.00 | Initial set-up of cost model including gathering appropriate trend and depreciation factors. |
| Persons, Ned | 04/27/09 | 300.00 | 4.00 | 1,200.00 | Completed set-up of the original cost model. |
| Persons, Ned | 04/28/09 | 300.00 | 4.00 | 1,200.00 | Received final asset listing; added data to cost model. |
| Persons, Ned | 04/29/09 | 300.00 | 4.00 | 1,200.00 | Quality checks, corrections/adjustments.  First pass summary. |
| Rimler, Zachary | 04/23/09 | 300.00 | 3.00 | 900.00 | Research of Charter assets & other salient facts in reparation for conf call; conf call. |
| Rimler, Zachary | 04/27/09 | 300.00 | 1.00 | 300.00 | Quality Control check. |
| **Total Tangibles-Analysis** | | | **24.00** | **$ 7,200.00** | |
| | | | | | |
| **Financial Analysis** | | | | | |
| Alonzo, Kathy | 04/09/09 | 120.00 | 1.00 | 120.00 | Prepare Information Request |
| Barry, Stephen | 04/22/09 | 500.00 | 1.00 | 500.00 | review documents including Debtor's Disclosure Statement |
| Barry, Stephen | 04/28/09 | 500.00 | 2.00 | 1,000.00 | review Lazard valuation document (ppt) |
| Barry, Stephen | 04/29/09 | 500.00 | 3.50 | 1,750.00 | review Lazard valuation document (ppt); meet with Lazard personnel to discuss analysis |
| Barry, Stephen | 04/30/09 | 500.00 | 1.00 | 500.00 | prepare for and participate in call with Charter, E&Y regarding various valuation requirements |
| Bliss, Fred | 03/23/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Tangible Info Rwequest, 3 hrs |
| Bliss, Fred | 03/26/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Tangible Info Request, 2 hrs |
| Bliss, Fred | 03/27/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Tangible Info Request, 3 hrs |
| Bliss, Fred | 03/30/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Tangible Assets, Modeling for Headend, Plant and Connections, 8 hrs |
| Bliss, Fred | 03/31/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Review Kelly's mileage schedule and matchup to previous engr. schedule, 4 hrs. |
| Bliss, Fred | 04/03/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Prepare tangible data collection procedures and respond to Charter/EY responses regarding tangible asset data collection process in connection with Apr. 7 meeting in St. Louis, 3 hrs. |
| Bliss, Fred | 04/06/09 | 560.00 | 7.00 | 3,920.00 | Charter Fresh Start, prepare material to facilitate tangible asset scoping and data collection discussions at Apr 9-10 meetings in St; Louis, 7 hrs. |
| Bliss, Fred | 04/07/09 | 560.00 | 10.00 | 5,600.00 | Charter Fresh Start, Meetings in St. Louis,EY and Charter, discussed project timing, tax requirements, and tangible assets, travel to St. Louis, 10 hrs. |
| Bliss, Fred | 04/08/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Meetings in St. Louis, meet with Kelly Ross, Jill H. and Jason Buscher, complete scoping of tangible assets and required data, review fixed asset cost availability, meet with Kirkland and Ellis attorneys regarding prior work with Charter, return flight to Newark, 8 hrs. |
| Bliss, Fred | 04/09/09 | 560.00 | 7.00 | 3,920.00 | Charter Fresh Start, Intangible assets data request, analysis Job Cost-Fixed Asset Mapping, Data Request for aircraft, 7 hrs. |
| Bliss, Fred | 04/10/09 | 560.00 | 5.00 | 2,800.00 | Conference call regarding data request for business enterprise and intangible assets, prepare schedule for Jill Collins on appraisal approaches and methodologies, prepare schedule on FA rollups for appraisal cost structure, 5 hrs. |
| Bliss, Fred | 04/28/09 | 560.00 | 7.00 | 3,920.00 | Charter Fresh Start, Analysis of Business Ops Stats, 7 hrs. |
| Bliss, Fred | 04/29/09 | 560.00 | 5.00 | 2,800.00 | Charter Fresh Start, Meeting with Lazard to review their valuation, 5 hrs. |
| Cuddihy, Jim | 03/26/09 | 500.00 | 1.00 | 500.00 | Initial file review |
| Cuddihy, Jim | 03/27/09 | 500.00 | 1.00 | 500.00 | Conference call for project review |
| Cuddihy, Jim | 03/30/09 | 500.00 | 5.00 | 2,500.00 | Develop informaation requests and valuation models |
| Cuddihy, Jim | 03/31/09 | 500.00 | 1.00 | 500.00 | review and synthize east west file data |
| Cuddihy, Jim | 04/07/09 | 500.00 | 8.00 | 4,000.00 | Kickoff Meeting for Charter Fresh Start in St. Louis |
| Cuddihy, Jim | 04/08/09 | 500.00 | 8.00 | 4,000.00 | Kickoff Meeting for Charter Fresh Start in St. Louis |



**Charter Communications, Inc.**
**Fresh Start Accounting**

| Resource Name | Date | Rate | Hours | Fee | Comments |
|---|---|---|---|---|---|
| Cuddihy, Jim | 04/09/09 | 500.00 | 8.00 | 4,000.00 | Tangible models for Plant, towers antennas, CPE, customer connects and earth stations |
| Cuddihy, Jim | 04/14/09 | 500.00 | 3.00 | 1,500.00 | Tangible models for Plant, towers antennas, CPE, customer connects and earth stations |
| Cuddihy, Jim | 04/15/09 | 500.00 | 2.00 | 1,000.00 | Tangible models for Plant, towers antennas, CPE, customer connects and earth stations |
| Cuddihy, Jim | 04/16/09 | 500.00 | 3.00 | 1,500.00 | Tangible models for Plant, towers antennas, CPE, customer connects and earth stations |
| Cuddihy, Jim | 04/17/09 | 500.00 | 3.00 | 1,500.00 | Tangible models for Plant, towers antennas, CPE, customer connects and earth stations |
| Joshi, Omkar | 04/28/09 | 300.00 | 1.00 | 300.00 | KMA Analysis |
| Joshi, Omkar | 04/29/09 | 300.00 | 2.00 | 600.00 | KMA Analysis |
| Joshi, Omkar | 04/30/09 | 300.00 | 1.00 | 300.00 | KMA Analysis |
| Wilyamowsky, Sarah | 04/23/09 | 225.00 | 8.00 | 1,800.00 | Mapping of GLIDs to KMAs |
| **Total Financial Analysis** | | | **135.50** | **$ 68,690.00** | |

**JP Morgan Matter**

| Resource Name | Date | Rate | Hours | Fee | Comments |
|---|---|---|---|---|---|
| Alonzo, Kathy | 04/23/09 | 120.00 | 0.50 | 60.00 | Gather Solvency Opinion Letter Reports |
| Christie, Rebecca | 4/12-24/2009 | 225.00 | 4.00 | 900.00 | Week 4/12-4/18 (1.5 hours): Discussion with R. Bowers at W&S and Jack Kane regarding Charter Subpoena, document collection and indemnification. Week 4/19-4/24 (2.5 hours): Drafted Collection Notices, assisted each project member with their personal collection, created of CD for project files and prepared memo and mailing slip to send data to counsel for review, and follow-up conversation with counsel and colleagues regarding data production |
| Bliss, Fred | 04/20/09 | 560.00 | 2.00 | 1,120.00 | Charter-JP Morgan subpoena, response to workpaper request, put files into dropbox |
| Kane, Jack | 04/19/09 | 560.00 | 7.00 | 3,920.00 | Reviewed and discussed subpoena with attorneys and reviewed requested files and emails. |
| Kane, Jack | 04/29/09 | 560.00 | 4.00 | 2,240.00 | NYC-Kirkland & Ellis (counsel for the debtor) meeting |
| Sherman, Henry | 04/29/09 | 500.00 | 4.00 | 2,000.00 | NYC-Kirkland & Ellis (counsel for the debtor) meeting |
| **Total JP Morgan Matter** | | | **21.50** | **$ 10,240.00** | |

| | | | | |
|---|---|---|---|---|
| **TOTALS** | | | **297.00** | **$146,905.00** |



**Summary of Time Reported from May 1, 2009 - May 31, 2009**
**For Services Provided to Charter Communications, Inc.**

| Position | Professional | Rate | Hours | Fees |
|---|---|---|---|---|
| Managing Director | Jack Kane | 560 | 7.0 | 3,920.00 |
| | Fred Bliss | 560 | 170.0 | 95,200.00 |
| | Andrew Borresen | 560 | 27.5 | 15,400.00 |
| | Patrick Walsh | 560 | 19.0 | 10,640.00 |
| | **Managing Director Total** | | **223.5** $ | **125,160.00** |
| | | | | |
| Director | Steve Barry | 500 | 2.5 | 1,250.00 |
| | Jim Cuddihy | 500 | 139.0 | 69,500.00 |
| | Stu Kwestal | 500 | 1.0 | 500.00 |
| | **Director Total** | | **142.5** $ | **71,250.00** |
| | | | | |
| Vice President | Jack O'Hara | 405 | 52.0 | 21,060.00 |
| | Santiago Rivera | 405 | 3.0 | 1,215.00 |
| | **Vice President Total** | | **55.0** $ | **22,275.00** |
| | | | | |
| Sr. Analyst | Omkar Joshi | 300 | 26.0 | 7,800.00 |
| | Kevin O'Donnell | 300 | 88.0 | 26,400.00 |
| | Kyle Flatley | 300 | 58.0 | 17,400.00 |
| | Jamie Warner | 300 | 8.0 | 2,400.00 |
| | **Sr. Analyst Total** | | **180.0** $ | **54,000.00** |
| | | | | |
| Analyst | Carly Kurkiewicz | 225 | 80.0 | 18,000.00 |
| | Robert Wasenius | 225 | 12.0 | 2,700.00 |
| | Sarah Wilyamowsky | 225 | 2.0 | 450.00 |
| | **Analyst Total** | | **94.0** $ | **21,150.00** |
| | | | | |
| Executive Assistant | Kathy Alonzo | 120 | 15.0 | 1,800.00 |
| | Josephine Samman | 120 | 2.0 | 240.00 |
| | **Assistant Total** | | **17.0** $ | **2,040.00** |
| | | | | |
| **Total Professional Time** | | | **712.0** $ | **295,875.00** |

**Total Amount of Fees Requested for Services Rendered**
  **(May 1, 2009 - May 31, 2009)**
**Blended Houly Rate for Professionals**                                         $         415.55

