Albert Togut
Frank A. Oswald
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Bankruptcy Counsel to Debtor
and Debtor in Possession,
Charter Investment, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                       :

In re:                                         :          Chapter 11
                                       :

CHARTER COMMUNICATIONS, INC., *et al.*,    :          Case No. 09-11435 (JMP)
                                       :

                    Debtors.       :          Jointly Administered
                                       :
---------------------------------------------------------------x

### FIRST INTERIM APPLICATION OF TOGUT, SEGAL & SEGAL LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AS COUNSEL FOR CHARTER INVESTMENT, INC. FOR THE PERIOD MARCH 27, 2009 THROUGH JUNE 30, 2009 AND FOR REIMBURSEMENT OF EXPENSES

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Togut, Segal & Segal LLP (the "Togut Firm" or "Applicant"), as bankruptcy counsel for Charter Investment, Inc. ("CII"), one of the debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors"), respectfully makes this first interim application (the "Application") for allowance of compensation for professional services rendered for the period March 27, 2009 through and including June 30, 2009 (the "Interim Fee Period"), and for reimbursement of actual and necessary expenses incurred in rendering such services. In support of this Application, the Togut Firm states:

**I.**     **FEES AND EXPENSES FOR WHICH ALLOWANCE IS SOUGHT**

1.     This Application is made pursuant to sections 330 and 331 of title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), General Rule M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 effective January 30, 1996 (the "UST Guidelines" and, collectively with the Local Guidelines, the "Guidelines") and the Court's Order Under Bankruptcy Code Sections 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated April 15, 2009 (the "Interim Compensation Procedures Order") [Docket No. 174], for allowance of compensation for services rendered to CII in the amount of $617,580.50 and for reimbursement of expenses in the amount of $4,331,28 during the Interim Fee Period.

2.     The Togut Firm expended a total of 1,281.4 hours during the Interim Fee Period representing CII.  A schedule setting forth the number of hours expended by the Togut Firm's partners, counsel, associates and paraprofessionals, their respective hourly rates, and the year in which each attorney was admitted to practice is attached as Exhibit "1."  A schedule specifying the type of expenses for which the Togut Firm is seeking reimbursement and the total amount of each category is attached as Exhibit "2."

3. The Togut Firm maintains computerized records of the daily time slips completed by all attorneys and paraprofessionals. Preceding the time entries is a chart listing the names, billing rates and time spent by each of the attorneys and paraprofessionals rendering services on behalf of CII. In support of this Application, copies of these computerized records, together with a computer generated detailed itemization of the expenses incurred, have been filed electronically with the Clerk of the Court and furnished to the Court, the Office of the United States Trustee (the "U.S. Trustee"), counsel to the official committee of unsecured creditors (the "Creditors' Committee"), as well as to counsel to Debtor Charter Communications, Inc. ("CCI").

4. Pursuant to the terms of the Interim Compensation Procedures Order, each month the Togut Firm served a copy of its invoice, supported by detailed time and disbursement records and a summary of services performed, upon CII, the U.S. Trustee, counsel for the Creditors' Committee, as well as to CCI and its counsel. No party has objected to any of the Togut Firm's fees during these Chapter 11 Cases, as defined herein.

5. As of the date hereof, the Togut Firm has not received payment of its fees and expenses incurred during the Interim Fee Period. The Togut Firm has not received any compensation pursuant to the Interim Compensation Procedures Order. As a condition to its prepetition engagement, the Togut Firm requested and received from CII a retainer (the "Retainer") in the amount of $750,000. The unused Retainer amount currently being held by the Togut Firm is $231,073.59. The balance of the Retainer ($518,926.41) has been used to satisfy the fees and expenses of the Togut Firm for professional services rendered prior to the Petition Date (as defined below). The amount remaining in the Retainer ($231,073.59) will be held as security for fees and expenses incurred during the Chapter 11 Cases.

6.     As set forth in the Certification of Scott E. Ratner, a member of the Togut Firm, attached hereto as Exhibit "3," all of the services for which compensation is sought herein were rendered for and on behalf of CII in connection with CII's participation as a debtor and debtor in possession in the jointly administered Chapter 11 Cases.

