WHITEFORD TAYLOR & PRESTON L.L.P.
Brent C. Strickland, Esq. (BS 7811)
Seven Saint Paul Street
Baltimore, Maryland 21202
Telephone: 410-347-8700
Facsimile: 410-625-7510
bstrickland@wtplaw.com

- and-

Jason N. Bramlett
FRIDAY, ELDREDGE & CLARK, LLP
3425 N. Futrall Drive, Suite 103
Fayetteville, AR 72703
Telephone: (479) 695-2011
Facsimile: (479) 695-2147
jbramlett@fec.net

*ATTORNEYS FOR CREDITOR*
*KEY COLONY FUND, LP*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CHARTER COMMUNICATIONS, INC., et al. | § | Case No. 09-11435 (JMP) |
| | § | |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

### POST TRIAL MEMORANDUM OF LAW OF KEY COLONY FUND, LP

Key Colony Fund, LP ("Key Colony") files its Post Trial Memorandum of Law (the "Memorandum"), and in support thereof, respectfully states as follows:

### I. Introduction

1. The Plan of Reorganization (the "Plan") filed by Charter Communications, Inc. ("Charter"), et al. (collectively, the "Debtors"), includes provisions that provide for the release of certain non-debtor third parties by holders of claims and interests in the bankruptcy case of the

Debtors. These non-debtor third parties are incorporated in the definition of "Debtor Releasees" and include "members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives." Of particular relevance to Key Colony is the inclusion of Mr. Paul G. Allen ("Mr. Allen") as a released party. *See* Debtors' Disclosure Statement, p. 97.

2. Among other things, these provisions would have the effect of releasing and enjoining existing claims against the non-debtor third parties arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 cases or the Plan.

3. At trial, the Debtors maintained that the inclusion of the broad release provision is necessary for a successful restructuring effort; however, during the evidence portion of the confirmation hearing, the Debtors never provided any evidence indicating that without the releases the Plan would fail. Rather, the evidence indicated that the releases were simply drafted into the Plan without any evidence indicating that other options were considered to determine whether the releases were in fact the keystone part of the deal between the Debtors and Mr. Allen.

4. Accordingly, the Plan inclusive of the Non-Debtor Release Provision (as defined below) cannot be confirmed under the existing standard set forth by the Second Circuit in *Metromedia*. *See In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005).

5. If the Plan is confirmed with such releases included, the effect that it would have on creditors such as Key Colony would be drastic, extreme, and highly inequitable based on the lack of evidence provided at the confirmation hearing in support of the releases.

6. Currently, Key Colony has an action pending against Mr. Allen in the Circuit Court of Pulaski County, Arkansas, Case No. CV 09-1576-2 (the "State Action"). A copy of the

Complaint filed to commence the State Action is attached hereto as **Exhibit A**. If the Plan is confirmed, the non-debtor release provision would enjoin Key Colony from prosecuting its rights against Mr. Allen in the State Action and would provide Mr. Allen with a "get out of jail free" card, notwithstanding never having availed himself of the jurisdiction of this Court as a debtor.

## II.     Background

A.  The Plan.

7.     The Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 27, 2009 (the "Petition Date"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

8.     On May 7, 2009, the Debtors filed the Plan and an accompanying Disclosure Statement.

9.     Included within the Plan is the following release of certain non-debtor third parties (the "Non-Debtor Release Provision"):

> Third Party Releases. On the Effective Date and effective as of the Effective Date, the Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Debtor Releasees and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan…

10.    The Debtors allege that the Non-Debtor Release Provision is justified based on the significant contributions that those released, and Mr. Allen in particular, have made to the restructuring effort. The Debtors further explain this rationale in their Disclosure Statement, which states:

> The foregoing Third Party Release is justified as an integral part of the Debtors' overall restructuring efforts. Specifically, the Debtor Releasees

3

and non-Debtor Releasees have all made substantial contributions to the Debtors' estates; indeed, without such contributions the Debtors could not have proposed a confirmable Plan. Put simply, the Debtors' proposed Plan represents demonstrably unique circumstances…

*See* Debtors' Disclosure Statement, p. 97.

B. Key Colony's State Action.

11. Key Colony is the owner of certain senior notes issued by Charter. Key Colony purchased said notes and continued to hold the notes based on the representations of Charter, as well as agents and representatives of Mr. Allen.

12. On February 26, 2009, Key Colony filed the State Action. Therein, Key Colony has alleged that throughout 2008, Charter and Mr. Allen, individually and through his agents, engaged in a scheme to defraud the note holders of Charter, including Key Colony, of the value of their notes. *See* Exhibit A.

