**UNITED STATES BANKRUPTCY COURT**  NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                              :   Chapter 11
In re                                                         :
                                                              :   Case No. 09-11435 (JMP)
CHARTER COMMUNICATIONS, *et. al.*,                            :
                                                              :   (Jointly Administered)
                    Debtors.                                  :
                                                              :
---------------------------------------------------------

# MEMORANDUM DECISION GRANTING
# MOTION TO ENFORCE PLAN INJUNCTION

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
601 Lexington Avenue
New York, New York 10022

    Paul Basta, Esq.

KIRKLAND & ELLIS, LLP
*Attorneys for Debtors*
655 Fifteenth Street, N.W.
Washington, D.C. 20005

    Daniel T. Donovan, Esq.
    Bridget K. O'Connor, Esq.
    Jeffrey S. Powell, Esq.

TOGUT SEGAL & SEGAL LLP
*Attorneys for Debtors*
One Penn Plaza
New York, New York 10019

    Richard K. Milin, Esq.

ROPES & GRAY
*Attorneys for the Creditors' Committee*
1211 Avenue of the Americas
New York, New York 10036

    Dana L. Myers, Esq.
    Nila Winona Williams, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Attorneys for Paul G. Allen*
Four Times Square
New York, New York 10036

    Robert E. Zimet, Esq.
    Jeremy Berman, Esq.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Attorneys for Securities Class Action Plaintiffs*
200 East Broward Boulevard
Suite 1110
Fort Lauderdale, FL 33301

    Robert F. Elgidely, ESQ.

COUGHLIN STOIA GELLER RUDMAN ROBBINS LLP
*Attorneys for Securities Class Action Plaintiffs*
58 South Service Road
Suite 200
Melville, NY 11747

    Jarrett Charo, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

*Introduction*

The Reorganized Debtors (collectively, "Charter") have brought an emergency motion[1] (the "Enforcement Motion") for an order to enforce the injunction and release provisions of their confirmed Plan of Reorganization (the "Plan").[2] The Enforcement Motion seeks to bring to an end certain securities litigation pending in the United States District Court for the Eastern District of Arkansas (the "District Court") against

---

[1] Reorganized Debtors' Motion to Enforce the Plan of Reorganization Injunction (Amended), (ECF Doc. #1111 (Filed Jan. 14, 2010)).

[2] The Plan is Exhibit A to the Court's Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, (ECF Doc. # 921 (Filed Nov. 17, 2009)).

2

individual defendants Paul G. Allen, Eloise Schmitz and Neil Smit.[3]  Charter is not named in the civil action in the District Court.

The securities litigation currently is stayed in the District Court, although motion practice recently was initiated by the Securities Class Action Plaintiffs[4] evidently in reliance upon certain statements made by the Court at the conclusion of a hearing held on December 17, 2009.[5]  District Judge J. Leon Holmes has ordered an extension of the deadline for responses to lift the stay and reopen the case in the District Court until ten days after this Court has ruled with respect to the Enforcement Motion.

The question presented is whether the causes of action brought by the Securities Class Action Plaintiffs in the District Court violate and should be barred by the injunction against commencing or continuing causes of action released under Charter's confirmed Plan.  A related issue is whether the District Court or this Court is the most appropriate forum to decide questions regarding the scope and application of the injunction.  The

---

[3] The individual defendants at relevant times were, respectively, the Chairman of the Board of Directors, Chief Financial Officer, and President and Chief Executive Officer of Charter Communications.  Mr. Allen's public profile, his role at the company, the settlement between Charter and Mr. Allen that is the centerpiece of the plan of reorganization and the releases that are integral to that settlement are all described at length in the Court's opinion on confirmation.  See Confirmation Op. at 48-62, (ECF Doc. # 920 (Filed Nov.17, 2009)).

[4] The named plaintiffs in the District Court action are Iron Workers Local No. 25 Pension Fund, Indiana Laborers Pension Fund, Iron Workers District Council of Western New York, Vicinity Pension Fund, The New Jersey Building Laborers Pension and Annuity Funds, and Herb Lair.

[5] The excerpt that appears to be the excuse for having moved to lift the stay in the District Court is as follows:

> For the reasons stated, I am denying the motion brought by the Genovese firm on behalf of the named lead plaintiffs in the action currently pending in the Eastern District of Arkansas.  I leave it to the District Court in Arkansas to determine the actual impact of the plan releases upon the causes of action that have been asserted there.  This decision in no way dictates how a district court should rule with respect to the scope of that release, however, I recognize that confirmation orders such as this one typically are entitled to res judicata treatment and respect.