DUFF&PHELPS

**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| **Financial Analysis** | | | | | | |
| Alonzo, Kathy | 05/22/09 | 05/23/09 | 120.00 | 2.50 | 300.00 | Demographic research for KMAs: Central State, Georgia, Michigan, MN/NE, New England, Northwest, Sierra Nevada |
| Alonzo, Kathy | 05/26/09 | 05/31/09 | 120.00 | 1.50 | 180.00 | Demographic Research fro KMAs: So. Cal, SC, TN, TX, WI |
| Alonzo, Kathy | 05/28/09 | 05/31/09 | 120.00 | 1.00 | 120.00 | format file: Summary of Values for Non-Telephone Headend Assets |
| Alonzo, Kathy | 05/29/09 | 05/31/09 | 120.00 | 1.50 | 180.00 | Data Entry-Reasonableness Testing |
| | | | | 6.50 | | |
| | | | | | | |
| Barry, Stephen | 05/13/09 | 05/16/09 | 500.00 | 0.50 | 250.00 | Charter-Fresh Start 5-13-09; .5 hrs.; Internal D&P meeting regarding open items. |
| Barry, Stephen | 05/14/09 | 05/16/09 | 500.00 | 0.50 | 250.00 | Note:  Charter-Fresh Start 4-29-09; 3 hrs; Review Lazard valuation document (ppt); meet with Lazard personnel to discuss analysis. |
| | | | | | | Note: Charter-Fresh Start 4-30-09; 1 hr; Prepare for and participate in call with Charter, E&Y regarding various valuation requirements. |
| | | | | | | Note: Charter-Fresh Start 4-28-09; 2 hrs; Review Lazard valuation document (ppt) |
| | | | | | | Note: Charter-Fresh Start 4-22-09; 1 hr; Review documents including Debtor's Disclosure |
| | | | | | | Charter-Fresh Start 5-14-09; .50 hrs; Internal D&P conference call to discuss WACC components; correspondence |
| Barry, Stephen | 05/20/09 | 05/23/09 | 500.00 | 1.50 | 750.00 | Discussions and correspondence regarding WACC inputs; run WACC sensitivities. |
| | | | | 2.50 | | |
| | | | | | | |
| Bliss, Fred | 05/15/09 | 05/16/09 | 560.00 | 1.00 | 560.00 | Charter Fresh Start, Confernece Call with Degnan, Knudson, Borresen and Walsh regarding NOL calculations and DP review, 1 hr. |
| Bliss, Fred | 05/24/09 | 05/31/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, DCF Modeling, update for Kagan Stats, Adjustments ofr partial year, Contributory Charges for non-KMA assets, 4 hrs. |
| | | | | 5.00 | | |
| | | | | | | |
| Joshi, Omkar | 05/01/09 | 05/09/09 | 300.00 | 4.00 | 1,200.00 | GLID Sum Val |
| Joshi, Omkar | 05/04/09 | 05/09/09 | 300.00 | 3.00 | 900.00 | GLID Sum Val |
| Joshi, Omkar | 05/05/09 | 05/09/09 | 300.00 | 2.00 | 600.00 | GLID Sum Val |
| Joshi, Omkar | 05/06/09 | 05/09/09 | 300.00 | 3.00 | 900.00 | GLID Sum Val |
| Joshi, Omkar | 05/18/09 | 05/23/09 | 300.00 | 3.00 | 900.00 | GLID Analysis |
| Joshi, Omkar | 05/19/09 | 05/23/09 | 300.00 | 3.00 | 900.00 | GLID Analysis |
| Joshi, Omkar | 05/20/09 | 05/23/09 | 300.00 | 2.00 | 600.00 | Headend Analysis |
| Joshi, Omkar | 05/21/09 | 05/23/09 | 300.00 | 1.00 | 300.00 | Headend Analysis |
| Joshi, Omkar | 05/28/09 | 05/31/09 | 300.00 | 3.00 | 900.00 | GLID Sum Val |
| Joshi, Omkar | 05/29/09 | 05/31/09 | 300.00 | 2.00 | 600.00 | Tower Valuation |
| | | | | 26.00 | | |
| | | | | | | |
| Warner, Jamie | 05/15/09 | 05/16/09 | 300.00 | 4.00 | 1,200.00 | Development of Cost of Capital |
| Warner, Jamie | 05/18/09 | 05/23/09 | 300.00 | 4.00 | 1,200.00 | Development of Cost of Capital |
| | | | | 8.00 | | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Wilyamowsky, Sarah | 05/06/09 | 05/09/09 | 225.00 | 2.00 | 450.00 | Data Entry |
| | | | | 2.00 | | |
| **Total Financial Analysis** | | | | **50.00** | **15,480.00** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Project Management** | | | | | | |
| Alonzo, Kathy | 05/05/09 | 05/09/09 | 120.00 | 0.50 | 60.00 | copy files/reports and e-mails to specified folder in Global Directory |
| Alonzo, Kathy | 05/08/09 | 05/09/09 | 120.00 | 1.00 | 120.00 | Charter billing request |
| Alonzo, Kathy | 05/11/09 | 05/16/09 | 120.00 | 1.00 | 120.00 | begin work on Monthly Fee Statement |
| Alonzo, Kathy | 05/15/09 | 05/16/09 | 120.00 | 3.00 | 360.00 | assemble and edit monthly fee statement |
| Alonzo, Kathy | 05/19/09 | 05/23/09 | 120.00 | 2.00 | 240.00 | Finalize Monthly Fee Statement |
| Alonzo, Kathy | 05/21/09 | 05/23/09 | 120.00 | 1.00 | 120.00 | Final Monthly Fee Statements fedex to 6 parties |
| | | | | 8.50 | | |
| Bliss, Fred | 05/01/09 | 05/09/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Project Status, review and Update, 8 hrs |
| Bliss, Fred | 05/02/09 | 05/09/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Analysis of P&L, 2009 Budget and LRP, 4 hrs. |
| Bliss, Fred | 05/03/09 | 05/09/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Analysis of P&L, 2009 Budget and LRP, 3 hrs. |
| Bliss, Fred | 05/04/09 | 05/09/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Analysis of attrition data, LRP Allocation, Review of Real Estate file and Tower file, 8 hrs. |
| Bliss, Fred | 05/05/09 | 05/09/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, LRP Allocation, Status Call with Collins, Heneghan, Ross, Cuddihy on tangibles, Mapping of GLIDs and entities, Mapping of Cable GLIDs to Phone GLIDs, 8 hrs. |
| Bliss, Fred | 05/06/09 | 05/09/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Additional Site Visit Locations, Analysis of technical facilities by facility type - idenify possible outliers, call on debt valuation, coordinate with Santiago in NYC office, 8 hrs. |
| Bliss, Fred | 05/07/09 | 05/09/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Weekly Status Call, Update Issues list, coordinate information responses and outstanding data, 8 hrs. |
| Bliss, Fred | 05/09/09 | 05/09/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Prepare for trip to St. Louis on 11th & 12th, prepare discussion points documents, prepare files for presentation, 4 hrs. |
| Bliss, Fred | 05/11/09 | 05/16/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Travel to St. Louis for accounting and tax meetings, 8 hrs. |
| Bliss, Fred | 05/17/09 | 05/23/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Update project issues list, 3 hrs. |
| Bliss, Fred | 05/19/09 | 05/23/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Provide K. Howard out-of-scope requested services, 2 hrs. |
| Bliss, Fred | 05/20/09 | 05/23/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Analysis of KMA-GLID-Tax Entity structure to determine method to bring GLID values to tax entities, 2 hrs. |
| Bliss, Fred | 05/21/09 | 05/23/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Weekly Status Call, Mapping of GLIDs to KMA and tax entities, Email to M. Hatzfeld outline issues with valuations for tax purposes, 4 hrs. |
| Bliss, Fred | 05/22/09 | 05/23/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Update Project Issues, 2 hrs. |
| Bliss, Fred | 05/26/09 | 05/31/09 | 560.00 | 5.00 | 2,800.00 | Charter Fresh Start, Prep for meetings in St. Louis, prepare meeting discussion points and supporting presentations, 5 hrs. |
| Bliss, Fred | 05/27/09 | 05/31/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Meetings in St. Louis with Accounting, Tax and Engineering, 8 hrs. |
| Bliss, Fred | 05/28/09 | 05/31/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Weekly Status Call, coordinate with DP tax and T. Degnan on NOL valuation issues, 2 hrs. |
| | | | | 87.00 | | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Kane, Jack | 05/06/09 | 05/09/09 | 560.00 | 2.00 | 1,120.00 | Charter Call |
| Kane, Jack | 05/07/09 | 05/09/09 | 560.00 | 2.00 | 1,120.00 | Call with Kevin Howard |
| Kane, Jack | 05/28/09 | 05/31/09 | 560.00 | 3.00 | 1,680.00 | NOL Analysis review |
| | | | | 7.00 | | |
| **Total Project Management** | | | | **102.50** | **53,660.00** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Tangibles-Trending Analysis** | | | | | | |
| Bliss, Fred | 05/15/09 | 05/16/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Analyze revised Historical Cost File and prepare for trend analysis, 2 hrs |
| Bliss, Fred | 05/23/09 | 05/23/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, review trend valuation model, start setup of reasonableness testing model, 3 hrs. |
| | | | | 5.00 | | |
| Flatley, Kyle | 05/10/09 | 05/16/09 | 300.00 | -6.00 | -1,800.00 | Transfer hours from RCN to Trending subcode. Made edits to first trending model based on Fred's trend and depreciation revisions. |
| Flatley, Kyle | 05/18/09 | 05/23/09 | 300.00 | 7.00 | 2,100.00 | Trending Modeling the New Updated Information provided by the client. |
| Flatley, Kyle | 05/19/09 | 05/23/09 | 300.00 | 3.00 | 900.00 | Trending Modeling the New Updated Information provided by the client. |
| | | | | 4.00 | | |
| O'Hara, Jack | 05/11/09 | 05/16/09 | 405.00 | 1.00 | 405.00 | Trending model, review w/staff. |
| O'Hara, Jack | 05/19/09 | 05/23/09 | 405.00 | 2.00 | 810.00 | Charter Tang Asset Trend Valuation - Summary of Value. |
| O'Hara, Jack | 05/20/09 | 05/23/09 | 405.00 | 2.00 | 810.00 | Charter Tang Asset Trend Valuation - Quality check and review. |
| | | | | 5.00 | | |
| **Total Tangibles-Trending Analysis** | | | | **14.00** | **6,025.00** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| Kurkiewicz, Carly | 05/04/09 | 05/09/09 | 225.00 | 8.00 | 1,800.00 | Review engagement task and procedures (1 hr); review site specific data; research assessors MV (7 hrs) |
| Kurkiewicz, Carly | 05/05/09 | 05/09/09 | 225.00 | 8.00 | 1,800.00 | review site specific data; research assessors MV |
| Kurkiewicz, Carly | 05/06/09 | 05/09/09 | 225.00 | 8.00 | 1,800.00 | review site specific data; research assessors MV |
| Kurkiewicz, Carly | 05/07/09 | 05/09/09 | 225.00 | 8.00 | 1,800.00 | review site specific data; research assessors MV |
| Kurkiewicz, Carly | 05/08/09 | 05/09/09 | 225.00 | 8.00 | 1,800.00 | review site specific data; research assessors MV |
| Kurkiewicz, Carly | 05/11/09 | 05/16/09 | 225.00 | 8.00 | 1,800.00 | MI - review site specific sata/research assessors MV |
| Kurkiewicz, Carly | 05/12/09 | 05/16/09 | 225.00 | 8.00 | 1,800.00 | MI - review site specific data/ research assessors MV |
| Kurkiewicz, Carly | 05/18/09 | 05/23/09 | 225.00 | 8.00 | 1,800.00 | MI - review site specific data/research assessors MV |
| Kurkiewicz, Carly | 05/19/09 | 05/23/09 | 225.00 | 8.00 | 1,800.00 | MI - review site specific data/research assessors MV |
| Kurkiewicz, Carly | 05/20/09 | 05/23/09 | 225.00 | 8.00 | 1,800.00 | remaining tower sites and missing tax bills - review site specific data/research assessors MV |
| | | | | 80.00 | | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| O'Donnell, Kevin | 05/04/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | Review engagement task and procedures (1 hr); WI-review site specific data/research assessors MV (7 hrs) |
| O'Donnell, Kevin | 05/05/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | WI, NC review site specific data; research assessors MV |
| O'Donnell, Kevin | 05/06/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | NC, MA, VT - review site specific data; research assessors MV |
| O'Donnell, Kevin | 05/07/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | SC - review site specific data; research assessors MV |
| O'Donnell, Kevin | 05/08/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | SC - review site specific data; research assessors MV |
| O'Donnell, Kevin | 05/11/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | TN,OR-review site specific data/research assessors MV |
| O'Donnell, Kevin | 05/12/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | TX, WA- review site specific data/research assessors MV |
| O'Donnell, Kevin | 05/13/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | VA, WI, SC- review site specific data/research assessors MV |
| O'Donnell, Kevin | 05/14/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | NY, NV, VA- review site specific data/research assessors MV |
| O'Donnell, Kevin | 05/15/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | NE, SC. NV, NC, OR-review site specific data/research assessors MV |
| O'Donnell, Kevin | 05/18/09 | 05/23/09 | 300.00 | 8.00 | 2,400.00 | MO-review site specific data/research assessors MV, also filling in MV for the state of Michigan |
| | | | | 88.00 | | |
| | | | | | | |
| O'Hara, Jack | 05/01/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Engagement review w/F. Bliss & staff |
| O'Hara, Jack | 05/04/09 | 05/09/09 | 405.00 | 2.00 | 810.00 | Set up & review w/ staff real estate engagement procedure |
| O'Hara, Jack | 05/05/09 | 05/09/09 | 405.00 | 1.50 | 607.50 | Review/Resolve real property issues |
| O'Hara, Jack | 05/07/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Review on-going tang asset valuation procedures |
| O'Hara, Jack | 05/08/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Review on-going tang asset valuation procedures |
| O'Hara, Jack | 05/20/09 | 05/23/09 | 405.00 | 3.00 | 1,215.00 | Charter Real Estate - preliminary review & preparation of missing tax invoices spreadshheet. Set-up model for Improvements. |
| O'Hara, Jack | 05/22/09 | 05/23/09 | 405.00 | 4.00 | 1,620.00 | Model and valuation - RCNLD for HE's, HUB's, OTN's. |
| O'Hara, Jack | 05/29/09 | 05/31/09 | 405.00 | 8.00 | 3,240.00 | Charter real estate review & estimated Mich Improvement values. |
| | | | | 21.50 | | |
| | | | | | | |
| Wasenius, Robert | 05/11/09 | 05/16/09 | 225.00 | 4.00 | 900.00 | review site specific data; research assessors MV |
| Wasenius, Robert | 05/12/09 | 05/16/09 | 225.00 | 8.00 | 1,800.00 | review site specific data; research assessors MV |
| | | | | 12.00 | | |
| **Total Real Estate** | | | | **201.50** | **55,807.50** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Tangibles-Misc.** | | | | | | |
| Bliss, Fred | 05/26/09 | 05/31/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Develop reasonableness testing modeling, 3 hrs. |
| Bliss, Fred | 05/28/09 | 05/31/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Customer Connection modeling, CPE modeling, Headend modeling, develop reasonableness testing model, 6 hrs. |
| | | | | 9.00 | | |
| | | | | | | |
| O'Hara, Jack | 05/01/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Engagement review w/F. Bliss & staff |
| O'Hara, Jack | 05/04/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Review w/staff engagement pricing model |
| O'Hara, Jack | 05/05/09 | 05/09/09 | 405.00 | 1.50 | 607.50 | Review w/staff-tower pricing |
| O'Hara, Jack | 05/07/09 | 05/09/09 | 405.00 | 1.00 | 405.00 | Review on-going real property engagement task |



| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| O'Hara, Jack | 05/08/09 | 05/09/09 | 405.00 | 3.00 | 1,215.00 | Review final tower values; set-up trend analysis incl development of adjusted depreciation table. |
| | | | | 7.50 | | |
| **Total Tangibles-Misc** | | | | **16.50** | **8,077.50** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Tangibles-RCN Modeling** | | | | | | |
| Bliss, Fred | 05/12/09 | 05/16/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Site visit to Olivette Master Headend and Overland Hub to confirm Headend Modeling, travel back to Newark, NJ, 8 hrs. |
| Bliss, Fred | 05/14/09 | 05/16/09 | 560.00 | 5.00 | 2,800.00 | Charter Fresh Start, Analysis of CPE data for model development, owner startup analysis, prepare Tower Appraisal Model for audit review, 5 hrs. |
| Bliss, Fred | 05/15/09 | 05/16/09 | 560.00 | 1.00 | 560.00 | Charter Fresh Start, Develop CPE appraisal model, 1 hr. |
| Bliss, Fred | 05/16/09 | 05/16/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Review Model development for CPE and Customer Connections, 4 hrs. |
| Bliss, Fred | 05/18/09 | 05/23/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, modeling of customer connects, analysis of revised CPE quantity file, data testing, send out CPE, tower and customer connect models for review, 8 hrs. |
| Bliss, Fred | 05/19/09 | 05/23/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Conference call with Collins, Heneghan, Ross and Cuddihy to update resolution of Project Isssues, submit additiona data request for customer connects, data testing, 6 hrs. |
| Bliss, Fred | 05/20/09 | 05/23/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Coordinate with JWC on transport equipment modeling, discussions with Doug Schneider on vehicle valuation, mapping of headend-hub-otn infrastructure, 6 hrs. |
| Bliss, Fred | 05/21/09 | 05/23/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, mapping of headend-hub-otn infrastructure, 4 hrs. |
| Bliss, Fred | 05/22/09 | 05/23/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, mapping headend-hub-otn infrastructure and related transport requirements, 6 hrs. |
| Bliss, Fred | 05/23/09 | 05/23/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Review and respond to Charter's review of CPE and Customer Connect appraisal models, 3 hrs. |
| Bliss, Fred | 05/29/09 | 05/31/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, modeling of CPE and Customer Connections, complete revisions from Charter, populate models, 8 hrs. |
| Bliss, Fred | 05/30/09 | 05/31/09 | 560.00 | 5.00 | 2,800.00 | Charter Fresh Start, complete Customer Connect population of model, continue to develop reasonableness modeling, apply reasonableness testing results to Customer Connection modeling, 5 hrs. |
| | | | | 64.00 | | |
| Cuddihy, Jim | 05/01/09 | 05/09/09 | 500.00 | 6.00 | 3,000.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/04/09 | 05/09/09 | 500.00 | 6.00 | 3,000.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/05/09 | 05/09/09 | 500.00 | 7.00 | 3,500.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/06/09 | 05/09/09 | 500.00 | 6.00 | 3,000.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/07/09 | 05/09/09 | 500.00 | 3.00 | 1,500.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/08/09 | 05/09/09 | 500.00 | 8.00 | 4,000.00 | Modeling for Plant, Drops and Headends |
| Cuddihy, Jim | 05/11/09 | 05/16/09 | 500.00 | 8.00 | 4,000.00 | Site Visits and Models |
| Cuddihy, Jim | 05/12/09 | 05/16/09 | 500.00 | 8.00 | 4,000.00 | Site Visits and Models |
| Cuddihy, Jim | 05/13/09 | 05/16/09 | 500.00 | 7.00 | 3,500.00 | Site Visits and Models |
| Cuddihy, Jim | 05/14/09 | 05/16/09 | 500.00 | 7.00 | 3,500.00 | Plant and Headend Models |
| Cuddihy, Jim | 05/15/09 | 05/16/09 | 500.00 | 8.00 | 4,000.00 | Plant and Headend Models |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Cuddihy, Jim | 05/18/09 | 05/23/09 | 500.00 | 8.00 | 4,000.00 | Headend Models |
| Cuddihy, Jim | 05/19/09 | 05/23/09 | 500.00 | 7.00 | 3,500.00 | Headend and Customer connection modeling |
| Cuddihy, Jim | 05/20/09 | 05/23/09 | 500.00 | 8.00 | 4,000.00 | Headend model development |
| Cuddihy, Jim | 05/21/09 | 05/23/09 | 500.00 | 8.00 | 4,000.00 | Headend Models and discussons with charter engineering re video equipment |
| Cuddihy, Jim | 05/22/09 | 05/23/09 | 500.00 | 6.00 | 3,000.00 | Headend Models and discussons with charter engineering re transport equipment |
| Cuddihy, Jim | 05/26/09 | 05/31/09 | 500.00 | 8.00 | 4,000.00 | Headend Modeling and Plant model population |
| Cuddihy, Jim | 05/27/09 | 05/31/09 | 500.00 | 5.00 | 2,500.00 | Headend Modeling and Plant model population |
| Cuddihy, Jim | 05/28/09 | 05/31/09 | 500.00 | 7.00 | 3,500.00 | Headend Modeling and Plant model population |
| Cuddihy, Jim | 05/29/09 | 05/31/09 | 500.00 | 8.00 | 4,000.00 | Headend Modeling transport system |
| | | | | 139.00 | | |
| | | | | | | |
| Flatley, Kyle | 05/05/09 | 05/09/09 | 300.00 | 8.00 | 2,400.00 | Headend Support Services Model |
| Flatley, Kyle | 05/06/09 | 05/09/09 | 300.00 | 6.00 | 1,800.00 | Headend Support Services Model |
| Flatley, Kyle | 05/07/09 | 05/09/09 | 300.00 | 4.00 | 1,200.00 | Tower Model Edits and Review |
| Flatley, Kyle | 05/08/09 | 05/09/09 | 300.00 | 6.00 | 1,800.00 | Reproduction Model based on Summary Tab |
| Flatley, Kyle | 05/10/09 | 05/16/09 | 300.00 | 6.00 | 1,800.00 | Transfer hours from RCN to Trending subcode. Made edits to first trending model based on Fred's trend and depreciation revisions. |
| Flatley, Kyle | 05/11/09 | 05/16/09 | 300.00 | 8.00 | 2,400.00 | Build Repro Trending Model based on Summary Tab (different cost basis than previously) |
| Flatley, Kyle | 05/12/09 | 05/16/09 | 300.00 | 5.00 | 1,500.00 | Build Repro Trending Model based on Summary Tab (different cost basis than previously) |
| Flatley, Kyle | 05/15/09 | 05/16/09 | 300.00 | 7.00 | 2,100.00 | Build Repro Trending Model based on Summary Tab (different cost basis than previously) - Client Provided UPDATED cost in the Summary tab. |
| Flatley, Kyle | 05/19/09 | 05/23/09 | 300.00 | 4.00 | 1,200.00 | CPE RCN Modeling |
| | | | | 54.00 | | |
| | | | | | | |
| O'Hara, Jack | 05/19/09 | 05/23/09 | 405.00 | 1.00 | 405.00 | Charter CPE - review client data & set-up model. |
| O'Hara, Jack | 05/20/09 | 05/23/09 | 405.00 | 4.00 | 1,620.00 | Charter CPE valuation & review invoices of Headend assets. |
| O'Hara, Jack | 05/21/09 | 05/23/09 | 405.00 | 5.00 | 2,025.00 | Charter CPE valuation |
| O'Hara, Jack | 05/28/09 | 05/31/09 | 405.00 | 8.00 | 3,240.00 | CPE Valuation - revisions to KMA model; CPE valuation by GLID Model |
| | | | | 18.00 | | |
| **Total Tangibles-RCN Modeling** | | | | **275.00** | **128,830.00** | |

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | | Comments |
|---|---|---|---|---|---|---|
| **Debt Valuation** | | | | | | |
| Rivera, Santiago | 05/19/09 | 05/23/09 | 405.00 | 2.00 | 810.00 | Debt Valuation |
| Rivera, Santiago | 05/29/09 | 05/31/09 | 405.00 | 1.00 | 405.00 | Debt Valuation |
| | | | | 3.00 | | |
| **Total Debt Valuation** | | | | **3.00** | **1,215.00** | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 5/1/09 - 5/31/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| **NOL Review** | | | | | | |
| Borresen, Andrew | 05/19/09 | 05/23/09 | 560.00 | 3.00 | 1,680.00 | Prepration for meeting in Minneapolis including review of Bankruptcy provisions related to Sections 108 and 382, including built-in gains and alternatives methods under Notice 2003-65. |
| Borresen, Andrew | 05/20/09 | 05/23/09 | 560.00 | 5.00 | 2,800.00 | Preparation for meeting in Minneapolis including review of Private Letter Ruling and related issues. |
| Borresen, Andrew | 05/21/09 | 05/23/09 | 560.00 | 8.00 | 4,480.00 | Meeting in Minneaplois with Brian Knudson of E&Y, Tom Degnan of Charter and Pat Walsh, including follow-up. |
| Borresen, Andrew | 05/26/09 | 05/31/09 | 560.00 | 0.50 | 280.00 | Met with Fred Bliss and Jack Kane along with Pat Walsh to discuss Miineapolis meeting and work to be done. |
| | | | | | | Review Private Letter Ruling and related issues pertaining to bankruptcy tax rules for Corporation which has partnership interest as primary asset. |
| Borresen, Andrew | 05/28/09 | 05/31/09 | 560.00 | 5.00 | 2,800.00 | Research various Subchapter "C" and "K" issues related to E&Y model as well as begin drafting of email with issues for discussion. |
| Borresen, Andrew | 05/29/09 | 05/31/09 | 560.00 | 6.00 | 3,360.00 | Finalize email related to substantive and factual issues in  E&Y model as well as assumption and limiting conditions; discuss various issues with Pat Walsh; call to Brian Knudson to arrange conference call. |
| | | | | 27.50 | | |
| Kwestel, Stu | 05/18/09 | 05/23/09 | 500.00 | 1.00 | 500.00 | Analyse NOL tax issues |
| Samman, Josephine | 05/21/09 | 05/23/09 | 120.00 | 1.00 | 120.00 | Reservations made for trip to Minneapolis for Pat & AJ May 19-20, 2009 (meeting with Charter.) |
| Samman, Josephine | 05/28/09 | 05/31/09 | 120.00 | 1.00 | 120.00 | Travel arrangements for NOL Review Meeting in Minneapolis, MN |
| | | | | 2.00 | | |
| Walsh, Patrick | 05/17/09 | 05/23/09 | 560.00 | 1.00 | 560.00 | Bankruptcy tax issues - May 15, 2009 |
| Walsh, Patrick | 05/20/09 | 05/23/09 | 560.00 | 5.00 | 2,800.00 | Preparation for meeting in Minneapolis including review of Private Letter Ruling and related issues. |
| Walsh, Patrick | 05/21/09 | 05/23/09 | 560.00 | 8.00 | 4,480.00 | Meeting in Minneaplois with Brian Knudson of E&Y, Tom Degnan of Charter and Pat Walsh, including follow-up. |
| Walsh, Patrick | 05/29/09 | 05/31/09 | 560.00 | 5.00 | 2,800.00 | Finalize email related to substantive and factual issues in  E&Y model as well as assumption and limiting conditions; discuss various issues with Pat Walsh; call to Brian Knudson to arrange conference call. |
| | | | | 19.00 | | |
| **Total NOL Review** | | | | **49.50** | **26,780.00** | |
| **TOTAL HOURS/FEE** | | | | **712.00** | **$  295,875.00** | |



**Summary of Time Reported from June 1, 2009 - June 30, 2009**
**For Services Provided to Charter Communications, Inc.**

| Position | Professional | Rate | Hours | Fees |
|---|---|---|---|---|
| Managing Director | Jack Kane | 560 | 12.0 | 6,720.00 |
| | Fred Bliss | 560 | 203.0 | 113,680.00 |
| | Andrew Borresen | 560 | 5.0 | 2,800.00 |
| | Stephan Forstmann | 560 | 3.0 | 1,680.00 |
| | **Managing Director Total** | | **223.0 $** | **124,880.00** |
| | | | | |
| Director | Steve Barry | 500 | 2.0 | 1,000.00 |
| | Jim Cuddihy | 500 | 76.0 | 38,000.00 |
| | Henry Sherman | 500 | 1.0 | 500.00 |
| | **Director Total** | | **79.0 $** | **39,500.00** |
| | | | | |
| Vice President | Jack O'Hara | 405 | 44.5 | 18,022.50 |
| | Fred Kaes | 405 | 54.0 | 21,870.00 |
| | Santiago Rivera | 405 | 2.0 | 810.00 |
| | **Vice President Total** | | **100.5 $** | **40,702.50** |
| | | | | |
| Sr. Analyst | Omkar Joshi | 300 | 61.0 | 18,300.00 |
| | Peter Salvatori | 300 | 39.0 | 11,700.00 |
| | Jamie Warner | 300 | 2.0 | 600.00 |
| | Mengmeng Yu | 300 | 4.5 | 1,350.00 |
| | **Sr. Analyst Total** | | **106.5 $** | **31,950.00** |
| | | | | |
| Analyst | Dov Erdfarb | 225 | 0.5 | 112.50 |
| | Margaret Fogerty | 225 | 8.0 | 1,800.00 |
| | Michael Tebbe | 225 | 0.5 | 112.50 |
| | **Analyst Total** | | **9.0 $** | **2,025.00** |
| | | | | |
| Executive Assistant | Kathy Alonzo | 120 | 16.8 | 2,010.00 |
| | **Assistant Total** | | **16.8 $** | **2,010.00** |
| | | | | |
| **Total Professional Time** | | | **534.8 $** | **241,067.50** |