## II.     BACKGROUND

7.     CCI and its affiliated Debtors, including Debtor Charter Communications Holding Company, LLC ("Holdco") and Debtor CCHC, LLC ("CCHC," together with CCI, Holdco and the Debtors other than CII, are hereinafter collectively referred to as the "Company") comprise one of the largest providers of broadband entertainment and communications services in the United States, with operations in 27 states.  As of the Petition Date, CII held approximately 46% of the common equity interests in Holdco, and a note issued by CCHC exchangeable into Holdco membership units, which membership units, in turn, are ultimately convertible into CCI's Class A common stock.

8.      On March 27, 2009 (the "Petition Date"), CII and the Company commenced these bankruptcy cases by filing voluntary petitions for relief under Chapter 11 with this Court (the "Chapter 11 Cases").  On the Petition Date, CII and the Company also filed -- with the support of parties to certain restructuring agreements -- a prearranged joint plan of reorganization (as amended, the "Plan"), plan supplement documents, and a proposed disclosure statement (as amended, the "Disclosure Statement").

9.     The Plan is designed to effect a complex corporate reorganization that also, *inter alia,* provides for the satisfaction of CII's creditor claims.  The Plan that

CII and the Company are now seeking to confirm is the product of extensive, arm's-length negotiations among CII, the Company, an *ad hoc* committee of the Company's noteholders (the "Crossover Committee"), and representatives of Paul G. Allen ("Mr. Allen"), CII's sole shareholder, among other stakeholders, and embodies a settlement among the Company, on the one hand, and CII and Mr. Allen, on the other, to resolve and compromise the parties' claims, rights and interests in a mutually amenable manner (the "CII Settlement").

10.     The Plan, including the CII Settlement, is intended to reorganize CII's business and maximize value to its creditors and shareholders.  The Plan has been overwhelmingly accepted by CII's creditors entitled to vote on the Plan.

11.     At all times, CII has been operating its businesses and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

12.     No trustee or examiner has been appointed in these Chapter 11 Cases.   On April 10, 2009, the U.S. Trustee appointed the Creditors' Committee.

## III.     THE TOGUT FIRM'S RETENTION

13.     The Togut Firm was retained as bankruptcy counsel to CII, *nunc pro tunc* to the Petition Date, by this Court's Order dated April 15, 2009 (the "Retention Order") [Docket No. 182].

14.     In considering this Application, it should be noted that the Togut Firm is a highly specialized "boutique."  For more than 29 years, the firm's practice has been limited, almost exclusively, to insolvency and bankruptcy matters.  The Togut Firm has considerable experience in representing high profile Chapter 11 debtors, and

has acted in a professional capacity in hundreds of cases representing the interests of debtors, creditors' committees, secured creditors and trustees.

15. The Togut Firm has been actively involved in major Chapter 11 cases, and has represented debtors in many cases including, without limitation: *In re Old Carco LLC (f/k/a Chrysler LLC), et al.,* Case No. 09-50002; *In re Tronox Inc., et al.*, Case No. 09-10156; *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298; *In re DJK Residential LLC,* Case No. 08- 10375; *In re Our Lady of Mercy Medical Center*, Case No. 07-10609; *In re Dura Automotive Systems, Inc.*, Case No. 06-11202; *In re Satélites Mexicanos S.A. de C.V.*, Case No. 06-11866; *In re Saint Vincents Catholic Medical Centers of New York*, Case No. 05-14945; *In re Delphi Corp.*, Case No. 05-44481; *In re Tower Automotive, Inc.*, Case No. 05-10578; *In re Enron Corp. et al.*, Case No. 01-16034; *In re Acme Metals Incorporated*, Case No. 98-2179; *In re Golden Books Family Entertainment, Inc.*, Case No. 01-1920; *In re Allegiance Telecom, Inc.*, Case No. 03-13057; *In re Ames Department Stores*, Case No. 01-42217; *In re Loews Cineplex Entertainment Corp.*, Case No. 01-40346; *In re Onsite Access, Inc.*, Case No. 01-12879; *In re Daewoo International (America) Corp.*, Case No. 00-11050; *In re Contifinancial Corp.*, Case No. 00-12184; *In re Lois/USA, Inc.*, Case No. 99-45910; and *In re Rockefeller Center Properties*, Case No. 95-42089.