13. Key Colony has alleged that the actions of Charter and Mr. Allen violate the Arkansas Deceptive Trade Practices Act and constitute common law fraud.

14. If the Plan is confirmed in its current form, the Non-Debtor Release Provision will likely preclude Key Colony from continuing its lawsuit against Mr. Allen.

15. The standard adopted by the Second Circuit in *Metromedia* precludes this result and, therefore, poses a significant obstacle to the confirmation of the Plan.

### III. The Plan Cannot Be Confirmed Under 11 U.S.C. § 1129 With The Non-Debtor Release Provision Included

A. The Bankruptcy Code Does Not Allow Non-Debtor Releases Outside the Context of an Asbestos Case.

16. The Non-Debtor Release Provision is not allowed under the provisions of the Bankruptcy Code, thereby rendering the Plan unconfirmable in its present state. If approved, the

Plan will create a blanket discharge and release of Mr. Allen shielding him against any claims or causes of action that other creditors may hold resulting from his affiliation with the Debtors. This result would turn the bankruptcy process on its head, effectively providing Mr. Allen with the benefits of a bankruptcy discharge without the protections and requirements of the bankruptcy process.

17. The *Metromedia* court identified at least two reasons why provisions such as the Non-Debtor Release Provision are mired in controversy: the lack of specific authorization in the bankruptcy code[1] and the potential for abuse. Because of these reasons, the Second Circuit has made it clear that the use of non-debtor release provisions is only proper in "rare cases." *Metromedia*, 416 F.3d at 141.

18. Although the standard to identify the "rare cases" is not a matter of "factors and prongs," it is clear that non-debtor releases cannot be tolerated absent the finding of circumstances that may be characterized as "unique." *Metromedia*, 416 F.3d at 142. In arriving at its conclusion, *Metromedia* undertook a review and analysis of decisions from other courts that have considered and ruled upon (both favorably and unfavorably) non-debtor releases.

19. In this regard, *Metromedia* first reviewed the provisions of the Bankruptcy Code to ascertain whether an independent basis existed for the approval of a plan that included third-party releases. *Id*. *Metromedia* concluded that Section 524(g) of the Bankruptcy Code is the only provision in the Bankruptcy Code that addresses the legality of non-debtor releases. The application of Section 524(g), however, is limited to claims arising from "personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by

---

[1] 11 U.S.C. § 105(a) authorizes the bankruptcy court to issue orders "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" but does not allow the bankruptcy court "to create substantive rights that are otherwise unavailable under applicable law."

the presence of, or exposure to, asbestos or asbestos containing products . . . ." 11 U.S.C. § 524(g).

20. If a bankruptcy case does not implicate claims arising from the asbestos context, there is no other statutory authority in the Bankruptcy Code that sanctions the approval of a non-debtor release. At the confirmation hearing in this case, there was no evidence presented that any of the claims or causes of action that would be barred by the proposed Non-Debtor Release Provision arose from the asbestos context. As such, because Section 524(g) is inapplicable to this case, the Bankruptcy Code does not provide a statutory basis for the inclusion of the Non-Debtor Release Provision. Had Congress intended to provide a legal basis for the type of releases sought by the Debtors, it would have expressly expanded the scope of Section 524(g) to make it generally applicable to other types of cases.

21. In the absence of an express provision sanctioning the use of non-debtor releases in a plan, the *Metromedia* court examined whether the equitable powers given to a bankruptcy court under Section 105(a) of the Bankruptcy Code provided sufficient latitude to the court to allow non-debtor releases under the broad powers set forth therein. *Id*. *Metromedia* swiftly dismissed this theory on the basis that Section 105(a) does not allow a bankruptcy court to "create substantive rights that are otherwise unavailable under applicable law." *Id*. (quoting *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)). Because there is nothing in Section 105(a) that provides an independent basis for non-debtor releases, *Metromedia* held that a bankruptcy court's equitable powers under Section 105(a) were not broad enough to warrant the allowance of non-debtor releases outside of the circumstances contemplated in Section 524(g).

22. Consistent with the statutory scheme set forth in the Bankruptcy Code, the Ninth and Tenth Circuits have held that the non-debtor releases are prohibited by the Bankruptcy Code, except in the asbestos context. *See Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394 (9th Cir.1995) and *Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa* (*In re W. Real Estate Fund, Inc.*), 922 F.2d 592 (10th Cir.1990).