12/17/2009 Tr. at 52:7-16.

District Court plainly has an interest in managing cases on its own docket, and this Court has retained exclusive jurisdiction to interpret the injunction that is part of its own order confirming the Plan.

For the reasons stated, while both courts certainly have a natural connection to the subject matter and the unquestioned authority to exercise jurisdiction with respect to cases on their own dockets, in this instance it is most appropriate for this Court to interpret and enforce its own confirmation order.  As explained below, the Court grants the Enforcement Motion and finds that continued prosecution of the securities litigation in the District Court is subject to the injunction barring causes of action against third parties released under the Plan.

## *Background*

The Court assumes familiarity with its opinion on confirmation of the Plan.[6]  The third party releases granted under the Plan are discussed at length in the opinion.  The issue of whether it was proper to grant these releases was vigorously litigated throughout the nineteen days of hearings relating to confirmation.  Nonetheless, the Securities Class Action Plaintiffs did not object to the releases, never appeared prior to confirmation to question the impact of the releases on the action in the District Court, and until very recently did not participate in these well-publicized chapter 11 cases.  Counsel for Charter and Mr. Allen pressed actively for approval of the releases over the objections of multiple parties.  However, these proponents of the releases also were silent on the subject of the Securities Class Action Plaintiffs' litigation and the impact the releases might have on the action in the District Court.

---

[6] *In re Charter Commc'ns*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009).

4

This Court first learned about the existence of the action styled *Iron Workers Local No. 25 Pension Fund v. Allen, et al.*, Case No. 4:09-cv-00405-JLH (E.D. Ark.) after both the public announcement of the Court's ruling on confirmation that occurred on October 15, 2009 and the issuance on November 17, 2009 of the Court's full written opinion and the related confirmation order. The Securities Class Action Plaintiffs first complained about the releases ten days after entry of the confirmation order. On November 27, 2009, they filed a motion for an order granting a limited rehearing, limited reconsideration, and/or limited relief from the Confirmation Order (the "Reconsideration Motion").[7] The Reconsideration Motion was prepared and filed by a newly engaged bankruptcy law firm claiming that the Securities Class Action Plaintiffs were somehow surprised to learn of provisions of the Plan that had been a prominent feature of this very visible case for many months. They took the position that the lead plaintiffs were clueless as to the impact of the Plan on their claims and did not receive actual notice of the releases because they had sold their Charter stock before the record date established for mailing information about the Plan to shareholders.

Argument on the Reconsideration Motion took place on December 17, 2009. The Court was not persuaded by the arguments of counsel for the Securities Class Action Plaintiffs, considered it beyond reasonable comprehension that these plaintiffs could claim with a straight face to be ignorant of Plan provisions that had been so widely

---

[7] ECF Doc. # 973.

disseminated and vigorously litigated and denied the motion from the bench. The Court directed the parties to submit an order consistent with that bench ruling.[8]

The Class Action Plaintiffs suffered from a credibility problem during the December hearing and still do. They had a difficult time explaining why they ignored the Charter bankruptcy cases until after confirmation. Given the pendency of claims in the District Court that relate to Charter, newly engaged special counsel for the Securities Class Action Plaintiffs was unable to offer a cogent reason why litigation counsel had neglected to take any steps relating to the possible impact of the releases granted under the Plan on their causes of action and why any extraordinary relief was justified with respect to releases that were both generally known and essential to the structure of the Plan. Special counsel emphasized that he was new to the case and lacked knowledge of the role of another unidentified bankruptcy specialist who appears to have been consulted months earlier by litigation counsel for the Securities Class Action Plaintiffs.

The Court could not discern if the Securities Class Action Plaintiffs were engaging in a deliberate tactic adopted as a means to assert a last ditch challenge to the releases or if their failure to participate in the cases was simply an oversight due to ordinary negligence or a lack of bankruptcy sophistication. In either event, they failed to carry their heavy burden, and their arguments regarding lack of notice of the confirmation hearing were weak in light of earlier representations made to the District Court that counsel for the Securities Class Action Plaintiffs were well aware of the Charter

---

[8] Despite the simplicity of the order, counsel for the Class Action Plaintiffs objected to the form proposed by counsel for the Reorganized Debtors. As a consequence of the delay caused by such needless objections, the order denying the motion for limited rehearing, reconsideration or relief was not entered on the docket until January 26, 2010. (ECF Doc. # 1133).