**Total Amount of Fees Requested for Services Rendered**
  **(June 1, 2009 - June 30, 2009)**
**Blended Houly Rate for Professionals**           **$**       **450.80**

DUFF&PHELPS

**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| **Financial Analysis** | | | | | | |
| Alonzo, Kathy | 06/01/09 | 06/06/09 | 120.00 | 0.75 | 90.00 | tangibles/RCN/customer connections - data verification (glid figures) |
| Alonzo, Kathy | 06/05/09 | 06/06/09 | 120.00 | 2.00 | 240.00 | confirm figures in Fixed Asset Valuation Model |
| Alonzo, Kathy | 06/10/09 | 06/13/09 | 120.00 | 0.50 | 60.00 | set-up/format report |
| Alonzo, Kathy | 06/23/09 | 06/30/09 | 120.00 | 1.00 | 120.00 | report edits-Market Approach |
| | | | | 4.25 | 510.00 | |
| | | | | | | |
| Barry, Stephen | 06/03/09 | 06/06/09 | 500.00 | 1.00 | 500.00 | Charter-Fresh Start:  6-5-09 Call and model review with FB |
| Barry, Stephen | 06/05/09 | 06/06/09 | 500.00 | 1.00 | 500.00 | Charter-Fresh Start 6-5-09 WACC discussions, revisiions |
| | | | | 2.00 | 1,000.00 | |
| | | | | | | |
| | | | | | | |
| Bliss, Fred | 06/06/09 | 06/06/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Revise DCF modeling f to break out all types of customer relationships, 2 hrs. |
| Bliss, Fred | 06/07/09 | 06/13/09 | 560.00 | 4.00 | 2,240.00 | Charter Frsh Start, DCF Modeling, 4 hrs |
| Bliss, Fred | 06/08/09 | 06/13/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, DCF Modeling, 6 hrs. |
| Bliss, Fred | 06/14/09 | 06/20/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Revisions to DCF Modeling, Analysis of various sensitivity scenarios, 6 hrs. |
| Bliss, Fred | 06/25/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Revisions to DCF projections to reflect management revisions regarding yr. 6 - 10 performance, 4 hrs. |
| Bliss, Fred | 06/26/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Modify yrs. 6 -10 projections to reflect management's opinions regarding grwoth, talked with Patsy and modified projection revisions to reflect managment's opinions regarding EBITDA and CapEx annual amounts, 2 hrs. |
| Bliss, Fred | 06/27/09 | 06/30/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, DCF model revisions for yrs. 6 - 10 growth in EBITDA and CapEx based on management opinions, modeling of long term growth rate in year 11, 3 hrs. |
| Bliss, Fred | 06/29/09 | 06/30/09 | 560.00 | 5.00 | 2,800.00 | Charter Fresh Start, Revised DCF modeling for LTGR in yr. 11, revise tangible asset fair values for contributory charges, run new modeling, 5 hrs. |
| Bliss, Fred | 06/30/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Review of Company Specific Risk PRemium in light of revised Yrs. 6 - 10 growth projections in EBITDA and CapEx and LTGR in Yr. 11, run sensitivity on DCF models, 2 hrs. |
| | | | | 32.00 | 17,920.00 | |
| | | | | | | |
| Joshi, Omkar | 06/01/09 | 06/06/09 | 300.00 | 3.00 | 900.00 | summary of values file |
| Joshi, Omkar | 06/03/09 | 06/06/09 | 300.00 | 3.00 | 900.00 | summary of values file |
| Joshi, Omkar | 06/08/09 | 06/13/09 | 300.00 | 2.00 | 600.00 | double check summary file; BEV goodwill IRR calc |
| Joshi, Omkar | 06/09/09 | 06/13/09 | 300.00 | 4.00 | 1,200.00 | BEV Model QC |
| Joshi, Omkar | 06/10/09 | 06/13/09 | 300.00 | 2.00 | 600.00 | company write up |
| Joshi, Omkar | 06/11/09 | 06/13/09 | 300.00 | 4.00 | 1,200.00 | guideline company model |
| Joshi, Omkar | 06/12/09 | 06/13/09 | 300.00 | 2.00 | 600.00 | chtr report |
| Joshi, Omkar | 06/15/09 | 06/20/09 | 300.00 | 4.00 | 1,200.00 | report - com review |
| Joshi, Omkar | 06/16/09 | 06/20/09 | 300.00 | 5.00 | 1,500.00 | customer connections historical cost file plant historical cost file |
| Joshi, Omkar | 06/17/09 | 06/20/09 | 300.00 | 6.00 | 1,800.00 | finish plant hist cost file, customer connections fair value alloc file, cable headend historical cost and fv alloc file |
| Joshi, Omkar | 06/18/09 | 06/20/09 | 300.00 | 5.00 | 1,500.00 | analyze mkt research reports, trademark write up (report) |
| Joshi, Omkar | 06/19/09 | 06/20/09 | 300.00 | 4.00 | 1,200.00 | guideline co write up (report) |
| Joshi, Omkar | 06/22/09 | 06/30/09 | 300.00 | 5.00 | 1,500.00 | guideline co write up |
| Joshi, Omkar | 06/23/09 | 06/30/09 | 300.00 | 3.00 | 900.00 | guideline co write up |
| Joshi, Omkar | 06/24/09 | 06/30/09 | 300.00 | 2.00 | 600.00 | report |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Joshi, Omkar | 06/25/09 | 06/30/09 | 300.00 | 2.00 | 600.00 | report |
| Joshi, Omkar | 06/26/09 | 06/30/09 | 300.00 | 4.00 | 1,200.00 | report |
| Joshi, Omkar | 06/29/09 | 06/30/09 | 300.00 | 1.00 | 300.00 | sum of val & other file update |
| | | | | 61.00 | 18,300.00 | |
| | | | | | | |
| Warner, Jamie | 06/05/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Charter- Discussed mulitple scenarios for the project. Updated WACC model. |
| Warner, Jamie | 06/08/09 | 06/13/09 | 300.00 | 1.00 | 300.00 | Update WACC |
| | | | | 2.00 | 600.00 | |
| | | | | | | |
| Yu, Mengmeng | 06/10/09 | 06/13/09 | 300.00 | 0.50 | 150.00 | QC Check DCF Model Calculation |
| Yu, Mengmeng | 06/11/09 | 06/13/09 | 300.00 | 2.00 | 600.00 | QC Check DCF Model Calculation |
| Yu, Mengmeng | 06/12/09 | 06/13/09 | 300.00 | 2.00 | 600.00 | QC Check DCF Model Calculation |
| | | | | 4.50 | 1,350.00 | |
| **Total Financial Management** | | | | **105.75** | **39,680.00** | |

**Project Management**

| | | | | | | |
|---|---|---|---|---|---|---|
| Alonzo, Kathy | 06/07/09 | 06/13/09 | 120.00 | 8.50 | 1,020.00 | Admin/Billing time moved from JP Morgan and Fin Analysis to Project Mgmt |
| Alonzo, Kathy | 06/10/09 | 06/13/09 | 120.00 | 2.00 | 240.00 | Begin organizing hrs for Monthly Fee Statement |
| Alonzo, Kathy | 06/11/09 | 06/13/09 | 120.00 | 1.00 | 120.00 | Monthly Fee Statement-Draft |
| Alonzo, Kathy | 06/12/09 | 06/13/09 | 120.00 | 1.00 | 120.00 | Prepare final Monthly Fee Statement, fedex, create Lawson invoice |
| | | | | 12.50 | 1,500.00 | |
| | | | | | | |
| Bliss, Fred | 06/01/09 | 06/06/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Review status of tangible assets and develop summary of values for transmitting asset fair values, 2 hrs. |
| Bliss, Fred | 06/04/09 | 06/06/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Weekly Status Call, Conference call with T. Degnan & EY on NOL valuation, addition of CC VIII entity to project scope, memo regarding layering of fair values back to historical costs and difficulties with inconsistencies between equipment inventories and hsitorical cost, 8 hrs. |
| Bliss, Fred | 06/05/09 | 06/06/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Discussions with J. Buscher and Scott Lueke-EY regarding matching Fair Values to historical costs, 2 hrs. |
| Bliss, Fred | 06/09/09 | 06/13/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Complete and review Summary of Values, email Summary of Values to Charter, 4 hrs. |
| Bliss, Fred | 06/11/09 | 06/13/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Weekly Status Call, 2 hrs. |
| Bliss, Fred | 06/12/09 | 06/13/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Call with Baldes, Degnan & EY on reconciliation of Fair Values to stock value, 2 hrs. |
| | | | | 20.00 | 11,200.00 | |
| | | | | | | |
| Kane, Jack | 06/03/09 | 06/06/09 | 560.00 | 2.00 | 1,120.00 | NOL Review |
| Kane, Jack | 06/24/09 | 06/30/09 | 560.00 | 1.00 | 560.00 | Addendum to engagement |
| | | | | 3.00 | 1,680.00 | |
| **Total Project Management** | | | | **35.50** | **14,380.00** | |



| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| O'Hara, Jack | 06/01/09 | 06/06/09 | 405.00 | 8.00 | 3,240.00 | Review RE values; valuation of improvements for locations that do not provide separate L+I values. |
| O'Hara, Jack | 06/02/09 | 06/06/09 | 405.00 | 2.00 | 810.00 | Real Estate valuation model - update locations with revised GLIDS. |
| O'Hara, Jack | 06/11/09 | 06/13/09 | 405.00 | 2.00 | 810.00 | Prepare real estate valuation summaries. |
| | | | | 12.00 | 4,860.00 | |
| **Total Real Estate** | | | | **12.00** | **4,860.00** | |
| | | | | | | |
| **Tangibles-Misc.** | | | | | | |
| Bliss, Fred | 06/08/09 | 06/13/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Economic Obsolescence of Texas KMA tangible assets, 2 hrs. |
| Bliss, Fred | 06/09/09 | 06/13/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Allocation of Fair Values back to historical cost layers, 6  hrs. |
| Bliss, Fred | 06/10/09 | 06/13/09 | 560.00 | 10.00 | 5,600.00 | Charter Fresh Start, Allocation of Fair Values back to historical cost layers, Backup schedules for Charter review process, 10 hrs. |
| Bliss, Fred | 06/11/09 | 06/13/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Allocate Fair Values back to historical cost layers, Backup schedules for Charter review process, 8 hrs. |
| Bliss, Fred | 06/12/09 | 06/13/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Allocation of historical costs back to historical cost layers, Comparison Schedule of Cost-Reproduction Cost and Replacement Cost ofr CPE, Customer Connects, Headend, Distribution Plant, 8 hrs. |
| Bliss, Fred | 06/13/09 | 06/13/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Allocation of Fair Values back to historical cost layers, Comparison Schedule of Cost-Reproduction Cost and Replacement Cost for Customer Connects, CPE, Headend and Distribution Plant, 6 hrs. |
| Bliss, Fred | 06/15/09 | 06/20/09 | 560.00 | 7.00 | 3,920.00 | Charter Fresh Start, Fair Value Allocations to Historical Cost Layers, 7 hrs. |
| Bliss, Fred | 06/16/09 | 06/20/09 | 560.00 | 4.00 | 2,240.00 | Charter Fresh Start, Fair Value Allocations to Historical Cost Layers, 4 hrs. |
| Bliss, Fred | 06/17/09 | 06/20/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Fair Value Allocations to Historical Cost Layers, Conference call with Marwan Fawaz, Kelly Ross, Jim Cuddihy & Jill Collins to review headend modeling, 6 hrs. |
| Bliss, Fred | 06/19/09 | 06/20/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Review headend revisions by Jim Cuddihy in response to 6-17 call with Charter, Fair Value Allocations to Historical Cost Layers, 6 hrs. |
| | | | | 63.00 | 35,280.00 | |
| | | | | | | |
| O'Hara, Jack | 06/10/09 | 06/13/09 | 405.00 | 4.00 | 1,620.00 | QC review of tang valuations (cust connects, plant, headend) |
| O'Hara, Jack | 06/25/09 | 06/30/09 | 405.00 | 3.00 | 1,215.00 | Prepare summary review file of Trend Model for certain tangible assets. |
| O'Hara, Jack | 06/26/09 | 06/30/09 | 405.00 | 4.00 | 1,620.00 | Prepare summary review file of Trend Model for additional tangible assets. |
| | | | | 11.00 | 4,455.00 | |
| **Total Tangibles-Misc.** | | | | **74.00** | **39,735.00** | |
| | | | | | | |
| **Tangibles-RCN Modeling** | | | | | | |
| Bliss, Fred | 06/01/09 | 06/06/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh start, Review and tsting of Distribution Plant, CPE and Customer Connections, 6 hrs. |
| Bliss, Fred | 06/02/09 | 06/06/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Review & testing of Distr. Plant & real estate, conference call with J. Collins, K. Ross, J. Heneghan & J. Cuddihy on status and open items regarding tangibles, respond to EY audit data backup, summary of values development, 8 hrs. |
| Bliss, Fred | 06/03/09 | 06/06/09 | 560.00 | 8.00 | 4,480.00 | Charter Fresh Start, Review & testing of Distribtuion Plant, review of real estate, development of Sumamry of |
| Bliss, Fred | 06/05/09 | 06/06/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, HE Support Eqp. review, Summary of Values development for tangible assets, review of headend preliminary results, complete headedn review schedule for Charter showing hsitorical csots, NBV and various appraisal anlayses, 6 hrs. |
| Bliss, Fred | 06/06/09 | 06/06/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Headend review, adjust headend appraisal for depreciation calcs from hsitorical cost |
| Bliss, Fred | 06/22/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Headend CAS modeling with JWC, 2 hrs. |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Bliss, Fred | 06/23/09 | 06/30/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Revisions per Charter review of tangibles, Cable Card quantities changes to CPE modeling, CAS modeling, 8 yr. useful life on customer connections-change trend modeling, then RCN modeling, 6 hrs. |
| Bliss, Fred | 06/24/09 | 06/30/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Revisions to tangible appraisal calcs to incorporate Charter revisions, Headend revisions, cable cards, CAS and customer connections, prepare revised review schedules, 6 hrs. |
| Bliss, Fred | 06/25/09 | 06/30/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Respond to Kelly Ross review questions, modify headend modeling depreciation to tie into trend analysis depreciation, 6 hrs. |
| Bliss, Fred | 06/26/09 | 06/30/09 | 560.00 | 6.00 | 3,360.00 | Charter Fresh Start, Revise headend modeling depreciation calculations to reflect trend analysis depreciation, 6 hrs. |
| Bliss, Fred | 06/27/09 | 06/30/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Customer Connection revisions from Charter's review of quantification modeling of inactive drops and pricing of interior drop labor for CB connects, 3 hrs. |
| Bliss, Fred | 06/29/09 | 06/30/09 | 560.00 | 3.00 | 1,680.00 | Charter Fresh Start, Complete revisions to Customer Connection modeling, prepare and send revised review schedules, prepare summary of values of tangibles by GLID, send schedule, 3 hrs. |
| Bliss, Fred | 06/30/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Charter Fresh Start, Revise Customer Connections CB depreciation modeling to reflect 8/10 year life per Jill Heneghan's review, prepare and send new review schedules including overall summary of values of tangible assets by GLID, 2 hrs. |
| | | | | 65.00 | 36,400.00 | |
| | | | | | | |
| Cuddihy, Jim | 06/01/09 | 06/06/09 | 500.00 | 8.00 | 4,000.00 | Headend modeling |
| Cuddihy, Jim | 06/02/09 | 06/06/09 | 500.00 | 6.00 | 3,000.00 | Headend modeling |
| Cuddihy, Jim | 06/04/09 | 06/06/09 | 500.00 | 8.00 | 4,000.00 | Headend modeling |
| Cuddihy, Jim | 06/05/09 | 06/06/09 | 500.00 | 6.00 | 3,000.00 | Headend and power modeling |
| Cuddihy, Jim | 06/09/09 | 06/13/09 | 500.00 | 2.00 | 1,000.00 | Plant and Headend Presentation Models |
| Cuddihy, Jim | 06/10/09 | 06/13/09 | 500.00 | 6.00 | 3,000.00 | Plant and Headend Presentation Models |
| Cuddihy, Jim | 06/11/09 | 06/13/09 | 500.00 | 3.00 | 1,500.00 | Plant and Headend Presentation Models |
| Cuddihy, Jim | 06/15/09 | 06/20/09 | 500.00 | 3.00 | 1,500.00 | Support prices to EY for Headend submissions |
| Cuddihy, Jim | 06/16/09 | 06/20/09 | 500.00 | 1.00 | 500.00 | Support prices to EY for Headend submissions |
| Cuddihy, Jim | 06/17/09 | 06/20/09 | 500.00 | 2.00 | 1,000.00 | Conference call to discuss models |
| Cuddihy, Jim | 06/18/09 | 06/20/09 | 500.00 | 6.00 | 3,000.00 | Adjust models based on conference call |
| Cuddihy, Jim | 06/19/09 | 06/20/09 | 500.00 | 8.00 | 4,000.00 | Adjust models based on conference call |
| Cuddihy, Jim | 06/22/09 | 06/30/09 | 500.00 | 6.00 | 3,000.00 | Modeling of CAS assets |
| Cuddihy, Jim | 06/24/09 | 06/30/09 | 500.00 | 3.00 | 1,500.00 | Telephony and other changes to models |
| Cuddihy, Jim | 06/25/09 | 06/30/09 | 500.00 | 4.00 | 2,000.00 | Telephony and other changes to models |
| Cuddihy, Jim | 06/26/09 | 06/30/09 | 500.00 | 3.00 | 1,500.00 | Telephony and other changes to models |
| Cuddihy, Jim | 06/29/09 | 06/30/09 | 500.00 | 1.00 | 500.00 | |
| | | | | 76.00 | 38,000.00 | |
| | | | | | | |
| O'Hara, Jack | 06/02/09 | 06/06/09 | 405.00 | 6.00 | 2,430.00 | HE support Eq. valuation. |
| O'Hara, Jack | 06/04/09 | 06/06/09 | 405.00 | 9.00 | 3,645.00 | Charter HE support eg. valuation. |
| O'Hara, Jack | 06/05/09 | 06/06/09 | 405.00 | 2.50 | 1,012.50 | HE support eq valuation and summary of values. |
| O'Hara, Jack | 06/11/09 | 06/13/09 | 405.00 | 4.00 | 1,620.00 | Prepare valuation summaries for HE Support Eq. |
| | | | | 21.50 | 8,707.50 | |
| **Total Tangibles-RCN Modeling** | | | | **162.50** | **83,107.50** | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| **JP Morgan Matter** | | | | | | |
| Bliss, Fred | 06/15/09 | 06/20/09 | 560.00 | 1.00 | 560.00 | Charter-JP Morgan Matter, Call with Dan Donovan & Ryan Bowers about scheduling deposition, 1 hr. |
| Bliss, Fred | 06/16/09 | 06/20/09 | 560.00 | 4.00 | 2,240.00 | Charter-JP Morgan Matter, Deposition prep with Bridget O'Connor and Ryan Bowers, 4 hrs. |
| Bliss, Fred | 06/17/09 | 06/20/09 | 560.00 | 4.00 | 2,240.00 | Charter-JP Morgan Matter, Prep for deposition, 4 hrs |
| Bliss, Fred | 06/18/09 | 06/20/09 | 560.00 | 8.00 | 4,480.00 | Charter-JP Morgan Matter, depostion in Winston Strawn's NYC offices, 9 hrs. |
| Bliss, Fred | 06/19/09 | 06/20/09 | 560.00 | 2.00 | 1,120.00 | Charter-JP Morgan Matter, file material from depisition, review deposition with J. Kane, 2 hrs. |
| Bliss, Fred | 06/30/09 | 06/30/09 | 560.00 | 4.00 | 2,240.00 | Read FTI report, coordinate with Ryan Bowers on Oct-08 workpapers provided to K&E, 4 hrs. |
| | | | | 23.00 | 12,880.00 | |
| Kane, Jack | 06/26/09 | 06/30/09 | 560.00 | 3.00 | 1,680.00 | Review Taylor/FTI Report |
| Kane, Jack | 06/30/09 | 06/30/09 | 560.00 | 4.00 | 2,240.00 | Review Taylor/FTI Report; meeting with attorney |
| | | | | 7.00 | 3,920.00 | |
| Sherman, Henry | 06/29/09 | 06/30/09 | 500.00 | 1.00 | 500.00 | Meeting with attorney with Jack Kane |
| | | | | 1.00 | 500.00 | |
| **Total JP Morgan Matter** | | | | **31.00** | **17,300.00** | |
| | | | | | | |
| **Debt Valuation** | | | | | | |
| Erdfarb, Dov | 06/16/09 | 06/20/09 | 225.00 | 0.50 | 112.50 | Researched pricing information for the debt in Charter's Financial Reports |
| | | | | 0.50 | 112.50 | |
| Fogertey, Margaret | 06/02/09 | 06/06/09 | 225.00 | 2.50 | 562.50 | Market/Industry analysis |
| Fogertey, Margaret | 06/03/09 | 06/06/09 | 225.00 | 3.50 | 787.50 | Market/Industry analysis |
| Fogertey, Margaret | 06/04/09 | 06/06/09 | 225.00 | 2.00 | 450.00 | Market/Industry analysis |
| | | | | 8.00 | 1,800.00 | |
| Forstmann, Stephan | 05/26/09 | 06/09/09 | 560.00 | 2.00 | 1,120.00 | Review of Draft Analysis |
| Forstmann, Stephan | 06/03/09 | 06/09/09 | 560.00 | 0.50 | 280.00 | Review of Draft Analysis |
| Forstmann, Stephan | 06/05/09 | 06/06/09 | 560.00 | 0.50 | 280.00 | Review of Draft Analysis |
| | | | | 3.00 | 1,680.00 | |
| Rivera, Santiago | 06/12/09 | 06/13/09 | 405.00 | 2.00 | 810.00 | Review draft report and analysis |
| | | | | 2.00 | 810.00 | |
| Salvatori, Peter | 06/01/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Internal D&P discussions with Stephan Forstmann and Santiago Rivera surrounding Charter pro forma financials and debt positioning within the capital structure |
| Salvatori, Peter | 06/02/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Market/industry analysis |
| Salvatori, Peter | 06/03/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Market/industry analysis and status call with Tom Degan |
| Salvatori, Peter | 06/04/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Market/industry analysis |
| Salvatori, Peter | 06/05/09 | 06/06/09 | 300.00 | 1.00 | 300.00 | Internal D&P discussions with Stephan Forstmann and Santiago Rivera surrounding valuation approaches to implement in valuing Charter debt |
| Salvatori, Peter | 06/06/09 | 06/06/09 | 300.00 | 5.00 | 1,500.00 | Built loan model to generate implied discount rates from broker/dealer quotes |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Salvatori, Peter | 06/10/09 | 06/13/09 | 300.00 | 10.00 | 3,000.00 | Built a discounted cash flow model to apply to Charter's debt securities.  Selected discount rates based on implied yields generated from loan model.  Started laying out schedules summarizing results and provided Santiago Rivera with a preliminary summary of results generated from DCF analysis. |
| Salvatori, Peter | 06/11/09 | 06/13/09 | 300.00 | 10.00 | 3,000.00 | Implemented internal feedback into model/schedules.  Performed additional market research and started writing the valuation report. |
| Salvatori, Peter | 06/16/09 | 06/20/09 | 300.00 | 8.00 | 2,400.00 | Completed a draft valuation report and circulated to internal team.  Implemented feedback into report. |
| Salvatori, Peter | 06/18/09 | 06/20/09 | 300.00 | 1.00 | 300.00 | Call to discuss valuation procedures with Charter management. |
| | | | | 39.00 | 11,700.00 | |
| Tebbe, Michael | 06/04/09 | 06/06/09 | 225.00 | 0.50 | 112.50 | Library Research |
| | | | | 0.50 | 112.50 | |
| **Total Debt Valuation** | | | | **53.00** | **16,215.00** | |

**NOL Review**

| | | | | | | |
|---|---|---|---|---|---|---|
| Borresen, Andrew | 06/01/09 | 06/06/09 | 560.00 | 1.00 | 560.00 | Review LLC basis issues and implications for prior losses and COD income. |
| Borresen, Andrew | 06/03/09 | 06/06/09 | 560.00 | 1.00 | 560.00 | Conference call with Brian Knodson of E&Y to review isues related to the Model; subsequent meeting with Fred Bliss, Jack Kane and Pat Walsh to discuss status of the tax NOL project. |
| Borresen, Andrew | 06/04/09 | 06/06/09 | 560.00 | 2.00 | 1,120.00 | Update the deliverable related to the points/issues on the E&Y Tax NOL model. |
| Borresen, Andrew | 06/08/09 | 06/13/09 | 560.00 | 1.00 | 560.00 | Administrative tasks related to project including analysis of time and expenses; follow-up with Fred Bliss and Jack Kane re Tax NOL deliverable. |
| | | | | 5.00 | 2,800.00 | |
| **Total NOL Review** | | | | **5.00** | **2,800.00** | |