16. Frank A. Oswald, a member of the Togut Firm who has supervised the day-to-day services required by CII, has been with the Togut Firm since 1986. Mr. Oswald received his J.D. from New York Law School, where he was an editor of the Journal of International and Comparative Law. Mr. Oswald interned with the Honorable Conrad B. Duberstein, Chief Bankruptcy Judge for the Eastern District of New York, and for the Honorable Cecilia H. Goetz, also a bankruptcy judge in that Court. Mr. Oswald was a research assistant to Professor Karen Gross of New York Law

School.  Mr. Oswald is a member of the American Bankruptcy Institute as well as the American and New York State Bar Associations.

17.     Certain of the Togut Firm's associates have clerked for bankruptcy judges, and all of them are members in good standing of the bar.  The paraprofessionals employed by the Togut Firm's are all college graduates.  Paraprofessionals are billed based upon their experience;  recent graduates are billed at lower hourly rates than those with a year or more experience.

18.     Due to the size, complexity, and exigency of the Chapter 11 Cases, most of the professional services rendered by the Togut Firm for CII during the Interim Fee Period were rendered by Mr. Oswald, Richard K. Milin, a seasoned litigator who is Of Counsel at the Togut Firm, and Brian F. Moore, a senior associate.  To the extent that less complicated work had to be performed requiring a lesser degree of experience and expertise, such services were rendered by junior associates and/or paraprofessionals employed by the Togut Firm.

19.     It is believed that the work encompassed by this Application for which compensation is sought was performed efficiently and at the lowest cost to the estates.  The use of senior attorneys has enabled the Togut Firm to bill fewer hours than would ever have been possible if more junior people had been asked to perform the same professional services.

## IV.     SERVICES RENDERED BY THE
##          TOGUT FIRM DURING THE INTERIM FEE PERIOD

20.     In an effort to keep administrative expenses to a minimum, the work summarized in this Application for which the Togut Firm seeks compensation

was performed efficiently, at the lowest cost to the CII estate and in such a manner as to ensure minimal duplication of services.

21.     Whenever possible, potential disputes have been resolved without resort to the Court.  When necessary, the Togut Firm has actively represented CII's interests before the Court.  The Togut Firm submits that it has achieved the foregoing in an expeditious and efficient manner, always mindful of the costs to CII's estate.

22.     Rather than burden the Court with a lengthy recitation of each and every matter the Togut Firm addressed during the Interim Fee Period, the following is a summary description of the primary services rendered by the Togut Firm during the Interim Fee Period, which highlights the benefits conferred upon CII as a result of the Togut Firm's efforts.  All of the professional services provided during the Interim Fee Period are set forth in the Togut Firm's computerized time records, and the Court is respectfully referred to those records for the details of all of the work performed by the Applicant.

23.     During the Interim Fee Period, the Togut Firm rendered legal services that included, but were not limited to:

**A.      The "First Day" Motions and Related Relief**

24.     The Togut Firm was initially retained as bankruptcy counsel for CII in February 2009 in connection with CII and the Company's restructuring efforts that led to the filing of these Chapter 11 Cases.  In that connection, the Togut Firm worked closely with CII, counsel for the Company and Mr. Allen, as well as the Debtors' financial advisors, to prepare and prosecute the following "first day" motions that were filed with the Court and approved during the Interim Fee Period on an interim and final basis:

(a)      Debtors and CII's Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases;

(b)      Debtors and CII's Motion for Entry of an Order (A) Authorizing Debtors to Continue Their Existing Cash Management System, Bank Accounts and Business Forms, (B) Granting Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Continued Investment of Excess Funds in Investment Accounts and (D) Authorizing Continued Intercompany Arrangements and Historical Practices;

(c)      Debtors and CII's Motion For Entry of an Order Authorizing the Debtors to (A) Prepare a List of Creditors in Lieu of Submitting a Formatted Mailing Matrix, (B) File a Consolidated List of the Debtors' 80 Largest Unsecured Creditors, and (C) Mail Initial Notices;

(d)      Debtors and CII's Motion for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services;

(e)      Debtors and CII's Motion for Entry of Interim and Final Orders Authorizing Debtors to (A) Maintain Prepetition Insurance Policies, (B) Enter Into New Insurance Policies, (C) Maintain Premium Financing Agreements and (D) Enter Into New Premium Financing Agreements;