23. Without any statutory basis for approving non-debtor releases outside the context of an asbestos case, *Metromedia* held that only those cases that are "unique" permit the approval of non-debtor releases. *Metromedia*, 416 F.3d at 142. No other guidance was given by the Second Circuit. The only examples given by *Metromedia* of unique, rare, or unusual cases, though, were from cases that were either limited by *Metromedia* or from the asbestos context. *Metromedia*, 416 F.3d at 141. In this regard, three case were cited for the proposition that unique, rare, and unusual can be established by proving that (a) a substantial contribution was made by the released parties under the proposed plan, *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); (b) indemnity claims will effect the reorganization of the debtor, *Menard-Sanford v. Mabey (In re A.H. Robins Co.*), 880 F.2d 694, 701 (4th Cir. 1989); and (c) the releases are integral to the plan, *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 657-58 (6th Cir 2002).

24. Throughout the confirmation hearing, the Debtors attempted to craft their evidence in support of the Non-Debtor Release Provision around the three circumstances cited by *Metromedia* in which non-debtor releases have been allowed; however, the circumstances existing in the *Drexel, A.H. Robins,* and *Dow Corning* cases have since been criticized and discredited by the Second Circuit (in the case of *Drexel*), arose from an asbestos context (in the

7

case of *A.H. Robins*), or was a restructuring that included the global settlement of massive liabilities against the debtors and co-liable parties (in the case of *Dow Corning*).

25. The mere presence of any of the forgoing circumstances, however, does not support a finding that the case is unique, rare, or unusual. Rather, *Metromedia* cited *Drexel, A.H. Robins,* and *Dow Corning* only for the purpose of noting several cases where third-party releases have been deemed permissible. As previously noted, the *Drexel* case has since been overruled by *Metromedia*, *A.H. Robins* was an asbestos case, and *Dow Corning* included massive liabilities against the debtors and co-liable parties.

26. Accordingly, in light of the express provisions of the Bankruptcy Code sanctioning third-party releases in the context of an asbestos case, but in no other circumstance, this Court should deny confirmation of any Plan including the Non-Debtor Release Provision, as it would be violative of Section 1129(a)(1), as the Plan does not comply "with the applicable provisions of [Chapter 11 of the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).

B. <u>Even if *Metromedia* is Construed to Create an Independent Standard Distinct From the Provisions of the Bankruptcy Code, the Debtors' Case Does not Present Unique, Rare, or Unusual Circumstances That would Support a Finding that the Non-Debtor Release Provision is Permissible</u>.

27. Even if Metromedia is construed to create an independent standard that permits inclusion of non-debtor, third party releases that are distinct from the Bankruptcy Code, the evidence presented by the Debtor does not support a finding that its bankruptcy is unique, rare, or unusual so as to warrant the inclusion of such releases.

28. Jeff Marcus, Managing Director of Crestview Capital Funds, testified that it was his understanding that one of Mr. Allen's goals in the restructuring was to get out of Charter without getting sued. While this may have been a goal for Mr. Allen, it does nothing to establish any of the prerequisites for use of the non-debtor, third party release announced in *Metromedia*.

29. Ken Liang, Managing Director of Oak Tree Capital, offered similar testimony to that of Mr. Marcus. Mr. Liang identified certain things that Mr. Allen wanted in return for his support of the Plan, including cash payments, management fees, some type of post-restructuring equity, and a release of all claims against him. Mr. Liang, however, never indicated that these items in general, and the releases in particular, were vital to Mr. Allen's participation in the Plan. In fact, Mr. Liang testified that Mr. Allen also wanted veto rights over corporate actions. However, the bondholders were not willing to provide him that authority, and accordingly it was not included in the Plan. This demonstrates that Mr. Allen's participation in the Plan was not vital to receiving all the benefits he desired.

30. Greg Doody, Charter's Chief Restructuring Officer, testified that in return for the value that Mr. Allen was providing to the Debtors, he was receiving, among other things, significant tax benefits in return. Despite the fact that this amount was never calculated, he acknowledged that the benefit to Mr. Allen could be over a billion dollars in addition to the other hundreds of million dollars he was receiving in new consideration. Furthermore, Mr. Doody testified that there were no restructuring scenarios that were contemplated that did not include a settlement with Mr. Allen. Because there were no restructuring plans considered that did not include a release for Mr. Allen, it is impossible for the Debtors to maintain that its inclusion is vital to the success of the plan.

31. Stephen Goldstein, Managing Director of Lazard's restructuring group, testified that there were several core objectives that were identified as part of the restructuring process: 1) reducing Charter's debt load; 2) improving Charter's liquidity; 3) preserving the positive tax attributes, primarily preserving the NOLs; and 4) reinstating the existing bank debt. He also testified that an agreement between Charter, Mr. Allen, and the bondholders was a necessary

component of the restructuring. However, he did not testify that the inclusion of a release for Mr. Allen was a vital part of Mr. Allen's participation. What was of greater concern for Mr. Allen was the potential personal tax liability that Mr. Allen faced. Mr. Goldstein stated that he never made any attempt to place a value on the release that was included in the plan because he was not aware of any significant claims against Mr. Allen that would be affected by the releases.