6

bankruptcy and recognized that the chapter 11 cases could impact the rights of members of the putative class.

The original underlying premise of the Reconsideration Motion was that the third party release and permanent injunction features of the Plan have such far reaching effect that the Securities Class Action Plaintiffs would be precluded from pursuing their putative securities class action in the District Court unless this Court were to grant limited relief. Demonstrating an opportunistic flexibility in their approach to the problem, the Securities Class Action Plaintiffs subsequently changed course, perhaps as a consequence of the hearing of December 17, and now assert that the action in the District Court is not barred and actually falls outside the broad scope of the restrictions imposed under the Plan and the confirmation order.

This newly articulated theory prompted filing of the motion in the District Court to lift the stay leading Charter to immediately file the Enforcement Motion. The Court heard argument on the Enforcement Motion on January 26, 2010 and reserved decision. The Court expressed concern during the hearing on the Enforcement Motion that both sides were engaged in what seemed to be a transparent display of forum shopping, presumably based on the belief that the litigation outcome might be different depending on which court resolved questions as to the scope and impact of the injunction. Based on the analysis set forth below, the outcome should be the same regardless of the forum.

### *Discussion*

The Reconsideration Motion and the Enforcement Motion are closely related contested matters concerning the scope, interpretation and enforcement of the confirmation order recently entered by this Court in Charter's chapter 11 cases. The Securities Class Action Plaintiffs were certainly conscious of the need to come to the

7

bankruptcy court for relief when they filed the Reconsideration Motion here at the end of November. While counsel for both parties were in the midst of discussing the form of the order denying the Reconsideration Motion consistent with comments from the bench on December 17, counsel for the Securities Class Action Plaintiffs filed papers in the District Court seeking to lift the stay applicable to the securities litigation in Arkansas. That litigation activity was the precipitating event that resulted in filing of the Enforcement Motion on an emergency basis. Given this procedural posture, although both this Court and the District Court are clearly competent to rule on the Plan releases as they relate to the action pending in the District Court, the bankruptcy court is more closely connected to the current dispute and is the proper forum to rule with respect to the Enforcement Motion.

One reason for this conclusion, as Charter has noted, is this Court's natural familiarity with the full record of the confirmation hearing. Any other court necessarily will be at a disadvantage in evaluating the Plan and confirmation order. A further reason to decide the question of enforcement here is the risk that the release provisions and injunction may be eroded to some extent by means of potential incremental exceptions to the Plan's comprehensive bar to claims against identified third parties, most notably claims that have been or may be asserted against Mr. Allen. His fame and deep pockets make him a natural target for such claims, and that is why he bargained for an effective release as part of the settlement achieved pursuant to the Plan.

This Court unquestionably has the authority and discretion to rule on the Enforcement Motion and consider whether the causes of action in the District Court have been released and should be enjoined. All courts retain the jurisdiction to interpret and

enforce their own orders. This proposition recently was confirmed by the United States Supreme Court in *Travelers Indem. Co. v. Bailey*, which found a "Bankruptcy Court plainly had jurisdiction to interpret and enforce" a confirmation order it had entered twenty years earlier. 129 S. Ct. 2195, 2205 (2009).

Despite this open-ended judicial power to interpret and enforce orders, it is true that following confirmation a bankruptcy court's jurisdiction does begin to diminish in importance. *In re General Media, Inc.*, 335 B.R. 66 (S.D.N.Y. 2005). After confirmation, the bankruptcy court in particular, as opposed to any other court of competent jurisdiction, may have less of a need to interpret documents and resolve disputes that involve the reorganized debtor. This proposition has no practical effect here, however, because the current dispute with the Securities Class Action Plaintiffs is sufficiently close in time to confirmation of the Plan and sufficiently critical to the integrity of the Plan's structure that it is proper for this Court to take firm control of and decide the Enforcement Motion. This is especially important given the Court's exclusive jurisdiction to enforce the confirmation order and the conjoined nature of the Reconsideration Motion and the Enforcement Motion filed in direct response to steps taken by the Securities Class Action Plaintiffs following argument on the Reconsideration Motion. Because the Reconsideration Motion sought relief from this Court and is itself so closely interconnected with the Enforcement Motion, it is both efficient and proper for the Enforcement Motion to be decided here as well.