**Valuation of CC VIII**

| | | | | | | |
|---|---|---|---|---|---|---|
| Kaes, Frederick C. | 06/08/09 | 06/13/09 | 405.00 | 3.00 | 1,215.00 | Analysis of Charter SEC filings, analyst reports and legal entity organization chart. |
| Kaes, Frederick C. | 06/09/09 | 06/13/09 | 405.00 | 3.00 | 1,215.00 | Analysis of Charter SEC filings, analyst reports and legal entity organization chart / Analysis of CC VIII historical business operations |
| Kaes, Frederick C. | 06/10/09 | 06/13/09 | 405.00 | 3.00 | 1,215.00 | Analysis of CC VIII long-range plan |
| Kaes, Frederick C. | 06/11/09 | 06/13/09 | 405.00 | 3.00 | 1,215.00 | Analysis of CC VIII long-range plan and historical financials / correspondence with client |
| Kaes, Frederick C. | 06/12/09 | 06/13/09 | 405.00 | 3.00 | 1,215.00 | Analysis of CC VIII 2009 budget and reconciliation to 2009 projections from long-range plan |
| Kaes, Frederick C. | 06/15/09 | 06/20/09 | 405.00 | 4.00 | 1,620.00 | Analysis of CC VIII 2009 budget and reconciliation to 2009 projections from long-range plan |
| Kaes, Frederick C. | 06/16/09 | 06/20/09 | 405.00 | 4.00 | 1,620.00 | Analysis of CC VIII 2005 amended shareholder agreement / correspondence with client |
| Kaes, Frederick C. | 06/17/09 | 06/20/09 | 405.00 | 4.00 | 1,620.00 | Preparation of discounted cash flow analysis, weighted average cost of capital and supporting operating metrics |
| Kaes, Frederick C. | 06/18/09 | 06/20/09 | 405.00 | 4.00 | 1,620.00 | Preparation of discounted cash flow analysis, weighted average cost of capital and supporting operating metrics |
| Kaes, Frederick C. | 06/19/09 | 06/20/09 | 405.00 | 4.00 | 1,620.00 | Preparation of discounted cash flow analysis, weighted average cost of capital and supporting operating metrics |
| Kaes, Frederick C. | 06/22/09 | 06/30/09 | 405.00 | 7.00 | 2,835.00 | Preparation of discounted cash flow analysis, weighted average cost of capital and supporting operating metrics |
| Kaes, Frederick C. | 06/23/09 | 06/30/09 | 405.00 | 6.00 | 2,430.00 | Reconciliation of CC VIII discounted cash flow (DCF) analysis to Charter Communications, Inc. DCF |
| Kaes, Frederick C. | 06/24/09 | 06/30/09 | 405.00 | 6.00 | 2,430.00 | Preparation of first draft business enterprise valuation schedules and initial MD review |
| | | | | 54.00 | 21,870.00 | |



**Charter Communications, Inc.**
**Individual Hours with Comments - Period: 6/1/09 - 6/30/09**

| Resource Name | Tran Dt | Post Dt | Std Rt | Hours | Fee | Comments |
|---|---|---|---|---|---|---|
| Kane, Jack | 06/25/09 | 06/30/09 | 560.00 | 2.00 | 1,120.00 | Review CC VIII Analysis |
| | | | | 2.00 | 1,120.00 | |
| **Total Valuation of CC VIII** | | | | **56.00** | **22,990.00** | |
| **TOTAL HOURS/FEE** | | | | **534.75** | **241,067.50** | |



# EXHIBIT B

| | | | |
|---|---|---|---|
| **Company Name:** | **Charter Communications, Inc.** | | |
| **Period:** | **3/27/09 - 6/30/09** | | |
| **Project Code:** | **27930** | | |

| CATEGORY | March-April | May | June | TOTAL |
|---|---|---|---|---|
| Airfare | 1,996.40 | 5,391.60 | 22.00 | $ 7,410.00 |
| Train | 105.00 | 16.50 | 5.50 | $ 127.00 |
| Hotel | 333.48 | 1,163.76 | | $ 1,497.24 |
| Meals | 120.20 | 318.33 | 24.00 | $ 462.53 |
| Messenger & Delivery | | | | $ - |
| Miscellaneous | 1.59 | | | $ 1.59 |
| Office Supplies | | | | $ - |
| Parking/Transportation | 537.99 | 706.86 | 82.15 | $ 1,327.00 |
| Reproduction/Faxes (Eq) | - | | | $ - |
| Postage/Fedex | | 63.49 | 68.15 | $ 131.64 |
| Professional Services | 258.50 | 6,334.41 | 103.40 | $ 6,696.31 |
| Research | - | | | $ - |
| Subs. & Library | | | | $ - |
| Telephone | | | | $ - |
| Travel | | | | $ - |
| **TOTALS** | **$ 3,353.16** | **$ 13,994.95** | **$ 305.20** | $ 17,653.31 |
| Billed | 3353.16 | 13994.95 | 305.2 | 17653.31 |
| Variance | $ - | $ - | $ - | $ - |

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) Case No. 09-11435 (JMP) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING THE EMPLOYMENT
AND RETENTION OF DUFF & PHELPS, LLC AS
VALUATION CONSULTANTS FOR THE DEBTORS AND
DEBTORS IN POSSESSION <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO THE PETITION DATE**

Upon the application (the "<u>Application</u>")[1] of the above captioned Debtors

(collectively, the "<u>Debtors</u>")[2] for the entry of an order authorizing the Debtors to employ and

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[2]   The Debtors in these cases include: Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.; CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-


0911435090415000000000009

retain Duff & Phelps, LLC ("Duff & Phelps") as their valuation consultants ("Valuation Consultants") effective nunc pro tunc to the Petition Date, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules 2014-1 and 2016-1; the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Court having reviewed the Application and the Kane Declaration; the Court being satisfied based on the representations made in the Application and the Kane Declaration that (a) Duff & Phelps does not hold or represent an interest adverse to the Debtors' estates and (b) Duff & Phelps is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; it appearing to the Court that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and good, adequate and sufficient cause has been shown to justify the immediate entry of this order; and after due deliberation and sufficient cause appearing therefor, it is ORDERED that:

1.     The Application is granted as set forth herein in its entirety.

---

CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO, LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

2.     The Debtors are authorized to employ and retain Duff & Phelps as its Valuation Consultants in accordance with the terms and conditions of the Engagement Letter (which is hereby approved), effective nunc pro tunc to the Petition Date.

3.     Duff & Phelps is authorized to render professional services to the Debtors as described in the Engagement Letters.

4.     Duff & Phelps shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the Office of the United States Trustee for the Southern District of New York and any other applicable procedures and orders of the Court.

5.     All requests of Duff & Phelps for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Duff & Phelps be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

6.     In no event shall Duff & Phelps be indemnified if the Debtors or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Duff & Phelps' own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

7.     In the event Duff & Phelps seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such

attorneys shall be annexed to Duff & Phelps' own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

8.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

9.     Notwithstanding the possible applicability of Rules 6004(h), 7062, 9014 of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

New York, New York                              *s/ James M. Peck*
Date:  April 15, 2009                               United States Bankruptcy Judge

# EXHIBIT D

JOHN E. KANE CFA, ASA, CBA
*Managing Director*
TEL 973-775-0034
FAX 973-775-3100
jack.Kane@duffandphelps.com

## DUFF&PHELPS

March 17, 2009

**Private and Confidential**

Mr. Kevin D. Howard
Vice President, Controller and Chief Financial Officer
Charter Communications, Inc.
12405 Powerscourt Drive
St Louis, MO 63131

**Subject: Engagement Letter for Valuation Services in Connection with the Estimation of the Fair Value of Certain Tangible Assets, Intangible Assets and Other Assets and Liabilities of Charter Communications, Inc.**

Dear Mr. Howard:

This engagement letter (the "Engagement Letter") confirms that we, Duff & Phelps, LLC ("Duff & Phelps"), have been retained by you, Charter Communications, Inc. ("Charter" or the "Company"), to provide the services (the "Services") set out below in connection with the estimation of the Fair Value and Remaining Useful Life ("RUL") (where applicable) of certain tangible assets, intangible assets and other assets and liabilities ("Subject Assets and Liabilities") of Charter. Collectively, this arrangement is the "Engagement". The valuation date will be as of the date the Company emerges bankruptcy, which is currently expected to be August 31, 2009 (the "Valuation Date").

Our proposal dated March 5, 2009 entitled: *Charter Communications, Inc., Proposal to Provide Fresh Start Accounting Valuation Services* (the "Proposal"), is incorporated herein by reference.

**Scope of Services**

It is understood that the Services to be provided will be used to assist Charter management ("Management") with an allocation of the "Reorganization Value" for financial reporting purposes in accordance with Statement of Position 90-7, *Financial Reporting by Entities in Reorganization Under the Bankruptcy Code* ("SOP 90-7"), Statement of Financial Accounting Standards No. 141, *Business Combinations* (revised 2007) ("SFAS 141R") and Statement of Financial Accounting Standards No. 157, *Fair Value Measurements* ("SFAS 157"). This process is generally referred to as "Fresh Start Accounting". Further, we understand that the Services to be provided will be used for tax reporting. As part of the Engagement, we will:

a) Identify those intangible assets to be recognized apart from goodwill pursuant to SFAS 141R;

b) Estimate the RULs of the Subject Assets (where applicable); and specifically for intangible assets, estimating RULs in accordance with Statement of Financial Accounting Standards No. 142, *Goodwill and Other Intangible Assets* ("SFAS 142"); and

c) Identify those assets and liabilities arising from contingencies to be recognized pursuant to SFAS 141R. We have assumed for the purpose of this Letter that there are no contingencies.

The following list of assets and liabilities has been compiled based on (1) our current understanding of the business and assets of the Company, (2) our experience with similar purchase price allocation projects, (3) the examples of identifiable intangible assets provided in SFAS 141R (Appendix A), and (4) the guidance provided in SFAS 141R regarding the initial recognition of assets and liabilities arising from contingencies. However, in the course of our valuation, we will also investigate whether other assets and liabilities are subject to separate recognition and valuation.

The results of the Engagement will be the preparation of an analysis of the Fair Value and RUL of the Subject Assets, and the Fair Value of the Subject Liabilities as of the Valuation Date. We anticipate estimating the Fair Value and RUL (where applicable) of the following:

- Tangible Assets:
  - Real Property
  - Personal Property

- Intangible Assets:
  - Customer Relationships
  - Franchise Marketing Rights
  - Trademarks & Trade Names
  - Leasehold Interests
  - Other Material Contracts

- Other Assets and Liabilities:
  - Financial Assets and Liabilities

The fair value of tangible assets will be estimated and identified at the legal entity level and the fair value of intangible assets will be estimated and identified at the reporting unit level. Our analysis will incorporate Management's determination of the Fair Value or other amounts of any

DUFF & PHELPS

assets and liabilities excluded from the identified Subject Assets and Liabilities ("Excluded Assets and Liabilities") which include the following:

- Current Assets
- Current Liabilities

In the course of our valuation analysis, we will use and rely upon financial and other information, including prospective financial information and Fair Value or other amounts of the Excluded Assets and Liabilities, obtained from Management and from various public, financial, and industry sources. Our conclusion is dependent on such information being complete and accurate in all material respects. We will not accept responsibility for the accuracy and completeness of such provided information.

### Definition of Value

Financial Reporting

SFAS 141R uses the **Fair Value** definition in SFAS 157, which defines Fair Value as "the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date" ("Fair Value").

SFAS 157 states that a fair value measurement assumes the highest and best use of the asset by market participants, considering the use of the asset that is physically possible, legally permissible and financially feasible at the measurement date. In broad terms, highest and best use refers to the use of an asset by market participants that would maximize the value of the asset or the group of assets within which the asset would be used. Moreover, the highest and best use is based on the use of the asset by market participants, even if the intended use of the asset by the acquiror is different.

The highest and best use of the asset by market participants establishes the valuation premise used to measure the Fair Value of the asset: 1) in-use, if the asset would provide maximum value to market participants principally through its use in combination with other assets as a group, installed or otherwise configured for use; or, 2) in-exchange, if the asset would provide maximum value to market participants principally on a standalone basis.

Federal Tax Reporting

The value standard for federal tax reporting is Fair Market Value. Fair Market Value is defined as the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts (Estate Tax Regs., Sec. 20.2031-1(b); Rev. Rul. 59-60, 1959-1 C.B. 237). In estimating Fair Market Value, we will assume the Company's existing business to be ongoing.

DUFF & PHELPS

3

While we believe that the Fair Value definition shown above is consistent with the Internal Revenue Code definition of Fair Market Value, we will analyze the Subject Assets and Liabilities for any divergence.

**Valuation Approaches**

Section IV of the Proposal provides an overview of the methodologies that are expected to be utilized in the Engagement.