(f)      Debtors and CII's Motion for Entry of an Order (A) Authorizing, But Not Directing, the Debtors to Remit and Pay Certain Taxes and Fees and (B) Authorizing and Directing Banks and Other Financial Institutions to Honor Related Checks and Electronic Payment Requests;

(g)      Debtors and CII's Motion for Entry of an Order Establishing Certain Notice, Case Management and Administrative Procedures;

(h)      CII's Application for Entry of an Order Authorizing the Employment and Retention of Togut, Segal & Segal LLP As Attorneys for the Debtors Effective Nunc Pro Tunc to the Petition Date;  and

(i)     Debtors and CII's Motion for Administrative Order
Establishing Procedures for Interim Compensation
and Reimbursement of Expenses for Professionals;

25.     Also on the Petition Date, the Company and CII filed (a) the Plan
[Docket No. 36];  (b) Plan Supplement [Docket No. 37];  (c)  Disclosure Statement
[Docket No. 38];  and (d) a motion to approve the Disclosure Statement and establish
voting procedures [Docket No. 30].

26.     On behalf of CII, the Togut Firm attended, participated and
reviewed the proposed orders for submission in connection with the "first day" hearing
on March 30, 2009 and the subsequent April 15, 2009 hearing at which the "first day"
motions were granted on a final basis and the retention of the Togut Firm as bankruptcy
counsel to CII was approved.

27.     Leading up to and after the April 15, 2009 hearing, the Togut Firm
assisted CII in fielding and responding to numerous inquiries from third parties.  The
Togut Firm also actively participated in telephone conferences and/or meetings with
CII and the Debtors' personnel, outside professional advisors, creditors, the U.S.
Trustee, and counsel to the Creditors' Committee concerning, among other things, the
financial condition and business affairs of CII and the Company, and the administration
of these Chapter 11 Cases, restructuring objectives, strategy concerning financing issues,
and various other matters.

28.     The Togut Firm also assisted CII in preparing for the organizational
meeting of creditors conducted by the U.S. Trustee and, along with the Company and
its counsel, attended and participated in such meeting.

29.     The preparation of CII's Schedules and Statements of Financial
Affairs (the "Bankruptcy Schedules") required substantial time and resources.  The
Togut Firm was required to review numerous contracts and other documents to assist

CII to complete the Bankruptcy Schedules. The Togut Firm assisted CII's personnel in analyzing and organizing this voluminous data to accurately reflect CII's financial picture as of the Petition Date. The CII Schedules were timely filed on April 10, 2009. [Case No. 09-11540-JMP, Docket Nos. 5 and 6].

**B.**      **Reinstatement Litigation and Related Discovery**

30.      As noted above, the Chapter 11 Cases were commenced to implement the restructuring initiatives and the CII Settlement embodied in the Plan. A key component of the restructuring includes reinstatement of the senior secured debt of two Debtors other than CII -- Charter Communications Operating, LLC ("CCO") and CCO Holdings, LLC, ("CCOH"). The senior secured lenders of CCO and CCOH, led by JP Morgan Chase ("JPM"), the agent under the Company's senior credit facility, and joined by certain second and third lien lenders (collectively, the "Bank Group"), currently oppose the Plan and the proposed reinstatement of their senior secured debt.

31.      On the Petition Date, JPM commenced an adversary proceeding, *JPMorgan Chase Bank, N.A. v. Charter Communications Operating, LLC and CCO Holdings, LLC,* Adv. Pro. 09-01192-JMP (the "Adversary Proceeding"). Because the relief sought in the Adversary Proceeding directly impacts the Plan, the Togut Firm has represented CII in connection with the Adversary Proceeding.

32.      As such, the Togut Firm has participated in and monitored the interests of CII in the numerous depositions that took place from April though July 2009 regarding the pre-petition restructuring initiatives that resulted in the Plan, including *inter alia,* the CII Settlement.

33.      In that connection, the Togut Firm fielded a team of several litigation attorneys, including Mr. Milin, to address the various litigation and discovery

items and issues (such as depositions, document production, court conferences, etc.) in a cost-efficient and effective manner.