32. Lance Conn, who was the primary negotiator on behalf of Mr. Allen, testified that one of his primary goals in the restructuring negotiations was to minimize Mr. Allen's tax liabilities. He testified that he was aware that there were potentially huge tax liabilities for Mr. Allen under certain restructuring scenarios.

33. In terms of inclusion of the non-debtor, third party release provision, Mr. Conn testified that he did not know whether Mr. Allen would agree to a plan that did not include such a release. Mr. Conn testified that the release was included in the restructuring plan because Mr. Allen is a public figure and attracts significant attention. He stated that he was not aware of any significant claims that would be affected by the inclusion of the release. He stated that Mr. Allen wanted the release more as a way to avoid the "nuisance" that comes with his notoriety.

34. Mr. Conn also testified about the existing claims against Mr. Allen. He called lawsuits that had been filed against Mr. Allen "crazy", and characterized them as "nuisance" claims. Mr. Conn could not recall who came up with the idea to include the release in the restructuring plan and did not know when it first emerged during the negotiations.

35. Based on the forgoing, it is evident that the Debtors did not provide evidence sufficient to warrant the inclusion in the Plan of the Non-Debtor Release Provision. The mere fact that the Debtors' case may have been large, complex, and involve a large sum of money does not warrant the approval of the Plan with the Non-Debtor Release Provision. The Debtors

have asked for extraordinary relief from this Court through the inclusion of the Non-Debtor Release Provision by stating that the Plan fails without it. However, there was never any evidence provided that such a result would occur. The Non-Debtor Release Provision appears to have been just another term thrown into the deal without testing whether it was warranted, justified, or legal. Accordingly, for the reasons stated herein, Key Colony respectfully requests that this Court deny confirmation of the Plan.

WHEREFORE, Key Colony Fund, LP respectfully requests that this Court deny confirmation of the Plan and grant to Key Colony Fund, LP any further relief which may be just and equitable.

Respectfully submitted,

WHITEFORD TAYLOR & PRESTON L.L.P.

/s/ Brent C. Strickland
Brent C. Strickland, Esq. (BS 7811)
Seven Saint Paul Street
Baltimore, Maryland 21202
Tel: 410-347-8700
Fax: 410-625-7510
bstrickland@wtplaw.com

and

Jason N. Bramlett, Esquire
FRIDAY, ELDREDGE & CLARK, LLP
3425 N. Futrall Drive, Suite 103
Fayetteville, AR 72703
Telephone: (479) 695-2011
Facsimile: (479) 695-2147
jbramlett@fec.net

*ATTORNEYS FOR CREDITOR*
*KEY COLONY FUND, LP*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 18, 2009, the foregoing pleading was served upon each of the parties on the attached service list via first class mail, postage prepaid.

/s/Brent C. Strickland
Brent C. Strickland

(a) Kirkland & Ellis, LLP
Attn: Stephen E. Hessler, Esq.
153 E. 53rd Street
New York, NY 10022-4673

(b) Office of the U.S. Trustee
for the S.D. New York
Attn: Paul Schwartzberg
33 Whitehall Street, 21st Floor
New York, NY 10004

(c) Simpson, Thacher & Bartlett, LLP
Attn: Peter V. Pantaleo
425 Lexington Avenue
New York, NY 10017

(d) Nixon Peabody LLP
Attn: Michele Ross
437 Madison Avenue
New York, NY 10017

(e) Brown Rudnick LLP
Attn: Daniel J. Saval
7 Times Square
New York, NY 10036

(f) Paul, Weiss, Rifkind, Wharton
& Garrison, LLP
Attn: Alan W. Kornberg
1285 Avenue of the Americas
New York, NY 10019

(g) Kasowitz, Benson, Torres
& Friedman LLP
Attn: David S. Rosner
1633 Broadway
New York, NY 10019

(h) Skadden, Arps, Slate, Meagher
& Flom, LLP
Attn: Jay M. Goffman
4 Times Square
New York, NY 10036

(i) Togut, Segal & Segal, LLP
Attn: Albert Togut and Frank Oswald
One Penn Plaza
New York, NY 10019

(j) Ropes & Gray LLC
Attn: Mark R. Somerstein and
Keith Wofford
1211 Avenue of the Americas
New York, NY 10036

*1871580*