In the Enforcement Motion, Charter returns to the bankruptcy court to prevent the prosecution of causes of action expressly prohibited by the confirmation order. It is difficult to identify judicial acts that are any more critical to the orderly functioning of the

bankruptcy process or more closely tethered to core bankruptcy jurisdiction. *See e.g. In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) (finding a bankruptcy court retained core jurisdiction post-confirmation "to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."). The Enforcement Motion is thus an entirely appropriate request that this Court intervene to provide centralized relief as to current and possible future violations of the confirmation order.

Granting such relief in appropriate circumstances also is fully congruent with the Plan itself. Article XIV.A.11, 20, and 23 of the Plan gives this Court the "exclusive jurisdiction" to "hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order," to "issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan," and to "enforce all orders previously entered by the Bankruptcy Court." Such provisions, while undeniably applicable and valid, do not mandate granting of the Enforcement Motion. The question that remains to be addressed is whether the causes of action against the individual defendants in the District Court are within the scope of the releases granted under the Plan.

The Plan expressly contemplated the release of the named defendants, Paul G. Allen, Eloise Schmitz and Neil Smit. During the lengthy confirmation hearings, certain of the parties objecting to the Plan focused particular attention on the fairness of the settlement with Mr. Allen and whether the proposed releases were authorized under applicable Second Circuit precedent. The Court's opinion on confirmation concluded

that Mr. Allen's contributions to Charter amounted to billions of dollars in value and that the structure of the Plan depended on his cooperation. These circumstances provided ample justification for approval of the releases of Mr. Allen and the other defendants.

Appeals of the confirmation order are pending with no stay having been issued, and the Plan has been substantially consummated. Until such time as an appellate court may find grounds to overturn the confirmation order, that order may be enforced by the bankruptcy court. *Hospital & Univ. Property Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 35 (2d Cir. 1993)(holding "an order becomes final when it is entered, and it continues to be enforceable until it is reversed on appeal or until a stay is granted pending appeal, pursuant to Bankr. R. 8005"). Accordingly, the releases are presently enforceable for the benefit of the named defendants in the action in the District Court so long as the causes of action brought by the Securities Class Action Plaintiffs were released under the Plan.

The Securities Class Action Plaintiffs' causes of action undoubtedly have been released. The complaint in the District Court relates to prepetition conduct of the defendants acting on behalf of Charter that allegedly caused harm to holders of Charter's publicly traded equity securities. According to the complaint, certain officers and directors of Charter issued or caused to be issued materially false and misleading statements regarding Charter's business and financial results allegedly in violation of the Securities Exchange Act of 1934. As a result, the complaint alleges that Charter's stock traded at inflated prices until full and truthful disclosure was made, at which point the value of the stock fell, allegedly causing harm to the Securities Class Action Plaintiffs who purchased stock at the inflated price. With respect to the Enforcement Motion, the

11

Securities Class Action Plaintiffs argue that they were not Holders of Claims or Interests against the Debtors because they sold their stock prior to the record date, and so they contend that their claims were not affected or released by the Plan.

Regardless of the merits of these allegations, one thing is certain – they constitute causes of action asserting claims against the defendants that were expressly released under the Plan. The argument that timing of the sale of Charter stock by the Securities Class Action Plaintiffs somehow removes them from the ambit of the releases defies logic. The releases in the Plan are broad. They release "any and all Causes of Action, *whether known or unknown*, whether for tort, contract, *violations of federal or state securities law*, or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan." Plan Art. X.E (emphasis added). The causes of action in the complaint are squarely within the scope of this language. The releases thus extend to claims held by the Securities Class Action Plaintiffs and any other present or former holders of Charter securities, regardless of the claimant's knowledge, assertion, or prosecution of any such claims. To rule otherwise would eviscerate the releases and contort their meaning.

### *Conclusion*

For the reasons stated, the Enforcement Motion is granted. The parties are directed to promptly transmit a copy of this decision to the District Court by overnight mail. Charter shall submit an order granting the Enforcement Motion within the next two business days.

SO ORDERED.

Dated: New York, New York       *s/ James M. Peck*
    February 8, 2010      Honorable James M. Peck
                                       United States Bankruptcy Judge