**Procedures**

The procedures that we will follow will likely include, but will not be limited to, the following:

- Review and analysis of the Reorganization Value provided by the Company's investment bankers/financial advisors;

- Analysis of conditions in and the economic outlook for, the relevant industry segment(s) of the Company;

- Analysis of general market data, including economic, governmental, and environmental forces;

- Discussions concerning the history, current state, and future operations of the Company with Management;

- Discussions with Management to obtain an explanation and clarification of data provided;

- Analysis of financial and operating projections including revenues, operating margins (e.g., earnings before interest and taxes), working capital investments, and capital expenditures based on the Company's historical operating results, industry results and expectations, and Management representations (such projections will form the basis for the Income Approach) as it relates to the Subject Assets and Liabilities; and

- Analysis of other facts and data considered pertinent to these valuations to arrive at a conclusion of Fair Value and RULs (where applicable).

**Form of Report and Timetable**

At the conclusion of our analysis, we will provide you with a written report(s). The "Report" will include a narrative description of the methodologies used to estimate the Fair Value of the Subject Assets and Liabilities and supporting exhibits containing calculations leading to our valuation and RUL conclusions. Our Report or advice will consider or provide conclusions with respect to Fair Market Value for federal tax matters.

DUFF & PHELPS

4

We are ready to begin our work immediately upon our receipt of the signed Engagement Letter. A workplan and timeline is presented in Section V of the Proposal.

Once you have read the draft Report, we will issue our final Report bearing the firm's signature. We will liaise closely with you as to this timetable and in the event that we anticipate that the timetable cannot be met, we shall notify you as soon as reasonably possible to agree upon an adjusted timetable.

**In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Duff and Phelps will provide the following disclosure on all communications with the Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or matter addressed herein."**

**Staffing and Fees**

Jack Kane, will be the Managing Director in charge of the Services on behalf of Duff & Phelps. Fred Bliss, Managing Director, will oversee the day-to-day aspects of our work program. Paul Barnes, Managing Director and Global Leader of the Office of Professional Practice will be available for technical advice as needed. We will call upon additional experienced staff when required.

Our fees for the Services to be provided reflect the complexity of the Engagement, the time scale for its completion, the caliber of staff engaged, and the value of the Services provided. Based upon our understanding of the Engagement, we estimate that our fees for the Services will range between $500,000 and $550,000 exclusive of direct engagement and administrative expenses. Expenses, some of which will be allocated, will be billed in addition to our professional fees. Ultimately, our fee will be a product of the amount and nature of the work requested and the timeframe for its completion. We bill on a periodic basis. The first invoice, representing estimated fees and expenses for the first month, will be invoiced upon receipt of the signed engagement letter.

This Engagement Letter is conditional upon Duff & Phelps being named as a professional in the bankruptcy proceeding. As such, we expect our invoices be paid on a commercial basis and payment to us will not be subject to clawback.

The fee range includes a reasonable number of hours to consult with your independent auditors (KPMG) as to our methodology and conclusions. Authorized scope changes (excluding litigation support) and consultations in support of our draft or final valuation Report(s) and conclusions (and related methodology) with the Securities and Exchange Commission, the Internal Revenue Service, and/or any other authorized third party recipients (excluding your

*DUFF & PHELPS*

independent auditor) will be billed on an hourly basis in accordance with the prevailing hourly rates which are currently as follows:

| Staff Classification | Rate ($/hour) |
| --- | --- |
| Managing Director | 560 |
| Director | 500 |
| Vice President | 405 |
| Senior Associate | 300 |
| Analyst | 225 |
| Administrative | 120 |

These rates are exclusive of direct engagement and administrative expenses.

**Acknowledgement and Acceptance**

In accordance with Duff & Phelps policy, it is necessary that we receive an executed copy of this Engagement Letter and the attached Terms and Conditions (to which this Engagement is subject) prior to commencement of the Services. If the scope and terms of the Engagement Letter and the attached Terms and Conditions are acceptable, please acknowledge your acceptance by signing the confirmation below and returning this Engagement Letter to us at the above address and e-mailing (jack.kane@duffandphelps.com) or faxing (973-775-0034) a copy to us.

Please do not hesitate to contact me if you have any questions or amendments.

We appreciate this opportunity to be of service.

Yours sincerely,

By:   John E. Kane
      Managing Director
      Duff & Phelps, LLC

Copies to:   Fred Bliss, Managing Director
             Engagement Admin Files

JEK/kav/el-howard fresh start

DUFF & PHELPS

6

Confirmation of Terms of Engagement

Subject: **Engagement Letter for Valuation Services in Connection with the Estimation of the Fair Value of Certain Tangible Assets, Intangible Assets, and Other Assets and Liabilities of Charter Communications, Inc.**

Having read this Engagement Letter from Duff & Phelps, LLC and the attached Terms and Conditions, we acknowledge acceptance of and agree to engage Duff & Phelps, LLC in accordance with the terms and provisions of this Engagement Letter and the attached Terms and Conditions.

_K. D. Howard_                         Date: _3/19/09_

Signed:        Mr. Kevin D. Howard
Position:      Vice President, Controller and Chief Accounting Officer
On behalf of:  Charter Communications, Inc.

cc:            Fred Bliss Managing Director
               Engagement Admin Files

JEK/ka/el-howard fresh start

DUFF & PHELPS

**B**

## Attachment to the Engagement Letter

### Terms and Conditions

The following are the terms and conditions (the "Terms and Conditions") on which we will provide the services (the "Services") set forth in the attached engagement letter (the "Engagement Letter"). Together, the Terms and Conditions and the Engagement Letter are referred to as the "Contract," which forms the entire agreement between Duff & Phelps, LLC ("Duff & Phelps") and you relating to the Services.

### Fees

1. Our invoices are payable upon receipt. If we do not receive payment of any invoice within 45 days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to suspend provision of the Services until all sums due are paid in full.

2. We have no responsibility to update any Report, analysis or any other document relating to this Engagement for any events or circumstances occurring subsequent to the date of such Report, analysis or other document. Any such subsequent consultations or work shall be subject to arrangements at our then standard fees plus expenses.

3. Either party may request changes to the Services. We shall work with you to consider and, if appropriate, to vary any aspect of the Engagement, subject to payment of reasonable additional fees and a reasonable additional period to provide any additional services. Any variation to this Contract, including any variation to fees, services, or time for performance of the Services, shall be set forth in a separate engagement letter executed by both parties which shall form part of this Contract.

4. Our performance of the Services is dependent upon you providing us with accurate and timely information and assistance as we may reasonably require from time to time. You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete. You shall notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon. *The inability to supply us with the agreed upon information in a useable form within the amount of time reasonably required by us may increase fees and delay completion. Additionally, in the event unforeseen complications are encountered which would significantly increase fees; we would discuss these with you and await your approval before proceeding.*

### Termination

5. Either party may terminate this Contract in the event that the other party has breached any material provision of this contract and such breach has not been cured within ten (10) days after receipt of written notice from the then non-breaching party.

6. Upon termination of this Contract, each party shall, upon written request from the other, return to the other all property and documentation of the other that is in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement in the Engagement, subject to our continuing confidentiality obligations hereunder.

K&E 14395958.1

7. The provisions included within "Fees", "Preservation of Confidential Information" and "Other Terms and Provisions" shall survive the termination or expiration of this Contract.

**Valuation Work Products and Report**

8. At the conclusion of the Engagement, we will prepare a draft Report detailing our valuation procedures and the results of our work. This Report will include, but will not be limited to, a narrative description of the methodologies used to estimate the Fair Value and Fair Market Value. Once you have read the draft Report and we have received your comments on it, we will issue our final Report bearing the signature of Duff & Phelps, LLC.

9. Prior to the finalization of the Services and the Report, we will confirm facts with Management. We may do this by providing you with drafts of the valuation analysis and the Report under the condition that in no circumstances are such drafts to be copied or given to other persons, except that it may be provided to the Company's independent auditors. We may also require a letter from you confirming representations made by you and Management upon which we have relied. In addition, with respect to any information provided by you and Management, we will require from you a written confirmation that, to the best of your knowledge and belief, such information was accurate and that no significant information essential to the Services or Report has been withheld from us.

10. Our Report will be based upon the information provided by and on behalf of you and Management. We assume no responsibility and make no representations with respect to the accuracy or completeness of any information provided by and on behalf of Management. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. You acknowledge that no reliance shall be placed on draft Reports, conclusions or advice, whether oral or written, issued by us since the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final Report or advice issued.

11. Any advice given or Report issued by us is provided solely for your use and benefit and only in connection with the Services that are provided hereunder. Except as required by law, you shall not provide such Report to any third party, except that it may be provided to the Company's independent auditors. Notwithstanding the foregoing, (i) you shall not refer to us either directly by name or indirectly as an independent valuation service provider (or by any other indirect reference or description), or to the Services, whether in any public filing or other document, without our prior written consent, which we may at our discretion grant, withhold, or grant subject to conditions, (ii) in addition to the foregoing prohibitions and requirements with respect to all third parties, submission of our report or any portion thereof to, or responding to any comment letter issued by, the Securities and Exchange Commission or its staff, or any written or verbal references to us, our Report or to the Services in such a response is subject to you providing us with prior notice, and allowing us to provide input as to the content of such response, (iii) our Report, when prepared for a tax reporting/planning purpose as stated in our engagement letter and/or Report, may be submitted to your tax counsel, tax advisors, and/or the IRS/specific tax authority if such Report submission is directly related to the stated tax reporting/planning purpose, and (iv) you agree to provide us with prior notice of, and the opportunity to participate in, any discussion, negotiation or settlement with the IRS or

DUFF & PHELPS                                    9

K&E 14395958.1

any such tax authority, to the extent that such discussion, negotiation or settlement could have a material effect on us or our estimate of Fair Market Value. In no event, regardless of whether consent or pre-approval has been provided, shall we assume any responsibility to any third party to which any advice or Report is disclosed or otherwise made available.

12. It is understood and agreed that the final Report resulting from this Engagement shall remain your property. To the extent that Duff & Phelps utilizes any of its property (including, without limitation, any hardware or software) in connection with this Engagement, such property shall remain the property of Duff & Phelps, and you shall not acquire any right or interest in such property or in any partially completed Report. We shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose our ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting our business (collectively, "Know-How") regardless of whether such Know-How is incorporated in any way in the final Report.

13. The scope of the final Report we will provide pursuant to the terms of this Contract will be limited to the scope as described in the Scope of Services section. In compliance with requirements imposed by the Internal Revenue Service, as stated in Circular 230, Duff and Phelps will provide the following disclosure on all communications with the Company: "We inform you that any US federal tax advice contained in this communication including any attachments is not intended or written to be used and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to any other party any transaction or matter addressed herein."

14. The Report or any results of our Services shall not constitute a Solvency Opinion or a Fairness Opinion and may not be relied upon by you or any other party as such. Furthermore, any analyses we perform should not be taken to supplant any procedures that you should undertake in your consideration of the transaction contemplated in connection with this engagement or any other past present or future transaction.

15. By its very nature, valuation work cannot be regarded as an exact science and the conclusions arrived at in many cases will of necessity be subjective and dependent on the exercise of individual judgment.

**Preservation of Confidential Information**

16. Neither party will disclose to any third party without the prior written consent of the other party any confidential information which is received from the other party for the purposes of providing or receiving the Services which if disclosed in tangible form is marked confidential or if disclosed otherwise is confirmed in writing as being confidential or, if disclosed in tangible form or otherwise, is manifestly confidential. Both of us agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us.

17. These restrictions will not apply to any information which: (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

K&E 14395958.1

18. Notwithstanding the foregoing, either party will be entitled to disclose confidential information of the other (i) to our respective insurers or legal advisors, or (ii) to a third party to the extent that this is required, by any court of competent jurisdiction, or by a governmental or regulatory authority or where there is a legal right, duty or requirement to disclose, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than two (2) business days notice in writing is first given to the other party.

## Other Terms and Provisions

19. Except in the event of our willful misconduct or fraud, in no event shall we be liable to you (or any person claiming through you) under this Contract, under any legal theory, for any amount in excess of the total professional fees paid by you to us under this Contract or any addendum to which the claim relates. In no event shall we be liable to you under this Contract under any legal theory for any consequential, indirect, lost profit or similar damages relating to or arising from our Services provided under this Contract.

20. You agree that no action or claims will be brought against any Duff & Phelps employees personally.

21. You agree to indemnify and hold harmless Duff & Phelps, its affiliates and their respective employees from and against any and all third party claims, liabilities, losses, costs, demands and reasonable expenses, including but not limited to reasonable legal fees and expenses, internal management time and administrative costs, relating to Services we render under this Contract or otherwise arising under this Contract. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from the gross negligence, willful misconduct or fraudulent acts of Duff & Phelps.

22. You accept and acknowledge that we have not made any warranties or guarantees, whether express or implied, with respect to the Services or the results that you may obtain as a result of the provision of the Services.

23. Except for your payment obligations, neither of us will be liable to the other for any delay or failure to fulfill obligations caused by circumstances outside our reasonable control.

24. This Contract constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any prior agreements (whether written or oral) between the parties regarding the subject matter hereof. This Contract may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

25. This Contract shall be governed by and interpreted in accordance with the internal laws of the State of New York and the courts of the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract.