34. For example, the Togut Firm prepared and defended Lance Conn, a former Vice President of CII, as a deposition witness identified and designated to be CII's corporate representative under Rule 30(b)(6) of Federal Rules of Civil Procedure. The Togut Firm also represented CII at two other depositions in person and, mindful of costs, utilized the junior attorneys on the team to represent CII telephonically at 37 other depositions. The Togut Firm did not participate in at least seven depositions when it was clear the deponent or topic identified for inquiry was not implicating issues directly relating to CII.

35. The Togut Firm also has responded and objected to, and reviewed documents to be produced in response to, the four sets of discovery requests served upon CII by the members of the Bank Group and the holders of CCI Convertible Notes (the "CCI Noteholders"), a structurally subordinated group of creditors of CCI who oppose the Plan and the terms of the CII Settlement. In connection with the document review, the Togut Firm also prepared a privilege log.

36. On behalf of CII, the Togut Firm has attended various Court proceedings and status conferences relating to discovery disputes that arose during the Adversary Proceeding. Finally, the Togut Firm prepared for and attended the hearing on the Debtors' motion to dismiss the Adversary Proceeding, the consequence of which directly impacted the Plan and the Chapter 11 Cases and the confirmation process generally.

**C.** **Confirmation of the Plan and Related Relief**

    i.    The Disclosure Statement and Plan Solicitation

37.    Since the Petition Date, the Togut Firm has been actively involved in modifying and obtaining approval of the Disclosure Statement.   In that connection, the Togut Firm has worked closely with CII, counsel for the Company and Mr. Allen, as well as the Debtors' financial advisors, to obtain Court approval of the Disclosure Statement.  The Togut Firm has actively considered and revised the Disclosure Statement in response to objections raised thereto, including issues regarding the impairment of certain classes of claims against CII under the Plan, and the adequacy of the disclosure of the CII Settlement to which CII is a party embodied in the Plan.

38.    On May 7, 2009, the Court entered an order approving the Disclosure Statement (the "Disclosure Statement Order") [Docket No. 323].   Pursuant to the Disclosure Statement Order, Plan solicitation concluded on June 15, 2009.   The Disclosure Statement Order further provided that hearings to consider whether to confirm the Plan would commence on July 20, 2009 (the "Confirmation Hearing").

39.    After the Disclosure Statement was approved, the Togut Firm actively coordinated on behalf of CII with the Debtors' solicitation agent regarding the distribution of solicitation packages consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.  The overwhelming majority of CII's eligible creditors (Classes B-3 and B-4 under the Plan) cast their ballots in favor of the Plan.

    ii.    Preparation for the Confirmation Hearing

40.    During the Interim Fee Period, the Togut Firm remained actively involved in the completion and final negotiation of the Plan and worked with CII and

the other Debtors and their professionals to prepare extensively for the Confirmation Hearing which began in July, including preparing a declaration on behalf of CII in support of confirmation, as well as reviewing and commenting on the legal memoranda submitted in support of confirmation, the proposed exhibit lists and the identification and designation of witnesses.

### D.    Miscellaneous Matters Addressed by the Togut Firm

41.    In addition to the matters discussed above, the Togut Firm has rendered services for, or on behalf of, CII in connection with other miscellaneous matters, such as:

(a)    Participating in meetings and/or telephone conferences with representatives of CII regarding its rights, duties and responsibilities as a debtor in possession;

(b)    Participating in meetings, correspondence and/or telephone conferences with representatives of CII, the Company, the Creditors' Committee and the U.S. Trustee and other parties in interest regarding administration of the Chapter 11 Cases;

(c)    Coordinating the service of notices of the bankruptcy filing and automatic stay in all pre-petition pending litigation matters and violations of the automatic stay;

(d)    Attending Court conferences/hearings;

(e)    Reviewing and commenting on monthly operating reports;  and

(f)    Addressing inquiries from creditors and other parties in interest.

## V.    THE COMPENSATION REQUESTED

42.    There are numerous factors to be considered by the Court in determining allowances of compensation.  *See, e.g.*, *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977);  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974);  *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991).

*See also In re Nine Associates, Inc.*, 76 B.R. 943 (S.D.N.Y. 1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr. S.D.N.Y. 1986).