# EXHIBIT E

Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

     - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors and Debtors in Possession
(Other than Charter Investment, Inc.)

     - and -

Albert Togut
Frank A. Oswald
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York  10119
Telephone:    (212) 594-5000
Facsimile:    (212) 967-4258

Counsel to the Debtor and Debtor in Possession
Charter Investment, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| CHARTER COMMUNICATIONS, INC., <u>et al.</u>, | ) ) Case No. 09-11435 (JMP) |
| Debtors. | ) ) ) Jointly Administered ) |

**SECOND SUPPLEMENTAL DECLARATION OF JOHN E. KANE IN SUPPORT
OF THE DEBTORS' APPLICATION TO EMPLOY AND RETAIN
DUFF & PHELPS LLC AS VALUATION CONSULTANTS FOR THE DEBTORS
AND DEBTORS IN POSSESSION <u>NUNC</u> <u>PRO</u> <u>TUNC</u> TO THE PETITION DATE**

I, John E. Kane, being duly sworn, state the following under penalty of perjury.

1.      I am over the age of 18 and competent to testify.  I am a Managing Director of

Duff & Phelps, LLC ("<u>Duff & Phelps</u>"), a leading global independent provider of financial

advisory and investment banking services.   Duff & Phelps employs approximately 1,200

employees, with headquarters in New York City, and offices in North America, Europe, and

Asia.

2.      On March 27, 2009 (the "<u>Petition Date</u>"), the above-captioned debtors and

debtors in possession (collectively, the "<u>Debtors</u>" or "<u>Charter</u>")[1] filed with this Court the

---

[1]      The Debtors in these cases include:  Ausable Cable TV, Inc.; Hometown TV, Inc.; Plattsburgh Cablevision, Inc.; Charter Communications Entertainment I, LLC; Falcon First Cable of New York, Inc.; Charter Communications, Inc.; Charter Communications Holding Company, LLC; CCHC, LLC; Charter Communications Holdings, LLC; CCH I Holdings, LLC; CCH I, LLC; CCH II, LLC; CCO Holdings, LLC; Charter Communications Operating, LLC; American Cable Entertainment Company, LLC; Athens Cablevision, Inc.; Cable Equities Colorado, LLC; Cable Equities of Colorado Management Corp.; CC 10, LLC; CC Fiberlink, LLC; CC Michigan, LLC; CC Systems, LLC; CC V Holdings, LLC; CC VI Fiberlink, LLC; CC VI Operating, LLC; CC VII Fiberlink, LLC; CC VIII Fiberlink, LLC; CC VIII Holdings, LLC; CC VIII Leasing of Wisconsin, LLC; CC VIII Operating, LLC; CC VIII, LLC; CCH I Capital Corp.; CCH I Holdings Capital Corp.; CCH II Capital Corp.;  CCO Fiberlink, LLC; CCO Holdings Capital Corp.; CCO NR Holdings, LLC; CCO Purchasing, LLC; Charter Advertising of Saint Louis, LLC; Charter Cable Leasing of Wisconsin, LLC; Charter Cable Operating Company, L.L.C.; Charter Cable Partners, L.L.C.; Charter Communications Entertainment, LLC; Charter Communications Entertainment I, DST; Charter Communications Entertainment II, LLC; Charter Communications Holdings Capital Corporation; Charter Communications Operating Capital Corp.; Charter Communications Properties LLC; Charter Communications V, LLC; Charter Communications Ventures, LLC; Charter Communications VI, LLC; Charter Communications VII, LLC; Charter Communications, LLC; Charter Distribution, LLC; Charter Fiberlink – Alabama, LLC; Charter Fiberlink AR-CCVII, LLC; Charter Fiberlink AZ-CCVII, LLC; Charter Fiberlink CA-CCO, LLC; Charter Fiberlink CA-CCVII, LLC; Charter Fiberlink CC VIII, LLC; Charter Fiberlink CCO, LLC; Charter Fiberlink CT-CCO, LLC; Charter Fiberlink – Georgia, LLC; Charter Fiberlink ID-CCVII, LLC; Charter Fiberlink – Illinois, LLC; Charter Fiberlink IN-CCO, LLC; Charter Fiberlink KS-CCO, LLC; Charter Fiberlink LA-CCO, LLC; Charter Fiberlink MA-CCO, LLC; Charter Fiberlink – Michigan, LLC; Charter Fiberlink – Missouri, LLC; Charter Fiberlink MS-CCVI, LLC; Charter Fiberlink NC-CCO, LLC; Charter Fiberlink NC-CCVII, LLC; Charter Fiberlink – Nebraska, LLC; Charter Fiberlink NH-CCO, LLC; Charter Fiberlink NM-CCO, LLC; Charter Fiberlink NV-CCVII, LLC; Charter Fiberlink NY-CCO, LLC; Charter Fiberlink NY-CCVII, LLC; Charter Fiberlink OH-CCO, LLC; Charter Fiberlink OK-CCVII, LLC; Charter Fiberlink OR-CCVII, LLC; Charter Fiberlink SC-CCO, LLC; Charter Fiberlink SC-CCVII, LLC; Charter Fiberlink – Tennessee, LLC; Charter Fiberlink TX-CCO, LLC; Charter Fiberlink UT-CCVII, LLC; Charter Fiberlink VA-CCO, LLC; Charter Fiberlink VT-CCO,

Debtors' Application for an Order Authorizing the Employment and Retention of Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 19] (the "<u>Application</u>"), in connection with the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>").

3.      On the Petition Date, the Debtors filed with this Court the Declaration of John E. Kane in Support of the Debtors' Application for an Order Authorizing the Employment and Retention of Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 19] (the "<u>Original Declaration</u>").

4.      On April 13, 2009, the Debtors filed with this Court the First Supplemental Declaration of John E. Kane in Support of the Debtors' Application to Employ and Retain Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 150] (the "<u>First Supplemental Declaration</u>").

5.      On April 15, 2009, the Court entered the Order Authorizing the Employment and Retention of Duff & Phelps, LLC as Valuation Consultants for the Debtors and Debtors in Possession <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to the Petition Date [Docket No. 177] (the "<u>Order</u>").

6.      I am familiar with the Original Declaration and the First Supplemental Declaration.

---

LLC; Charter Fiberlink WA-CCVII, LLC; Charter Fiberlink – Wisconsin, LLC; Charter Fiberlink WV-CCO, LLC; Charter Fiberlink, LLC; Charter Gateway, LLC; Charter Helicon, LLC; Charter Investment, Inc.; Charter RMG, LLC; Charter Stores FCN, LLC; Charter Video Electronics, Inc.; Dalton Cablevision, Inc.; Enstar Communications Corporation; Falcon Cable Communications, LLC; Falcon Cable Media, a California Limited Partnership; Falcon Cable Systems Company II, L.P.; Falcon Cablevision, a California Limited Partnership; Falcon Community Cable, L.P.; Falcon Community Ventures I, LP; Falcon First Cable of the Southeast, Inc.; Falcon First, Inc.; Falcon Telecable, a California Limited Partnership; Falcon Video Communications, L.P.; Helicon Partners I, L.P.; HPI Acquisition Co., L.L.C.; Interlink Communications Partners, LLC; Long Beach, LLC; Marcus Cable Associates, L.L.C.; Marcus Cable of Alabama, L.L.C.; Marcus Cable, Inc.; Midwest Cable Communications, Inc.; Pacific Microwave; Peachtree Cable TV, L.P.; Peachtree Cable T.V., LLC; Renaissance Media LLC; Rifkin Acquisition Partners, LLC; Robin Media Group, Inc.; Scottsboro TV Cable, Inc.; Tennessee, LLC; The Helicon Group, L.P.; Tioga Cable Company, Inc.; and Vista Broadband Communications, LLC.

7.     I submit this second supplemental declaration (the "Second Supplemental Declaration") in connection with the Application and the Order to provide additional disclosure required by Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Addendum to Engagement Letter**

8.     On June 9, 2009, the Debtors supplemented the engagement letter, dated as of March 17, 2009, by and between the Debtors and Duff & Phelps (the "Engagement Letter") with an addendum (the "Addendum"), attached hereto as **Exhibit A**, under which the Debtors confirmed they had retained Duff & Phelps to provide the services (the "Addendum Services") described below.

- Expansion of technical facilities to Physical System Identification ("PSID") level (Headend) instead of General Ledger Identification ("GLID") level and scoping expansion from 285 facilities to 694 facilities. The estimated fees for this service are $40,000.

- Review/develop Charter's allocation of asset values to Franchise Tax Authority ("FTA") level. The estimated fees for this service are $7,500 - $15,000.

- Allocate tangible asset fair values to historical cost years - 30 asset categories, 187 GLIDs. The estimated fees for this service are $50,000.

- Review of NOL Calculations with Charter management and Ernst & Young, L.L.P. Issue a negative assurance letter or not based upon results of review. The estimated fees for this service are $35,000.

- CC VIII, LLC business enterprise valuation and minority interest valuation. The estimated fees for this service are $35,000.

9.     The fees for the Addendum Services are governed by the hourly rates set forth in the Engagement Letter. These fees reflect the complexity of the engagement, the time required for its completion, the caliber of staff engaged, and the value of the Addendum Services

provided. Duff & Phelps estimate that the aggregate amount of fees for the Addendum Services will be approximately $175,000, exclusive of direct engagement and administrative expenses.

10.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Dated:  July 23, 2009

Respectfully submitted,

*/s/ John E. Kane*
John E. Kane
Managing Director, Duff & Phelps, LLC

K&E 15000797.

# EXHIBIT 1

## Addendum to Engagement Letter

JOHN E. KANE CFA, ASA, CBA
*Managing Director*
TEL 973-775-0034
FAX 973-718-3100
jack.kane@duffandphelps.com

# DUFF&PHELPS

June 9, 2009

**Private and Confidential**

Mr. Kevin D. Howard
Vice President & Chief Accounting Officer
Charter Communications, Inc.
12405 Powerscourt Drive
St. Louis, MO 63131

Subject:     **Addendum to our March 17, 2009 Engagement Letter and Retention Order for Valuation Services in Connection with Charter's Fresh Start Accounting.**

Dear Kevin:

This "Addendum" to our March 17, 2009 engagement letter (the "Engagement Letter") and the Retention Order dated April 15, 2009 (the "Retention Order") confirms that we, Duff & Phelps, LLC ("Duff & Phelps"), have been retained by you, Charter Communications, Inc. ("Charter" or the "Company"), to provide the services (the "Addendum Services") set out below including an estimate of the fees involved to accomplish each task.

1. Expansion of technical facilities to Physical System Identification ("PSID") level (Headend) instead of General Ledger Identification ("GLID") level and scoping expansion from 285 facilities to 694 facilities ($40,000).

2. Review/develop Charter's allocation of asset values to Franchise Tax Authority ("FTA") level ($7,500 - $15,000).

3. Allocate tangible asset fair values to historical cost years - 30 asset categories, 187 GLIDs ($50,000).

4. Review of NOL Calculations with Charter Management and E&Y.  Issue a negative assurance letter or not based upon results of the review ($35,000).

5. CC VIII business enterprise valuation and minority interest valuation ($35,000).

Our fees for the Addendum Services are governed by the hourly rates set forth in the Engagement Letter.  These fees reflect the complexity of the engagement, the time required for its completion, the caliber of staff engaged, and the value of the Addendum Services provided.

Based upon our understanding of the Addendum Services, we estimate that our fees for the Addendum Services are estimated to aggregate to be $175,000 exclusive of direct engagement and administrative expenses. Ultimately, our fees will be a product of the amount and nature of the work requested and the timeframe for its completion. We bill in accordance with the Retention Order.

**Acknowledgement and Acceptance**

The services provided under this Addendum are subject to the same terms and conditions of the Relationship Agreement. In accordance with Duff & Phelps policy, it is necessary that we receive an executed copy of this Addendum prior to commencement of the Addendum Services. If the scope and terms of the Addendum are acceptable, please acknowledge your acceptance by signing the confirmation below and returning the Addendum to us at the above address, and e-mailing (jack.kane@duffandphelps.com) a copy to us.

Please do not hesitate to contact me if you have any questions or amendments.

Yours sincerely,

By: John E. Kane
    Managing Director
    Duff & Phelps, LLC

JEK/ka/ el- Charter Fresh Start Addendum 1

---

*Duff & Phelps, LLC*

<u>Confirmation of Terms of Engagement</u>

**Subject:    Addendum to our March 17, 2009 Engagement Letter and Retention Order for Valuation Services in Connection with Charter's Fresh Start Accounting.**

Having read this Addendum from Duff & Phelps, LLC, we acknowledge acceptance of and agree to engage Duff & Phelps, LLC in accordance with the terms and provisions of this Addendum, the Engagement Letter and Retention Order.

Date:   6/24/09

| | |
|---|---|
| Signed: | Kevin D. Howard |
| Position: | Vice President & Chief Accounting Officer |
| On behalf of | Charter Communications, Inc. |

cc:        Fred Bliss, Managing Director

*Duff & Phelps, LLC*