43.     The perspective from which an application for an allowance of compensation should be viewed in a reorganization case was aptly stated by Congressman Edwards on the floor of the House of Representatives on September 28, 1978, when he made the following statement in relation to section 330 of the Bankruptcy Code:

> [B]ankruptcy legal services are entitled to command the same competency of counsel as other cases.  In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11.   Contrary language in the Senate report accompanying S.2266 is rejected, and *Massachusetts Mutual Life Insurance Company v. Brock*, 405 F.2d 429, 432 (5th Cir. 1968) is overruled.   Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code.

124 Cong. Rec. H11,092 (daily ed. Sept. 28, 1978).  *See also In re McCombs*, 751 F.2d 286 (8th Cir. 1984); *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991); *In re Carter*, 101 B.R. 170 (Bankr. D.S.D. 1989); *In re Public Service Co. of New Hampshire*, 93 B.R. 823, 830 (Bankr. D.N.H. 1988); *In re White Motor Credit Corp.*, 50 B.R. 885 (Bankr. N.D. Ohio 1985).

44.     The philosophy underlying the adoption of section 330 of the Bankruptcy Code is equally applicable to interim compensation.  The Bankruptcy Code provides that the same considerations apply to making interim awards of compensation under section 331 as to final allowances under section 330.  *See In re Public Service Co. of New Hampshire*, 93 B.R. at 826; *In re International Horizons, Inc.*, 10 B.R. 895 (Bankr. N.D. Ga. 1981).  Section 331 of the Bankruptcy Code provides:

> A trustee, an examiner, a debtor's attorneys, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the Court may allow and disburse to such application such compensation or reimbursement.

11 U.S.C § 331.

45.     In awarding compensation pursuant to sections 330 and 331 of the Bankruptcy Code to professional persons employed under section 327, the Court must take into account, among other factors, the cost of comparable non-bankruptcy services. Section 330 of the Bankruptcy Code provides, in pertinent part, for payment of:

- reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional persons employed by such person; and

- reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

46.     As the court in *In re Drexel Burnham Lambert Group Inc.* stated:

> With due recognition of the historical position of Bankruptcy Courts in compensation matters, we recognize that creditors have agreed to pay rates for retained counsel of their choice because of the needs of the particular case. One could posit other situations or cases where a presumption of prior informed judgment might not be as strong. Here, however, we have a multi-debtor, multi-committee case involving sophisticated creditors who have determined that the rates charged and tasks undertaken by attorneys are appropriate. We should not, and will not, second guess the determination of those parties, who are directed by Congress, under the Bankruptcy Code, to shape and resolve the case, and who are in fact bearing the cost. To do so, of course, would be to continue what Congress specifically intended to stop in 1978: Courts, instead of markets, setting rates, with the inevitable consequence that all the legal specialists required

by the debtor or official committees would demur to participate.

133 B.R. at 20-21.

47. The Togut Firm respectfully submits that the professional services rendered by the Togut Firm during the Interim Fee Period were actual and necessary in order to ensure an efficient and effective administration of CII's estate. During the Interim Fee Period, the Togut Firm's professionals and paraprofessionals recorded 1,281.4 hours in providing the required professional services for which the Togut Firm seeks compensation.

48. Time and labor devoted is only one of many factors to be considered in awarding attorney compensation. The number of hours expended must be considered in light of (i) the amount involved and the results achieved to date, (ii) the novelty and difficulty of the questions presented, (iii) the skill requisite to perform properly the legal services, (iv) the preclusion of other employment on behalf of other clients, (v) the customary fee charged to a private client for the services rendered, (vi) awards in similar cases, (vii) time constraints required by the exigencies of the case, including the frequency and amount of time required to be devoted other than during regular business hours, (viii) the experience, reputation and ability of the attorneys rendering services, and (ix) the nature and length of the professional relationship with the client (the "Johnson Factors"). *See Johnson v. Georgia Highway Express*, 488 F.2d at 717-19 (enumerating factors to be considered in awarding attorneys' fees in equal employment opportunities cases under Title VII); *In re First Colonial Corp. of America*, 544 F.2d at 1294 (applying the Johnson Factors in bankruptcy cases).

49. The majority of the Johnson Factors are codified in section 330(a) of the Bankruptcy Code, and have been applied by various courts in making

determinations that requested attorneys' fees constitute reasonable compensation. It is well settled that the "lodestar method,"[1] as opposed to an application solely of the Johnson Factors, is the best means of determining attorney fees in bankruptcy cases.[2] The Supreme Court, however, has clearly articulated that the "lodestar method" is presumed to subsume the Johnson Factors, as does section 330(a) of the Bankruptcy Code. *Delaware Valley I*, 478 U.S. at 563; *Cena's Fine Furniture*, 109 B.R. at 581.

50. The Togut Firm respectfully submits that application of the foregoing criteria more than justifies the compensation requested in this Application. This is an application for interim compensation. Therefore, such compensation is reviewable by the Court at such time as it considers the Togut Firm's application for final compensation in this case.

51. The Togut Firm has encountered novel and difficult legal problems during the course of the Interim Fee Period, involving many areas of legal expertise in bankruptcy and litigation. The professional services rendered in the Chapter 11 Cases have been performed by attorneys with broad expertise and high levels of skill in their practice areas or specialty. This highly professional and expert group of attorneys has ensured that the Chapter 11 Cases have progressed in an efficient manner.

---

[1] Application of the "lodestar method" involves multiplying the number of hours reasonably expended on the case by the reasonable hourly rate of compensation for each attorney. *See Shaw v. Travelers Indemnity Co. (In re Grant Assocs.)*, 154 B.R. 836, 843 (S.D.N.Y. 1993). This method of calculating attorney fees is appropriate in light of section 330(a) of the Bankruptcy Code, which serves as a starting point, permitting bankruptcy courts, in their own discretion, to consider other factors, such as the novelty and difficulty of the issues, the special skills of counsel, and their results obtained. *See In re Copeland*, 154 B.R. 693, 698 (Bankr. W.D. Mich. 1993).

[2] *See, e.g., Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 483 U.S. 711 ("*Delaware Valley II*"), on remand, 826 F.2d 238 (3d Cir. 1987); *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546 (1986) ("*Delaware Valley I*"); *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990); *Lindy Bros. Builders Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973), *vacated on other grounds*, 540 F.2d 102 (3d Cir. 1976); *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575 (E.D.N.Y. 1990); *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13, 21 (Bankr. S.D.N.Y. 1991).

52. During the Interim Fee Period, the Togut Firm has been required to furnish extensive services which have often fully occupied the time of its attorneys, frequently to the preclusion of other firm matters and clients. If these were not cases under the Bankruptcy Code, the Togut Firm would charge CII and expect to receive on a current basis, an amount at least equal to the amounts requested herein for the professional services rendered. Pursuant to the criteria normally examined in bankruptcy cases, and based upon the factors to be considered in accordance with sections 330 and 331 of the Bankruptcy Code, the results that have been achieved during the Interim Fee Period more than substantiate charges in that amount. The services that the Togut Firm has rendered thus far have produced benefits which have inured to the CII, its estates and its creditors.

53. In view of the foregoing, the Togut Firm respectfully requests that it be allowed reasonable interim compensation in the amount of $617,580.50 for services rendered in connection with CII's Chapter 11 Case. During the period covered by this Application, the Togut Firm's hourly billing rates for attorneys and paraprofessionals ranged from $125 to $890 per hour.

54. The prosecution of the Chapter 11 Cases to date justifies interim compensation in the amount requested. In addition to the progress made and results delivered which warrant full allowance of fees sought, it is respectfully submitted that the Togut Firm is a small firm which suffers a financial hardship when held-back fees grow in size. In view of the policy underlying sections 330 and 331 of the Bankruptcy Code that attorneys in bankruptcy cases be compensated on parity with attorneys practicing in other fields, it is respectfully submitted that interim compensation should be allowed as requested.

## VI.  DISBURSEMENTS

55.     As set forth in Exhibit "2" hereto, the Togut Firm incurred $4,331.28
in expenses in providing professional services during the Interim Fee Period.  Because
of the thousands of parties-in-interest who were required to be served with certain
notices and other pleadings, these Cases have required a substantial amount of
photocopying and postage.

56.     With respect to photocopying expenses, the Togut Firm charges all
of its clients $.10 per page.  With respect to facsimile expenses, the Togut Firm excludes
charges for incoming facsimile transmissions, and includes charges for long distance
outgoing facsimiles at the actual cost charged to the Togut Firm by its telephone carrier
(there are no local fax charges included in the Togut Firm's disbursements for which it
seeks reimbursement).  These charges are intended to cover the Togut Firm's direct
operating costs for photocopying and facsimile facilities, which costs are not
incorporated into the Togut Firm's hourly billing rates.  Only clients who actually use
photocopying, facsimile, and other office services of the types set forth in Exhibit "2" are
separately charged for such service.  The effect of including such expenses as part of the
hourly billing rates would impose that cost upon clients who do not require extensive
photocopying, facsimile, and document production facilities and services.  The amount
of the standard photocopying and facsimile charge is intended to allow the Togut Firm
to cover the related expenses of its photocopying and telecopying service.  A
determination of the actual expenses per page for photocopying and telecopying,
however, is dependent on both the volume of copies and the total expenses attributable
to photocopying and telecopying on an annual basis.

57.     The time constraints frequently imposed by the circumstances of these cases has required Togut Firm attorneys and other employees at times to devote substantial amounts of time during the evenings and on weekends to the performance of legal services on behalf of the Debtors.

58.     Moreover, consistent with firm policy, attorneys and other employees of the Togut Firm who worked late into the evenings were reimbursed for their reasonable meal costs and their cost for transportation home.  The Togut Firm's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  In addition, due to the exigent nature of the Chapter 11 Cases, same day and overnight delivery of documents and other materials was required as a result of deadlines and/or emergencies necessitating the use of such express services.  These disbursements are not included in the Togut Firm's overhead for the purpose of setting billing rates.  The Togut Firm has made every effort to minimize its disbursements in the Chapter 11 Cases.  The actual expenses incurred in providing professional services were absolutely necessary, reasonable and justified under the circumstances to serve the needs of the CII, its estate and creditors.

59.     None of the travel related expenses of the Togut Firm attorneys included herein were for first-class airfare, luxury accommodations, or deluxe meals.

**VII.    <u>CONCLUSION</u>**

60.     The legal services summarized by this Application and rendered by the Togut Firm to CII during the Interim Fee Period were substantial, professional, and beneficial to CII's Chapter 11 estate.  They were reasonable and necessary to the preservation and maximization of CII's estate.

61.     As noted above, the amounts sought by the Togut Firm consist only of actual and reasonable billable time expended by attorneys and paraprofessionals resulting in fees in the amount of $617,850.50 and actual and necessary disbursements made by Applicant in the amount of $4,331.28 during the Interim Fee Period.  As demonstrated throughout this Application, the other factors typically considered in determining compensation -- including complexity, results achieved, special expertise, magnitude of the matter, and professional standing -- all militate toward the conclusion that the amount of compensation requested by the Togut Firm is necessary, fair, and reasonable.

62.     In light of (a) the complexity and exigencies of the Chapter 11 Cases, (b) the results achieved to date, (c) the significant contributions made and time devoted, often under severe time constraints and to the preclusion of other matters, (d) awards of compensation in similar cases, and (e) other factors pertinent to the allowance of compensation, the Togut Firm believes that the compensation sought herein is fair and reasonable and is authorized under the relevant provisions of the Bankruptcy Code.

63.     All services for which compensation is sought were performed for and on behalf of CII and its estate, and not on behalf of any other creditor or party in interest.  The Togut Firm is charging its standard hourly rate for professionals performing services.  No payments have heretofore been made or promised to the Togut Firm for post-petition services rendered, or to be rendered, in connection with the Chapter 11 Cases.  Applicant has not entered into any agreement, express or implied, with any other party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in the Chapter 11 Cases.

**WHEREFORE,** TS&S respectfully requests that this Court enter an Order: (a) awarding to TS&S and directing payment of: (i) compensation for the period March 27, 2009 through and including June 30, 2009 in the amount of $617,850.50 representing actual billable time for services rendered by the Togut Firm as general bankruptcy counsel to CII, and (ii) reimbursement of actual and necessary expenses incurred and recorded by the Togut Firm during the period March 27, 2009 through and including June 30, 2009 in the amount of $4,331.28; and (b) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
August 24, 2009

TOGUT, SEGAL & SEGAL LLP,
Bankruptcy Counsel for
 Charter Investment, Inc.
By:

/s/ Albert Togut
ALBERT TOGUT
FRANK A. OSWALD
Members of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000